# EXHIBIT A

1 | Michael McShane (State Bar No. 127944)
mmcshane@audetlaw.com
2 | Adel A. Nadji (State Bar No. 232599)
anadji@audetlaw.com
3 | AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
4 | San Francisco, CA 94105
Telephone: 415.568.2555
5 | Facsimile: 415.568.2556

6 | [Additional Counsel Listed on Signature Page]

7 | Attorneys for Plaintiff and the Proposed Class

8

9

10

11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

12 | JOSEPH LEONE, Individually and On Behalf of
All Others Similarly Situated,

13

14 | Plaintiff,

15 | v.

16 | S. TREZEVANT MOORE, JR., CHRISTOPHER
J. ZYDA, ELEANOR CORNFELD MELTON,
17 | RONALD VIERA, DIMITRIOS
PAPATHEOHARIS AND LUMINENT
18 | MORTGAGE CAPITAL, INC.,

19 | Defendants.

20

**C 07 4073**

**CLASS ACTION COMPLAINT FOR**
**VIOLATIONS OF THE FEDERAL**
**SECURITIES LAWS**

**JURY TRIAL DEMANDED**



21

22

## NATURE OF THE ACTION

23 | 1.    This is a class action on behalf of purchasers of the common stock of Luminent

24 | Mortgage Capital, Inc. ("Luminent" or the "Company") between July 24, 2007 and August 6, 2007,

25 | inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of

26 | 1934 (the "Exchange Act"). As alleged herein, defendants published a series of materially false and

27 | misleading statements that defendants knew and/or recklessly disregarded were materially false and

28 | misleading at the time of such publication, and that omitted to reveal material information necessary

1  to make defendants' statements, in light of such material omissions, not materially false and

2  misleading.

3      2.      Luminent is a real estate investment trust that invests primarily in the United States

4  agency and other single-family, adjustable-rate and fixed-rate, mortgage-backed securities.

5  Throughout the Class Period, defendants represented to investors that the Company was fully liquid,

6  that it was not exposed to the prevailing market liquidity squeeze and that its dividend was safe,

7  when in fact it was vulnerable to margin calls.

8      3.      On August 6, 2007, defendants shocked investors when they announced that the

9  Company was cancelling the payment of its dividend after it had been hit by many margin calls as

10  the secondary mortgage market seized up. Only two weeks before defendants announced that the

11  Company was in solid financial condition, that it was not exposed to the extremities of the market

12  and that its dividend was secure. Before the August 6, 2007 announcement, the Company's shares

13  were trading at $5.70 per share. In response to the announcement, Luminent's share price dropped

14  to $3.75 before trading was suspended. It reopened at $0.50 on August 7, 2007, a drop of over 85%.

15  The market was acknowledging, in a brutal fashion, that Defendants' representations during the

16  Class Period concerning the Company's liquidity and the security of its dividend were either patently

17  untrue, or were made with reckless disregard of the true material adverse facts.

18      4.      Defendants were motivated to and did conceal the true operational and financial

19  condition of Luminent, and materially misrepresented and failed to disclose the conditions that were

20  adversely affecting Luminent throughout the Class Period, because the scheme enabled defendants to

21  artificially inflate the price of Company shares by deceiving the investing public regarding

22  Luminent's business, operations, management and the intrinsic value of Luminent common stock

23  thus allowing them to maintain their lucrative executive positions and salaries.

24                              **JURISDICTION AND VENUE**

25      5.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the

26  Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC

27  [17 C.F.R. § 240.10b-5].

28

1     6.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

2  §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Luminent common

3  stock is listed on the New York Stock Exchange ("NYSE") and trades within the United States and

4  the Company regularly filed quarterly and year-end financial reports with the SEC.

5     7.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28

6  U.S.C. § 1391(d). Luminent is a domestic corporation that maintains its headquarters in San

7  Francisco, California and it does significant business in this District, and may properly be sued in

8  any District of the United States, including the Northern District of California.

9     8.    In connection with the acts alleged in this complaint, defendants, directly or

10  indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to,

11  the mails, interstate telephone communications and the facilities of the national securities markets.

12                            **THE PARTIES**

13     9.    Plaintiff, Joseph Leone, as set forth in the accompanying certification, incorporated

14  by reference herein, purchased shares of common stock of Luminent at artificially inflated prices as

15  alleged herein during the Class Period and has been damaged thereby.

16     10.    Luminent is incorporated in Maryland as a trust with its principal place of business

17  located at 101 California Street, Suite 1350, San Francisco, California. According to the Company's

18  profile, the REIT invests primarily in the United States agency and other single-family, adjustable-

19  rate, and fixed rate mortgage-backed securities. The Company also invests in residential mortgage

20  loans.

21     11.    Defendant S. Trezevant Moore, Jr. ("Moore") is, and during the Class Period was,

22  President and Chief Executive Officer of the Company. Moore has also been a Director of the

23  Company since November 2005.

24     12.    Defendant Christopher J. Zyda ("Zyda") is, and during the Class Period was, Senior

25  Vice President and Chief Financial Officer of the Company. During the Class Period, defendant

26  Zyda signed the Company's SEC filings.

27     13.    Defendant Eleanor Cornfeld Melton ("Melton") is, and during the Class Period was,

28  Senior Vice President and Chief Credit Officer of the Company.

1    14.    Defendant Ronald Viera ("Viera") is, and during the Class Period was, Senior Vice

2  President and Chief Risk Officer of the Company.

3    15.    Defendant Dimitrios Papatheoharis ("Papatheoharis") is, and during the Class Period

4  was, Senior Vice President and Chief Investment Officer of the Company.

5    16.    Defendants Moore, Zyda, Melton, Viera and Papatheoharis are collectively referred to

6  herein as the "Individual Defendants."

7    17.    Because of the Individual Defendants' positions with the Company, they had access

8  to the adverse undisclosed information about its business, operations, liquidity, financial statements,

9  markets and present and future business prospects *via* access to internal corporate documents

10  (including the Company's operating plans, budgets and forecasts and reports of actual operations

11  compared thereto), conversations and connections with other corporate officers and employees,

12  attendance at management and Board of Directors meetings and committees thereof and *via* reports

13  and other information provided to them in connection therewith.

14    18.    It is appropriate to treat the Individual Defendants as a group for pleading purposes

15  and to presume that the false, misleading and incomplete information conveyed in the Company's

16  public filings, press releases and other publications as alleged herein are the collective actions of the

17  narrowly defined group of defendants identified above. Each of the above officers of Luminent, by

18  virtue of their high-level positions with the Company, directly participated in the management of the

19  Company, was directly involved in the day-to-day operations of the Company at the highest levels

20  and was privy to confidential proprietary information concerning the Company and its business,

21  operations, products, growth, financial statements, and financial condition, as alleged herein. Said

22  defendants were involved in drafting, producing, reviewing and/or disseminating the false and

23  misleading statements and information alleged herein, were aware, or recklessly disregarded, that the

24  false and misleading statements were being issued regarding the Company, and approved or ratified

25  these statements, in violation of the federal securities laws.

26    19.    As officers and controlling persons of a publicly-held company whose common stock

27  was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NYSE,

28  and governed by the provisions of the federal securities laws, the Individual Defendants each had a

1    duty to promptly disseminate accurate and truthful information with respect to the Company's

2    financial condition and performance, growth, operations, liquidity financial statements, business,

3    products, markets, management, earnings and present and future business prospects, and to correct

4    any previously-issued statements that had become materially misleading or untrue, so that the market

5    price of the Company's publicly-traded common stock would be based upon truthful and accurate

6    information. The Individual Defendants' misrepresentations and omissions during the Class Period

7    violated these specific requirements and obligations.

8         20.    The Individual Defendants participated in the drafting, preparation, and/or approval

9    of the various public and shareholder and investor reports and other communications complained of

10   herein and were aware of, or recklessly disregarded, the misstatements contained therein and

11   omissions therefrom, and were aware of their materially false and misleading nature. Because of

12   their Board membership and/or executive and managerial positions with Luminent, each of the

13   Individual Defendants had access to the adverse undisclosed information about Luminent business

14   prospects and financial condition and performance as particularized herein and knew (or recklessly

15   disregarded) that these adverse facts rendered the positive representations made by or about

16   Luminent and its business issued or adopted by the Company materially false and misleading.

17        21.    The Individual Defendants, because of their positions of control and authority as

18   officers and/or directors of the Company, were able to and did control the content of the various SEC

19   filings, press releases and other public statements pertaining to the Company during the Class

20   Period. Each Individual Defendant was provided with copies of the documents alleged herein to be

21   misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent

22   their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is

23   responsible for the accuracy of the public reports and releases detailed herein and is therefore

24   primarily liable for the representations contained therein.

25        22.    Each of the defendants is liable as a participant in a fraudulent scheme and course of

26   business that operated as a fraud or deceit on purchasers of Luminent common stock by

27   disseminating materially false and misleading statements and/or concealing material adverse facts.

28   The scheme deceived the investing public regarding Luminent's business, operations, management

1    and the intrinsic value of Luminent common stock, and allowed defendants to artificially inflate the

2    price of Company shares and caused Plaintiff and other members of the Class to purchase Luminent

3    common stock at artificially-inflated prices.

4    23.    Because of the Individual Defendants' positions with the Company, they had access

5    to the adverse undisclosed information about its business, operations, products, operational trends,

6    financial statements, markets and present and future business prospects *via* access to internal

7    corporate documents (including the Company's operating plans, budgets and forecasts and reports of

8    actual operations compared thereto), conversations and connections with other corporate officers and

9    employees, attendance at management and Board of Directors meetings and committees thereof and

10    *via* reports and other information provided to them in connection therewith.

11    24.    It is appropriate to treat the Individual Defendants as a group for pleading purposes

12    and to presume that the false, misleading and incomplete information conveyed in the Company's

13    public filings, press releases and other publications as alleged herein are the collective actions of the

14    narrowly defined group of defendants identified above. Each of the above officers of Luminent, by

15    virtue of their high-level positions with the Company, directly participated in the management of the

16    Company, was directly involved in the day-to-day operations of the Company at the highest levels

17    and was privy to confidential proprietary information concerning the Company and its business,

18    operations, products, growth, financial statements, and financial condition, as alleged herein. Said

19    defendants were involved in drafting, producing, reviewing and/or disseminating the false and

20    misleading statements and information alleged herein, were aware, or recklessly disregarded, that the

21    false and misleading statements were being issued regarding the Company, and approved or ratified

22    these statements, in violation of the federal securities laws.

23    25.    As officers and controlling persons of a publicly-held company whose common stock

24    was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NYSE,

25    and governed by the provisions of the federal securities laws, the Individual Defendants each had a

26    duty to promptly disseminate accurate and truthful information with respect to the Company's

27    financial condition and performance, growth, operations, financial statements, business, products,

28    markets, management, earnings and present and future business prospects, and to correct any

1  previously-issued statements that had become materially misleading or untrue, so that the market
2  price of the Company's publicly-traded common stock would be based upon truthful and accurate
3  information. The Individual Defendants' misrepresentations and omissions during the Class Period
4  violated these specific requirements and obligations.

5       26.     The Individual Defendants participated in the drafting, preparation, and/or approval
6  of the various public and shareholder and investor reports and other communications complained of
7  herein and were aware of, or recklessly disregarded, the misstatements contained therein and
8  omissions therefrom, and were aware of their materially false and misleading nature. Because of
9  their Board membership and/or executive and managerial positions with Luminent, each of the
10 Individual Defendants had access to the adverse undisclosed information about Luminent business
11 prospects and financial condition and performance as particularized herein and knew (or recklessly
12 disregarded) that these adverse facts rendered the positive representations made by or about
13 Luminent and its business issued or adopted by the Company materially false and misleading.

14      27.     The Individual Defendants, because of their positions of control and authority as
15 officers and/or directors of the Company, were able to and did control the content of the various SEC
16 filings, press releases and other public statements pertaining to the Company during the Class
17 Period. Each Individual Defendant was provided with copies of the documents alleged herein to be
18 misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent
19 their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is
20 responsible for the accuracy of the public reports and releases detailed herein and is therefore
21 primarily liable for the representations contained therein.

22      28.     Each of the defendants is liable as a participant in a fraudulent scheme and course of
23 business that operated as a fraud or deceit on purchasers of Luminent common stock by
24 disseminating materially false and misleading statements and/or concealing material adverse facts.
25 The scheme deceived the investing public regarding Luminent's business, operations, management
26 and the intrinsic value of Luminent common stock, and allowed defendants to artificially inflate the
27 price of Company shares and caused Plaintiff and other members of the Class to purchase Luminent
28 common stock at artificially-inflated prices.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of Luminent between July 24, 2007 and August 6, 2007, inclusive, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Luminent common shares were actively traded on the New York Stock Exchange. As of March 31, 2007, the Company had over 46 million shares of common stock issued and outstanding and traded in the United States. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Luminent or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by defendants' acts as alleged herein;

1       (b) Whether statements made by defendants to the investing public during the

2    Class Period misrepresented material facts about the business, liquidity, operations and management

3    of Luminent; and

4       (c) To what extent the members of the Class have sustained damages and the

5    proper measure of damages.

6      34. A class action is superior to all other available methods for the fair and efficient

7    adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

8    damages suffered by individual Class members may be relatively small, the expense and burden of

9    individual litigation make it impossible for members of the Class to individually redress the wrongs

10   done to them.  There will be no difficulty in the management of this action as a class action.

11   **SUBSTANTIVE ALLEGATIONS**

12   **Defendants' Materially False and Misleading**
**Statements During the Class Period**

13

14     35. On July 23, 2007 (the day before the opening of the Class Period), Defendant Moore

15   issued the following announcement on Form 8K (as filed with the SEC) lauding the strong the

16   strong financial condition of the Company:

17     In my almost 30 years in the U.S. mortgage-backed securities market, I have never
before seen the intensity of confusion, uncertainty and outright fear as right now. I

18   have experienced the Volker recession of '79-'81, the Oil Patch and New England
corrections in the mid-to-late 80's, California '89 to '94, and significant bond market

19   corrections in '87, '94 and '98. At none of these times has the distaste for mortgage
and mortgage-related securities been as high as we see now. As a dedicated investor

20   in this market, we need to ask how did we get to this sorry state, and what can one do
to protect one's self if you are, as we are, focused by charter on real estate oriented

21   investments.

22     Almost exactly 20 years ago, I was managing First Boston's (now Credit Suisse) due
diligence effort. The late 1980's were also characterized by a real estate boom,

23   sloppy underwriting and some nasty credit surprises. First Boston was lead managing
a private label security for a client. My group was part of the whole loan trading

24   effort and was 'borrowed' by investment banking for due diligence. As our
orientation was as a principal buyer, our team underwrote the loans as if we were

25   going to buy them for our own account. The client focused on 'no doc' loans and
explicitly told us they did not question anything the potential mortgagor said.

26   Needless to say, we found significant misrepresentations of income (e.g., gas station
attendants making $6,000 a month in 1988) and, even worse, appraisals that were,

27   uh, imaginative. My team recommended underwriting every loan or not underwriting
the transaction. At the end of the day, the client took the deal to a different

28   investment bank, which presumably did the legally necessary due diligence. Within a
year, even the senior class was downgraded and ultimately defaulted.

In my view, history has repeated itself. Many residential mortgage-backed securities are or will default because investors do not have the capacity or ability to actually review a reasonable sample of individual loans in a pool. The rating agencies don't underwrite loans, but rely on the veracity of the loan tapes they receive. (After our happy experience related above, we wrote to the rating agencies suggesting they do individual loan sampling. No extra credit for guessing the answer.) Now the rating agencies are stating that they will disadvantage institutions that have inadequate procedures for ferreting out fraud.

Luminent is a fairly young firm, only four years old, but its senior management is not (much to my chagrin). When we started buying loans in 2005, we started with a 25% due diligence sample. The management team knew the principals and operating philosophies of the firms we were working with, but we knew there was no substitute for looking at appraisals, deciding whether income seemed reasonable and determining if the mortgagor was really going to live in that condo. As the origination market continued to become more frothy in early 2006, we saw pockets of appraisal weakness that concerned us causing our appraisal sample to expand, first to 50% and then to all loans. We do not hesitate to decline to purchase loans if we have issues with the quality of the underlying loans and/or quality of the originator's underwriting. Our overall record since inception of our loan purchase program is:

| | $Amount | (%) |
|---|---|---|
| Commitment Amount | $ 6,889,365,853 | 100.0 |
| Removed Property | $ 462,563,311 | 6.7 |
| Credit Issues | $ 211,055,398 | 3.1 |
| Compliance Issues | $ 27,802,610 | 0.4 |
| Accepted | $ 6,187,944,534 | 89.8 |

Credit enhancement on whole pool pre-underwriting per Moody's : 6.60%

Credit enhancement on LUM purchased pool per Moody's[1] : 6.34%

---

[1] Derived by running both loan populations through Moody's Mortgage Metrics®

Careful attention to detail isn't particularly glamorous, but it has real value. Our loans are safer, not only according to our own metrics, but validated by third parties such as Moody's. Our delinquencies are approximately 50 basis points less than the Alt-A market as a whole2. We believe that we will have materially lower loss severities than the market as we have solid appraisal results on all our loans. And our corporate performance, as a whole, is very solid during a time of substantial stress in the overall mortgage market. At June 30, 2007, our book value per share increased to $9.98, 1.1% higher than our book value per share of $9.87 at March 31, 2007. Our REIT taxable income for the quarter ended June 30, 2007 was approximately $0.33 cents per share outstanding, and at June 30, 2007 we had approximately $0.24 cents per share of undistributed taxable income. Our net income per share for the quarter ended June 30, 2007 was $0.30 cents per share. We will provide additional detail on our second quarter financial performance in our August 9, 2007 earnings release and our form 10-Q filing for the quarter ended June 30, 2007.

In our view, the mortgage market is perhaps a little more dependent on analysis of loan characteristics without actually ever reviewing the loan. Investors often cannot or are unable to examine the accuracy of the data used to make investment decisions. We make a concerted effort to do our homework using both traditional due diligence

methods and state of the art software to cull out, for example, possible fraud. We believe that our underwriting discipline will hold our stakeholders in good stead and applaud the many other organizations that are being similarly careful. Next quarter, we will talk about some of our other risk management tools. I personally hope you found this modest effort helpful, and will invite you, once again, to let Kate O'Brien know if you would like subsequent issues sent to you directly

36.    The Company, through defendant and CEO Moore, went to great lengths to ensure that despite the confusion and uncertainty in the market, the Company was completely different than its peers. He asserted that the Company was very careful, had solid appraisals and was somewhat insulated from the extremes that were then rocking the market and had enough distributable income to pay its dividend.

37.    Defendants' statements and filings of July 23, 2007, were false and misleading because, *inter alia*:

(a)    At all times during the Class Period, the Company was not sufficiently liquid and was, like other peer companies, exposed to the extremities of the market. In fact, throughout the Class Period, defendants had materially misstated the solidity of the Company and its financial procedures, and defendants had improperly issued false and unreliable financial results;

(b)    As a result of the foregoing, throughout the Class Period, the Company's financial statements and reports were *not* prepared in accordance with GAAP and SEC rules; and

(c)    As a result of the aforementioned adverse conditions which defendants failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim that the Company had ample liquidity and that the dividend was safe.

38.    The statements made by defendants and contained in the Company's press releases and SEC filings made during the remainder of and throughout the Class Period were materially false and misleading and were known by defendants to be false at that time, or were recklessly disregarded as such thereby, for the reasons stated herein.

39.    On July 30, 2007, the Company released the following statement declaring that it had ample liquidity and that the dividend was secure:

Luminent Mortgage Capital, Inc., announced today that its second quarter dividend payment of $0.32 per share, payable to stockholders on August 8, 2007, is secure and will not be canceled.

In addition, Luminent confirmed that as of July 30, 2007 it is in full compliance with all its financial covenants. Furthermore, Luminent confirmed that as of July 30, 2007 it had ample liquidity to manage its business.

Luminent reiterated that it is an investor in, and not an originator of, mortgage loans. As such, Luminent is not subject to the loan repurchase risk that is currently impacting certain loan originators. Instead, Luminent purchases high quality mortgage loans from originators, and only after Luminent conducts exhaustive due diligence on each and every loan. As of June 30, 2007, Luminent's 15,327 of whole loans had a weighted-average FICO score of 715, a weighted-average loan-to-value ratio net of mortgage insurance of 71%, and 86.4% of these loans were on owner-occupied properties.

In addition, Luminent reiterated that it employs a disciplined and sophisticated hedging program for the interest rate and credit risks in its portfolio using Eurodollar futures, interest rate swaps, swaptions, interest rate caps, and by shorting various portions of the ABX indices as well as employing single-name credit default swaps. During the quarter ended June 30, 2007, the strong performance of Luminent's credit hedges more than offset the income statement and balance sheet impact of mark-to-market pricing and certain impairment charges related to its credit sensitive assets. This strong performance of Luminent's disciplined hedging program was one of the contributors to the increase in Luminent's book value per share to $10.05 as of June 30, 2007

40.    As would soon be revealed, the above statements were patently false and misleading.

### The True Financial And Operational Condition
### Of Luminent Is Belatedly Disclosed

41.    On August 6, 2007, defendants shocked investors when the Company issued the following press release:

Luminent Mortgage Capital, Inc. (NYSE: LUM) announced today that, since August 3, 2007, the mortgage industry, and the financing methods that the mortgage industry relies upon, have deteriorated significantly and in an unprecedented fashion. Effectively, the secondary market for mortgage loans and mortgage-backed securities has seized-up. As a result, Luminent is simultaneously experiencing a significant increase in margin calls on its highest quality assets and a decrease on the financing advance rates provided by its lenders.

In a Board of Directors meeting today, Luminent's Board unanimously voted to take the following actions:

- The Board of Directors suspended payment of Luminent's second quarter cash dividend of 32 cents per share on Luminent's common stock.

- The Board of Directors extended the maturity of the outstanding commercial paper issued by Luminent Star Funding Trust I, a special purpose subsidiary of Luminent, by 110 days.

- The Board of Directors cancelled Luminent's second quarter 2007 earnings release conference call, scheduled for Thursday, August 9, 2007, at 10:00 a.m. PDT, to discuss its second quarter of 2007 results of operations.

- The Board of Directors delayed the filing of Luminent's quarterly report on form 10-Q for the second quarter of 2007. Luminent's second quarter of 2007 unaudited condensed financial information is attached to this press release. Luminent's independent registered public accounting firm has not completed a review of the financial information for the three and six months ended June 30, 2007.

- The Board of Directors authorized Luminent's senior management to inform the New York Stock Exchange of these unfolding events and, as a result, trading was halted in Luminent's common stock.

The Board of Directors currently is considering the full range of strategic alternatives to enhance Luminent's liquidity and preserve shareholder value during this period of market volatility.

42.    In response to the announcement, Luminent's share price dropped to a low of $3.75 on August 6, 2007 before trading was halted. It then opened on August 7, 2007 at $0.50, a drop of over 85%.

43.    The market for Luminent's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Luminent common stock traded at artificially-inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Luminent common stock upon the integrity of the market price of Luminent common stock and market information relating to Luminent, and have been damaged thereby.

44.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Luminent common stock by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information regarding its liquidity and the security of its dividend payments and misrepresented the truth about the Company, its business and operations, as alleged herein.

45.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading

1  statements about Luminent's business, liquidity, prospects and operations.  These material

2  misstatements and omissions had the cause and effect of creating in the market an unrealistically

3  positive assessment of Luminent and its business, prospects and operations, thus causing the

4  Company's common stock to be overvalued and artificially inflated at all relevant times.

5  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff

6  and other members of the Class purchasing the Company's common stock at artificially-inflated

7  prices, thus causing the damages complained of herein.

8  ## CAUSATION AND ECONOMIC LOSS

9  46.    During the Class Period, as detailed herein, defendants engaged in a scheme to

10  deceive the market, and a course of conduct that artificially inflated Luminent's stock price and

11  operated as a fraud or deceit on Class Period purchasers of Luminent's stock by misrepresenting the

12  Company's financial results. Defendants were aware that the Company had liquidity problems and

13  was not in a position to announce that it had ample liquidity and that the dividend was safe. As such,

14  the announcements and filings during the Class Period were false and misleading. When defendants'

15  prior misrepresentations and fraudulent conduct came to be revealed to investors, shares of Luminent

16  declined precipitously – evidence that the prior artificial inflation in the price of Luminent's shares

17  was eradicated. As a result of their purchases of Luminent stock during the Class Period, Plaintiff

18  and other members of the Class suffered economic losses, *i.e.* damages under the federal securities

19  laws.

20  47.    By improperly characterizing the Company's financial results and misrepresenting its

21  liquidity and prospects, defendants presented a misleading image of Luminent's business and future

22  growth prospects.  During the Class Period, defendants repeatedly emphasized the ability of the

23  Company to insulate itself from a tough market and pay its dividend.  These claims caused and

24  maintained the artificial inflation in Luminent's stock price throughout the Class Period and until the

25  truth about the Company was ultimately revealed to investors.

26  48.    On August 6, 2007, however, defendants revealed its liquidity problems and

27  cancellation of its dividend.

28

1        49.   As a direct result of defendants' statements on August 6, 2007, that indicated the

2    Company was in financial trouble and its dividend was cancelled, Luminent's stock price collapsed

3    almost more than 85%. This dramatic share price decline eradicated much of the artificial inflation

4    from Luminent's share price, causing real economic loss to investors who purchased the Company's

5    stock during the Class Period. In sum, as the truth about defendants' fraud and illegal course of

6    conduct became known to investors, and as the artificial inflation in the price of Luminent shares

7    was eliminated, Plaintiff and the other members of the Class were damaged, suffering an economic

8    loss.

9        50.   The decline in Luminent's stock price at the end of the Class Period was a direct

10   result of the nature and extent of defendants' fraud being revealed to investors and to the market.

11   The timing and magnitude of Luminent's stock price decline negates any inference that the losses

12   suffered by Plaintiff and the other members of the Class was caused by changed market conditions,

13   macroeconomic or industry factors or even Company-specific facts unrelated to defendants'

14   fraudulent conduct.

15       51.   During the same period in which Luminent's tumbled as a result of the revelation of

16   defendants' fraud, the Standard & Poor's 500 securities index remained relatively unchanged. The

17   economic loss, *i.e.*, damages suffered by Plaintiff and other members of the Class, was a direct result

18   of defendants' fraudulent scheme to artificially inflate the price of Luminent's stock and the

19   subsequent significant decline in the value of the Company's shares when defendants' prior

20   misstatements and other fraudulent conduct was revealed.

21       **ADDITIONAL SCIENTER ALLEGATIONS**

22       52.   As alleged herein, defendants acted with scienter in that each defendant knew that the

23   public documents and statements issued or disseminated in the name of the Company were

24   materially false and misleading due to the liquidity problems at the Company; knew that such

25   statements or documents would be issued or disseminated to the investing public; and knowingly and

26   substantially participated or acquiesced in the issuance or dissemination of such statements or

27   documents as primary violations of the federal securities laws. As set forth elsewhere herein in

28   detail, defendants, by virtue of their receipt of information reflecting the true facts regarding

1  Luminent, their control over, and/or receipt and/or modification of Luminent's allegedly materially

2  misleading misstatements and/or their associations with the Company which made them privy to

3  confidential proprietary information concerning Luminent, participated in the fraudulent scheme

4  alleged herein.

5       53.     Defendants were motivated to materially misrepresent to the SEC and investors the

6  true financial condition of the Company because the scheme: (i) deceived the investing public

7  regarding Luminent's business, operations, management and the intrinsic value of Luminent

8  common stock, and allowed defendants to artificially inflate the price of Company shares, thus

9  allowing defendants to maintain their executive positions and lucrative compensation; and (ii)

10  caused Plaintiff and other members of the Class to purchase Luminent common stock at artificially-

11  inflated prices.

12  **APPLICABILITY OF PRESUMPTION OF RELIANCE:**
   **THE FRAUD-ON-THE-MARKET DOCTRINE**

13

14       54.     At all relevant times, the market for Luminent's common stock was an efficient

15  market for the following reasons, among others:

16       (a)     Luminent's stock met the requirements for listing, and was listed and actively

17  traded on the New York Stock Exchange , a highly efficient market;

18       (b)     As a regulated issuer, Luminent filed periodic public reports with the SEC and

19  the Nasdaq;

20       (c)     Luminent regularly communicated with public investors *via* established

21  market communication mechanisms, including through regular disseminations of press releases on

22  the national circuits of major newswire services and through other wide-ranging public disclosures,

23  such as communications with the financial press and other similar reporting services; and

24       (d)     Luminent was followed by several securities analysts employed by major

25  brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers

26  of their respective brokerage firm(s).  Each of these reports was publicly available and entered the

27  public marketplace.

28

55.    As a result of the foregoing, the market for Luminent securities promptly digested current information regarding Luminent from all publicly available sources and reflected such information in Luminent stock price. Under these circumstances, all purchasers of Luminent common stock during the Class Period suffered similar injury through their purchase of Luminent common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

56.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Luminent who knew that those statements were false when made.

## BASIS OF ALLEGATIONS

57.    Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of SEC filings by Luminent, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## COUNT I

2

### Violation Of Section 10(b) Of the
### Exchange Act and Rule 10b-5 Against All Defendants

3

4    58.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

forth herein.

5

6    59.    During the Class Period, defendants carried out a plan, scheme and course of conduct

7    which was intended to and, throughout the Class Period, did: (i) deceive the investing public

regarding Luminent's business, liquidity, operations, management and the intrinsic value of

8

Luminent common stock, and allow defendants to artificially inflate the price of Company shares;

9

and (ii) cause Plaintiff and other members of the Class to purchase Luminent common stock at

10

artificially-inflated prices. In furtherance of this unlawful scheme, plan and course of conduct,

11

defendants, jointly and individually (and each of them) took the actions set forth herein.

12

13    60.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue

statements of material fact and/or omitted to state material facts necessary to make the statements not

14

misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud

15

and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially

16    high market prices for Luminent's common stock in violation of Section 10(b) of the Exchange Act

17    and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal

18    conduct charged herein or as controlling persons as alleged below.

19

20    61.    Defendants, individually and in concert, directly and indirectly, by the use, means or

instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

21    continuous course of conduct to conceal adverse material information about the business, operations

22    and future prospects of Luminent as specified herein.

23

24    62.    These defendants employed devices, schemes and artifices to defraud, while in

possession of material adverse non-public information and engaged in acts, practices, and a course of

25    conduct as alleged herein in an effort to assure investors of Luminent's value and performance and

26    continued substantial growth, which included the making of, or the participation in the making of,

27    untrue statements of material facts and omitting to state material facts necessary in order to make the

28

19

1  statements made about Luminent and its business operations and future prospects in the light of the

2  circumstances under which they were made, not misleading, as set forth more particularly herein,

3  and engaged in transactions, practices and a course of business which operated as a fraud and deceit

4  upon the purchasers of Luminent common stock during the Class Period.

5        63.      Each of the Individual Defendants' primary liability, and controlling person liability,

6  arises from the following facts: (i) the Individual Defendants were high-level executives and/or

7  directors at the Company during the Class Period and members of the Company's management team

8  or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as

9  a senior officer and/or director of the Company was privy to and participated in the creation,

10 development and reporting of the Company's internal budgets, plans, projections and/or reports;

11 (iii) each of these defendants enjoyed significant personal contact and familiarity with the other

12 defendants and was advised of and had access to other members of the Company's management

13 team, internal reports and other data and information about the Company's finances, operations, and

14 sales at all relevant times; and (iv) each of these defendants was aware of the Company's

15 dissemination of information to the investing public which they knew or recklessly disregarded was

16 materially false and misleading.

17       64.      The defendants had actual knowledge of the misrepresentations and omissions of

18 material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

19 ascertain and to disclose such facts. Such defendants' material misrepresentations and/or omissions

20 were done knowingly or with recklessly for the purpose and effect of concealing Luminent's

21 operating condition and future business prospects from the investing public and supporting the

22 artificially inflated price of its common stock. As demonstrated by defendants' overstatements and

23 misstatements of the Company's business, operations and earnings throughout the Class Period,

24 defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged,

25 were reckless in failing to obtain such knowledge by recklessly refraining from taking those steps

26 necessary to discover whether those statements were false or misleading.

27       65.      As a result of the dissemination of the materially false and misleading information

28 and failure to disclose material facts, as set forth above, the market price of Luminent common stock

CLASS ACTION COMPLAINT

1  was artificially inflated during the Class Period. In ignorance of the fact that market prices of

2  Luminent's publicly-traded common stock were artificially inflated, and relying directly or indirectly

3  on the false and misleading statements made by defendants, or upon the integrity of the market in

4  which the securities trade, and/or on the absence of material adverse information that was known to

5  or recklessly disregarded by defendants but not disclosed in public statements by defendants during

6  the Class Period, Plaintiff and the other members of the Class acquired Luminent common stock

7  during the Class Period at artificially-high prices and were damaged thereby.

8      66.    At the time of said misrepresentations and omissions, Plaintiff and other members of

9  the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other

10  members of the Class and the marketplace known the truth regarding the problems that Luminent

11  was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class

12  would not have purchased or otherwise acquired their Luminent common stock, or, if they had

13  acquired such common stock during the Class Period, they would not have done so at the artificially

14  inflated prices which they paid.

15      67.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange

16  Act, and Rule 10b-5 promulgated thereunder.

17      68.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the

18  other members of the Class suffered damages in connection with their respective purchases and sales

19  of the Company's common stock during the Class Period.

20                              **COUNT II**

21              **Violation Of Section 20(a) Of The**
            **Exchange Act Against The Individual Defendants**
22

23      69.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

24  forth herein.

25      70.    The Individual Defendants acted as controlling persons of Luminent within the

26  meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

27  positions, and their ownership and contractual rights, participation in and/or awareness of the

28  Company's operations and/or intimate knowledge of the false financial statements filed by the

21

1  Company with the SEC and disseminated to the investing public, the Individual Defendants had the

2  power to influence and control and did influence and control, directly or indirectly, the decision-

3  making of the Company, including the content and dissemination of the various statements which

4  Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had

5  unlimited access to copies of the Company's reports, press releases, public filings and other

6  statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

7  issued and had the ability to prevent the issuance of the statements or cause the statements to be

8  corrected.

9       71.   In particular, each of these defendants had direct and supervisory involvement in the

10  day-to-day operations of the Company and, therefore, is presumed to have had the power to control

11  or influence the particular transactions giving rise to the securities violations as alleged herein, and

12  exercised the same.

13       72.   As set forth above, Luminent and the Individual Defendants each violated Section

14  10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their

15  positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the

16  Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other

17  members of the Class suffered damages in connection with their purchases of the Company's

18  common stock during the Class Period.

19      **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

20      A.   Determining that this action is a proper class action, designating Plaintiff as Lead

21  Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil

22  Procedure and Plaintiff's counsel as Lead Counsel;

23      B.   Awarding compensatory damages in favor of Plaintiff and the other Class members

24  against all defendants, jointly and severally, for all damages sustained as a result of defendants'

25  wrongdoing, in an amount to be proven at trial, including interest thereon;

26      C.   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this

27  action, including counsel fees and expert fees;

28

1       D.    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity

2 and the federal statutory provisions sued hereunder, and any appropriate state law remedies to assure

3 that the Class has an effective remedy; and

4       E.    Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

6    Plaintiff hereby demands a trial by jury.

7 DATED: August 8, 2007        **AUDET PARTNERS, LLP**

                                Michael McShane

Michael McShane (State Bar No. 127944)
mmcshane@audetlaw.com
Adel A. Nadji (State Bar No. 232599)
anadji@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Shane Rowley
Richard Schwartz
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

**GARDY & NOTIS, LLP**
Mark C. Gardy
440 Sylvan Avenue, Suite 110
Englewood Cliffs, NJ 07632
Telephone: (201) 567-7377
Facsimile: (201) 457-7337

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT

**CERTIFICATION OF JOSEPH LEONE**
**IN SUPPORT OF CLASS ACTION COMPLAINT**

Joseph Leone ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing.

2.     Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     During the proposed Class Period, plaintiff executed the following transactions relating to Luminent Mortgage Capital, Inc.:

5.     Purchase of 1000 shares at $7.969 per share on 07/27/07

6.     In the past three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws.

7.     Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

8.     The foregoing are, to the best of my knowledge and belief, true and correct statements.

DATED:   August 8, 2007

_____
Joseph Leone