# EXHIBIT F

COPY

1  Nicole Lavallee (SBN 165755)
   Email: nlavallee@bermanesq.com
2  Julie J. Bai (SBN 227047)
   Email: jbai@bermanesq.com
3  **BERMAN DeVALERIO PEASE TABACCO**
   **BURT & PUCILLO**
4  425 California Street, Suite 2100
   San Francisco, CA  94104
5  Telephone: (415) 433-3200
   Facsimile:  (415) 433-6382
6
   **Local Counsel**
7
   Sherrie R. Savett
8  Email: ssavett@bm.net
   Arthur Stock
9  Email: astock@bm.net
   Jeffrey L. Osterwise
10 Email: josterwise@bm.net
   **BERGER & MONTAGUE, P.C.**
11 1622 Locust Street
   Philadelphia, PA  19103
12 Telephone: (215) 875-3000
   Facsimile: (215) 875-4604
13
   **Attorneys for Plaintiff Allen M. Metzger**
14

15              **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA**

17                                                          **MHP**

18 ALLEN M. METZGER, on behalf of himself    No.  07  4686
   and all others similarly situated,
19                                             **COMPLAINT FOR VIOLATION OF THE**
20              Plaintiff,                      **FEDERAL SECURITIES LAWS**

21          v.                                  CLASS ACTION

22 LUMINENT MORTGAGE CAPITAL, INC.,            DEMAND FOR JURY TRIAL
   GAIL P. SENECA, SEWELL TREZEVANT
23 MOORE, JR., and CHRISTOPHER J. ZYDA,
24              Defendants.
25
26
27
28

   COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

E-filing

1    Plaintiff Allen M. Metzger, by his undersigned attorneys, alleges the following based upon

2    personal knowledge as to his own acts, and information and belief as to all other matters, based

3    upon, inter alia, the investigation conducted by and through his attorneys, which included, among

4    other things, a review of the public documents and announcements made by the defendants,

5    Securities and Exchange Commission ("SEC") filings, press releases, news articles and analyst

6    reports regarding Luminent Mortgage Capital, Inc. ("Luminent" or "Company"). Plaintiff believes

7    that substantial evidentiary support will exist for the allegations set forth herein after a reasonable

8    opportunity for discovery.

9                                   **NATURE OF THE ACTION**

10    1.    This is a securities fraud class action on behalf of all purchasers of the publicly

11    traded securities of Luminent between October 10, 2006 and August 6, 2007, inclusive (the "Class

12    Period"), against Luminent and certain of its officers and directors for violations of the Securities

13    Exchange Act of 1934 ("1934 Act").

14    2.    Luminent is a real estate investment trust ("REIT") that invests in United States

15    agency and other single-family, adjustable-rate, hybrid adjustable-rate and fixed-rate mortgage-

16    backed securities, which it acquires in the secondary market.

17    3.    During the Class Period, defendants engaged in a scheme and course of action,

18    including the making of materially false and misleading statements regarding the Company's

19    business and its financial results. Specifically, throughout the Class Period, defendants assured

20    investors that Luminent's business was sound, that it made "high-quality" investments and that it

21    had adequate liquidity. Defendants' false and misleading statements caused Luminent's stock price

22    to be artificially inflated during the Class Period.

23    4.    On July 30, 2007, the Company announced that "its second quarter dividend

24    payment of $0.32 per share, payable to stockholders on August 8, 2007, [was] secure and w[ould]

25    not be canceled" and that "as of July 30, 2007 [the Company was] in full compliance with all its

26    financial covenants...[and] had ample liquidity to manage its business."

27    5.    Nevertheless, on August 6, 2007 after the market closed, the Company shocked

28    investors by announcing that it was "simultaneously experiencing a significant increase in margin

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                          1

1    calls on its highest quality assets and a decrease on the financing advance rates provided by its

2    lenders." The Company also announced that its Board of Directors had suspended payment of

3    Luminent's second quarter cash dividend of $0.32 per share on Luminent's common stock,

4    cancelled Luminent's second quarter 2007 earnings release conference call and delayed the filing of

5    Luminent's quarterly report on Form 10-Q for the second quarter of 2007.

6        6.      The market reacted swiftly to the Company's August 6, 2007 announcement. On

7    August 7, 2007 the price of Luminent's stock plummeted $3.30 per share to a close at $1.08 per

8    share, a one-day decline of 75% from its close on August 6, 2007 on unusually high trading

9    volume.

10       7.      Luminent attempted to reassure investors on August 7, 2007 by announcing that it

11    was "moving forward with its efforts to enhance its liquidity and preserve the value of its portfolio

12    of assets which is comprised substantially of high quality mortgage loans." The Company

13    reiterated that it had "experienced a significant increase in margin calls on its highest quality

14    assets...and a decrease on the financing advance rates provided by its lenders." In reaction to this

15    announcement, the price of Luminent stock fell again on unusually high trading volume to close at

16    $0.95 per share.

17       8.      The Complaint alleges that, during the Class Period, defendants were aware of, but

18    failed to disclose to the public that:

19           (a)      the Company's investments were not "high quality" as previously

20    represented;

21           (b)      the Company had failed to employ a disciplined and sophisticated hedging

22    program for the interest rate and credit risks in its portfolio;

23           (c)      the Company would be unable to maintain its regular dividend payment to

24    shareholders going forward;

25           (d)      that the Company lacked adequate internal and financial controls; and

26           (e)      that, as a result of the above, the Company's statements about its financial

27    well-being and future business prospects were lacking in a reasonable basis when made.

28       9.      The drop in the price of Luminent stock, which was caused by the revelation of

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS         2

1  Company-specific adverse information that had previously been misrepresented to, or withheld

2  from, the market, proximately caused huge damages to investors who purchased Luminent stock

3  during the Class Period.

4  **JURISDICTION AND VENUE**

5      10.    The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C.

6  §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5.  Jurisdiction exists pursuant to 28

7  U.S.C. §§1331 and 1337 and §27 of the 1934 Act, 15 U.S.C. §78aa.

8      11.    Venue is proper in this District because Luminent has its principal place of business

9  in this District, and many violations of law complained of herein occurred in substantial part in this

10  District, including the dissemination of materially false and misleading statements and the omission

11  of material information complained of herein.

12      12.    Defendants used the instrumentalities of interstate commerce, the U.S. mails and the

13  facilities of the national securities markets in connection with the wrongful activity alleged herein.

14  **PARTIES**

15      13.    Plaintiff Allen M. Metzger purchased shares of Luminent common stock, as set forth

16  in the accompanying certification, and was damaged thereby.

17      14.    Defendant Luminent is a Maryland corporation with its principal executive office

18  located at 101 California Street, Suite 1350, San Francisco, California.

19      15.    Defendant Gail P. Seneca ("Seneca") was, at relevant times, the Company's Chief

20  Executive Officer ("CEO") until May 2007 and the Chairman of the Board of Directors.

21      16.    Defendant Sewell Trezevant Moore, Jr. ("Moore") was, at relevant times, the

22  Company's Chief Operating Officer ("COO") and a member of the Board of Directors. Defendant

23  Moore was appointed the Company's CEO in May 2007.

24      17.    Defendant Christopher J. Zyda ("Zyda") was, at relevant times, the Company's

25  Chief Financial Officer ("CFO") and Senior Vice President.

26      18.    Defendants Seneca, Moore and Zyda are referred to herein as the "Individual

27  Defendants." The Individual Defendants, because of their positions with the Company, possessed

28  the power and authority to control the contents of Luminent's reports to the SEC, press releases and

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    3

1  presentations to securities analysts, money and portfolio managers and institutional investors, i.e.,

2  the marker.  Each Individual Defendant was provided with copies of the Company's reports and

3  press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the

4  ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their

5  positions and access to material non-public information available to them, each of the Individual

6  Defendants knew that the adverse facts specified herein had not been disclosed to, and were being

7  concealed from, the public, and that the positive representations which were being made were then

8  materially false and misleading.  The Individual Defendants are liable for the false statements

9  pleaded herein, as those statements were each "group-published" information, the result of the

10  collective actions of the Individual Defendants.

11  ## CLASS ACTION ALLEGATIONS

12  19.    Plaintiff brings this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and

13  (b)(3), on behalf of a class consisting of all persons who purchased the publicly traded securities of

14  Luminent between October 10, 2006 and August 6, 2007, inclusive, and who were damaged thereby

15  ("Class").  Excluded from the Class are defendants, the officers and directors of the Company,

16  members of their immediate families and their legal representatives, heirs, successors and assigns

17  and any entity in which defendants have or had a controlling interest.

18  20.    The members of the Class are so numerous that joinder of all members is

19  impracticable. While the exact number of Class members is unknown to plaintiff at this time and

20  can only be ascertained through appropriate discovery, there were nearly 48 million shares of

21  Luminent common stock outstanding as of February 28, 2007 and plaintiff believes that there are

22  hundreds, if not thousands, of Class members.  Members of the Class may be identified from

23  records maintained by Luminent or its transfer agent and may be notified of the pendency of this

24  action by mail, using a form of notice similar to that customarily used in securities class actions.

25  21.    Plaintiff's claims are typical of those of the Class members as all Class members

26  were similarly affected by defendants' wrongful conduct in violation of federal law.

27  22.    Plaintiff will fairly and adequately protect the interests of the other members of the

28  Class and has retained counsel competent and experienced in class action and securities litigation.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                        4

1   Plaintiff has no interests antagonistic to those of the Class.

2       23.     There are questions of law and fact common to all Class members, which
3   predominate over any questions affecting only individual Class members, including:

4               (a)     Whether the federal securities laws were violated by defendants' actions as
5   alleged herein;

6               (b)     Whether documents, releases and/or statements disseminated to the investing
7   public during the Class Period omitted and/or misrepresented material facts which were necessary
8   to have been included in order to make the representations not misleading;

9               (c)     Whether defendants acted knowingly or with reckless disregard of the truth
10  in omitting and/or misrepresenting material facts;

11              (d)     Whether the market price of the Company's publicly traded securities was
12  artificially inflated during the Class Period due to the non-disclosures and/or material
13  misrepresentations complained of herein; and

14              (e)     Whether the Class members have suffered damages and, if so, what is the
15  proper measure of damages.

16      24.     A class action is superior to other available methods for the fair and efficient
17  adjudication of this controversy.  Since the damages suffered by individual Class members may be
18  relatively small, the expense and burden of individual litigation make it virtually impossible for
19  Class members to individually seek redress for the wrongful conduct alleged.

20      25.     Plaintiff knows of no difficulty which will be encountered in the management of this
21  litigation which precludes its maintenance as a class action.

22                          **SUBSTANTIVE ALLEGATIONS**

23  **BACKGROUND**

24      26.     Luminent is a REIT that invests U.S. agency and other single family, adjustable-rate,
25  hybrid adjustable-rate and fixed-rate mortgage-backed securities which it acquires in the secondary
26  market. In 2005, Luminent expanded its mortgage investment strategy to include mortgage loan
27  acquisition and securitization, as well as investments in mortgage-backed securities that have credit
28  ratings of below AAA.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                     5

**MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD**

27.    On October 10, 2006, the first day of the Class Period, the Company issued a press release entitled "Luminent Mortgage Capital Announces Public Offering of Common Stock." The press release, in relevant part, stated:

> Luminent Mortgage Capital, Inc. (NYSE: LUM) announced today that it is offering five million shares of common stock in an underwritten public offering. The underwriters will be granted a 30-day option to purchase up to an additional 750 thousand shares of common stock.
>
> A registration statement relating to these securities has been filed with, and declared effective by, the Securities and Exchange Commission.
>
> UBS Investment Bank is the sole book-running manager of the offering, with JMP Securities acting as the co-lead manager.

28.    On the same day, the Company filed a Preliminary Prospectus with the SEC, which, among other things, emphasized the quality of the Company's investments, stating:

> Our primary objective is to provide a secure stream of income for our stockholders based on the steady and reliable payment of residential mortgages made to borrowers of prime credit quality.
>
> * * *
>
> We review the credit risk associated with each potential investment and may diversify our portfolio to avoid undue geographic, product, originator, servicer and other types of concentrations. By maintaining a large percentage of our assets in a highly diversified pool of high quality, highly-rated assets, we believe we can mitigate our exposure to losses from credit risk. We have significant credit enhancement that protects our investment in the assets we own that are not rated AAA or better. We employ rigorous due diligence and underwriting criteria to qualify whole Loan assets for our portfolio in order to mitigate risk. This due diligence includes performing compliance sampling in states with predatory lending statutes, valuation analysis and layered credit risk analysis using a suite of software screening tools.

29.    On October 12, 2006, the Company issued a press release entitled "Luminent Mortgage Capital Upsizes and Prices Common Stock Offering at $10.25 Per Share." The press release, in relevant part, stated:

> Luminent Mortgage Capital, Inc. (NYSE: LUM) announced today that it upsized and priced a public offering of six million shares at $10.25 per share. Luminent expects gross proceeds of $61.5 million from the sale, which the company intends to use to purchase mortgage assets as part of its Residential Mortgage Credit and Spread strategies. The underwriters have been granted a 30-day option to purchase up to an additional 900 thousand shares of common stock.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    6

A registration statement relating to these securities has been filed with, and declared effective by, the Securities and Exchange Commission.

UBS Investment Bank was the sole book-running manager of the offering, with JMP Securities acting as the co-lead manager.

30.    On November 9, 2006, the Company issued a press release entitled "Luminent Mortgage Capital, Inc. Third Quarter Earnings: Ongoing Strength - Adjusted REIT taxable net income of $0.30 per share, up 67% year-over-year - Core earnings of $0.29 per share, up 142% year-over-year - Third quarter dividend of $0.30 per share; annualized yield of 11.2% - Special dividend of $0.075 per share declared October 10, 2006." The press release, in relevant part, stated:

> Luminent Mortgage Capital, Inc. (NYSE: LUM) today reported a net loss for the quarter ended September 30, 2006 of $6.6 million, or $0.17 per share, and core earnings of $11.2 million, or $0.29 per share. Core earnings adjust for gains and losses on derivative instruments and one-time charges. REIT taxable net income for the quarter ended September 30, 2006 was $8.7 million, or $0.21 per share, and adjusted REIT taxable net income, was $12.0 million or $0.30 per share. The one-time charges to both GAAP income and REIT taxable income in the quarter reflect the completion of Luminent's transition to full internal management. REIT taxable net income is the basis upon which Luminent determines its dividends. The difference between GAAP net income and core earnings and REIT taxable net income is detailed in the additional financial information provided on pages seven and eight of this release.

> Consistent with Luminent's goal to produce attractive income streams, Luminent declared a third quarter dividend of $0.30 per share, which was paid on November 6, 2006 to stockholders of record on October 9, 2006. Based on Luminent's November 8, 2006 closing stock price of $10.69, the $0.30 third quarter dividend equates to an annualized dividend yield of 11.2%. This historical yield should not be construed as a predictor of Luminent's future dividend yield. Luminent declared a special dividend of $0.075 per share, which will be paid on November 10, 2006 to stockholders of record on October 20, 2006. The quarterly dividend of $0.30 per share and the special dividend of $0.075 per share were fully supported by REIT taxable net income and do not represent a return of capital. After payment of these dividends, Luminent's undistributed taxable income balance was approximately $5.9 million at September 30, 2006, before any earnings for the fourth quarter of 2006 are considered.

> "We are pleased to report another excellent quarter," said Gail P. Seneca, Chairman of the Board and Chief Executive Officer. "Consistent with our strategy, we again added high quality assets to our balance sheet and financed them efficiently, securing a stream of long-term, recurring cash flow to support our growing dividend. We believe that our attractive $0.30 dividend is sustainable. We continue to identify profitable investment opportunities, which should drive our earnings in the year ahead."

> Trez Moore, President and Chief Operating Officer, commented, "Amid challenging mortgage market conditions this year, Luminent has consistently produced strong and growing core earnings, and solid returns on equity. Luminent's risk management disciplines have largely insulated us from interest rate turbulence, liquidity shocks and severe credit losses. Our investment disciplines should continue to serve our stockholders well."

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                          7

Other highlights include:

- Robust net interest spread: 119 basis points on a REIT taxable basis, net of servicing expense

- Strong return on equity: 12.1% on an adjusted REIT taxable basis

- Asset growth: $6.4 billion, up 15% from second quarter and 31% year-over-year

- Momentum in high credit quality residential mortgage credit strategy

  * $772.7 million prime quality, first lien loans acquired and securitized in the third quarter

  * $4.4 billion prime quality, first lien loans acquired and securitized to date

- Solid credit performance

  * Zero credit losses

  * Delinquencies below industry averages

- Minimal interest rate exposure

  * "Matched-book" funding strategy

  * Over 90% of assets float monthly, net of hedges

- Moderate leverage: 5.4x on a recourse basis

- CDO initiative to drive further asset and profitability growth

- Strong common stock performance: 52% total return year-to-date

The composition of Luminent's mortgage asset portfolio is diverse and high quality. At September 30, 2006, 67% of Luminent's mortgage assets were prime quality, first lien loans with an average FICO score of 711, a moderate-sized average loan balance of $392 thousand, and strong down payment protection, with an average loan to value ratio of 76%. The vast majority of these mortgage loans are on single-family, owner-occupied homes. 24% of Luminent's mortgage assets at September 30, 2006 were adjustable-rate AAA-rated or agency-guaranteed mortgage-backed securities, virtually all of which have coupons that are currently resetting. 9% of Luminent's mortgage assets at September 30, 2006 were adjustable-rate mortgage-backed securities rated below AAA, with an average overall rating of A-.

* * *

Luminent is committed to high credit quality. Approximately 92% of Luminent's assets carry AAA, AA or A ratings, or have been securitized into bonds with AAA, AA or A ratings. Non-investment grade securities, including retained tranches of Luminent securitizations, totaled less than 4% of Luminent's total assets at September 30, 2006. First loss exposure, calculated on the same basis, was less than 60 basis points of total assets at September 30, 2006.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    8

—

Credit performance is solid. Luminent's seriously delinquent (90+ days) loan rate of approximately 43 basis points of total loans held for investment as of September 30, 2006 is well below the industry average for prime quality loans. As of September 30, 2006, Luminent had realized no credit losses on its portfolio of loans held for investment. Loss reserve levels were increased during the quarter to reflect loan seasoning.

Luminent originated and securitized a $772.7 million, prime quality loan package during the third quarter. Capital market reception was excellent, with an overall weighted-average funding cost of LIBOR plus 22 basis points. This securitization financed whole loan assets with non-recourse, match-funded debt.

* * *

Luminent maintains a strong capital position and modest leverage. Cash and unencumbered assets were approximately $280 million at September 30, 2006. Luminent's recourse leverage ratio, defined as total recourse financing liabilities as a ratio of total stockholders' equity and 30-year debt, was 5.4x at September 30, 2006.

Luminent's funding strategy exhibits diversification, low borrowing costs and increasing use of non-recourse, match-funded loans. Repurchase agreement financing declined to just 42% of total liabilities at September 30, 2006. On August 2, 2006, Luminent established a $1 billion single-seller commercial paper facility, Luminent Star Funding I, to fund its mortgage-backed securities portfolio. This facility will further reduce Luminent's reliance on repurchase agreement financing.

31.    On November 9, 2006, Luminent also filed its Quarterly Report with the SEC on Form 10-Q, which included the same financial results previously reported. In addition, the Company's Form 10-Q contained Sarbanes-Oxley required certifications, signed by Seneca and Zyda, which stated:

I, [Gail P. Seneca / Christopher J. Zyda], certify that:

1.    I have reviewed this quarterly report on Form 10-Q of Luminent Mortgage Capital, Inc. (the Registrant);

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this report;

4.    The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Registrant and have:

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    9

a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)    Evaluated the effectiveness of the Registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

d)    Disclosed in this report any change in the Registrant's internal control over financial reporting that occurred during the Registrant's most recent fiscal quarter (the Registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to affect, the Registrant's internal control over financial reporting; and

5.    The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Registrant's auditors and the audit committee of Registrant's board of directors (or persons performing the equivalent functions):

a)    All significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the Registrant's ability to record, process, summarize and report financial information; and

b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal control over financial reporting.

* * *

In connection with the Quarterly Report of Luminent Mortgage Capital, Inc. (the Company) on Form 10-Q for the quarter ended September 30, 2006 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, [Gail P. Seneca, Chairman of the Board of Directors and Chief Executive Officer / Christopher J. Zyda, Chief Financial Officer] of the Company, hereby certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, to the best of my knowledge, that:

1.    The Report fully complies with the requirements of Section 13(a) or Section 15(d) of the Securities Exchange Act of 1934; and

2.    The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    10

1       32.    On January 25, 2007, the Company issued a press release entitled "Luminent

2  Mortgage Capital Announces Its Ninth Loan Securitization." The press release, in relevant part,

3  stated:

4        Luminent Mortgage Capital, Inc. (NYSE: LUM) today announced the successful

5        execution of LUM 2007-1, a securitization of $706.8 million of prime quality
          mortgage loans.

6        "This transaction advances Luminent's goal to create and secure high quality,
          recurring cash flows," said Gail P. Seneca, Luminent's Chief Executive Officer and

7        Chairman of the Board. "LUM 2007-1 contributes to the sustainability of our
          dividend over the long-term."

8

9        "We are extremely pleased with the execution of our scheduled quarterly
          securitization," said Trez Moore, Luminent's President and Chief Operating Officer.

10      "Our record tight print of LIBOR + 16.5 basis points on our AAA securities will
         provide the basis for strong dividends well into the future."

11      The collateral in LUM 2007-1 consists of prime quality adjustable rate mortgages,

12      with an average FICO of 7 19 and an average loan-to-value of 72.9%. These
         characteristics are consistent with the high quality focus of Luminent's credit profile.

13      "LUM 2007-1 has credit enhancement from multiple sources including subordination,

14      excess interest, overcollateralization, allocation of losses and a primary mortgage
         insurance policy for all loans with loan-to-value in excess of 80%. In addition,

15      Luminent has arranged for lender paid primary mortgage insurance ("LPMI") which
         covers substantially all the mortgage loans with loan-to-value ratios ranging from

16      75% through 80%," said Megan Mahoney, Luminent's Senior Vice President of
         Client Relations. "In addition, the Class I certificates will also have the benefit of a

17      swap and a cap agreement. The LPMI was provided by Triad Guaranty Insurance
         Corporation and the derivatives by The Royal Bank of Scotland PLC through its

18      agent, Greenwich Capital Markets, Inc."

19      "We are pleased to have played an important part in this most recent securitization of
         mortgage loans and value our growing relationship with Luminent," stated Mark K.

20      Tonnesen, President and Chief Executive Officer, Triad Guaranty Insurance
         Corporation.

21       33.    On February 9, 2007, the Company issued a press release entitled "Luminent

22  Mortgage Capital Fourth Quarter and Full Year 2006 Earnings: Solid Growth in Earnings and

23  Prime Quality Portfolio - Fourth quarter adjusted REIT taxable net income of $0.34 per share, up

24  13% quarter-over-quarter - Full-year REIT taxable net income of $41.0 million, up 31% versus

25  2005 - Full-year 2006 dividends declared of $0.925, up more than 20% versus 2005 - Dividend

26  yield of 12.6% based on February 8, 2007 closing stock price of $9.52 - Fourth quarter book value

27  per share of $9.86, up quarter-over-quarter and year-over-year - Strong credit profile and

28  performance - 92% of assets A rated or higher - Prime quality loans and AAA securities are 90% of

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          11

1    assets." The press release, in relevant part, stated:

2    Luminent Mortgage Capital, Inc. (NYSE: LUM) today reported net income for the
     quarter ended December 31, 2006 of $18.0 million, or $0.39 per share, and core
3    earnings of $14.4 million, or $0.31 per share. REIT taxable net income for the quarter
     ended December 31, 2006 was $12.6 million, or $0.26 per share, and adjusted REIT
4    taxable net income, was $16.5 million, or $0.34 per share. Fourth quarter core
     earnings adjust for the mark-to-market on hedging instruments and fourth quarter
5    adjusted REIT taxable net income adjusts for final payments related to the
     internalization of management. The difference between GAAP net income and core
6    earnings, and REIT taxable net income and adjusted REIT taxable net income is
     detailed in the additional financial information provided on pages seven and eight of
7    this release.

8    For the year ended December 31, 2006, Luminent reported net income of $46.8
     million, or $1.14 per share, and core earnings of $45.2 million, or $1.10 per share.
9    REIT taxable net income for the year ended December 31, 2006 was $41.0 million, or
     $0.97 per share. Adjusted REIT taxable net income for the year ended December 31,
10   2006 was $48.1 million, or $1.14 per share. The strong year-over-year income growth
     reflects the successful broadening of Luminent's business platform from a passive
11   agency mortgage-backed securities REIT to an active mortgage asset manager.

12   "We are very pleased with our fourth quarter and full-year results," said Gail P.
     Seneca, Chief Executive Officer and Chairman of the Board of Directors. "We
13   distinguished ourselves among mortgage REITs by growing our dividend, our book
     value, and our profitability in 2006. During the year, we built the foundation to
14   deliver an ongoing stream of strong and consistent dividends. Our high credit quality,
     non-interest rate sensitive model is working."
15

16   "Luminent is uniquely positioned to prosper in a challenging mortgage environment,"
     commented Trez Moore, President and Chief Operating Officer. "Luminent's
17   business is investment management. Our model is neither volume driven nor sub
     prime focused. We manage mortgage assets and employ risk disciplines that ensure
18   high credit quality and minimize interest rate sensitivity. With Luminent's
     sophisticated infrastructure and seasoned professionals, we are confident that we can
19   sustain solid credit performance and produce attractive dividends. We look forward to
     another year of delivering strong returns to our investors."
20

     Additional financial highlights include:
21

22   • Robust net interest spread: 158 basis points for the fourth quarter and 144
        basis points for the full year
23

     • Strong return on equity: 15.7% for the fourth quarter and 11.4% for the
24      full year

25   • Asset growth: total assets of $8.6 billion, up 35% from the third quarter
        and 75% from December 2005
26
        ○ $800 million in prime quality loans securitizations in the fourth
27          quarter

28      ○ $4.6 billion prime quality securitizations in 2006

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    12

- Record net interest income: $29.6 million in fourth quarter 2006, up 35% over third quarter 2006

- Solid credit performance

  o Delinquencies less than half the industry average

- Solid credit quality

  o 92% of assets are rated A or higher

  o Prime quality whole loan portfolio

- Minimal interest rate exposure

  o "Matched-book" funding strategy

  o 89% of mortgage assets float monthly, including the impact of hedges

  o Virtually zero duration gap

- Moderate leverage: 7.4x on a recourse basis

Luminent's credit quality is strong. 92% of Luminent's assets are rated A or higher or have been securitized into mortgage-backed securities rated A or higher. 65% of Luminent's assets are first lien, prime quality mortgages. Overall, the average FICO score is 713 and down payments are strong, with an average loan-to-value ratio, net of mortgage insurance, of 72.6%. 25% of Luminent's assets consist of AAA or agency-backed mortgage-backed securities. 9% of Luminent's assets consist of other mortgage-backed securities with an average credit rating of BBB+.

Luminent's credit performance is sound. Serious delinquencies (90 days +) stand at 54 basis points, less than half the industry average.

Book value at December 31, 2006 grew to $9.86 per share, net of the $0.375 of dividends declared during the quarter. The improvement in book value during a volatile year demonstrates the high credit quality of the portfolio and the effectiveness of sophisticated hedging techniques.

* * *

Luminent maintains a strong capital position and modest leverage. Cash and unencumbered assets were in excess of $200 million at December 31, 2006. Luminent's recourse leverage ratio, defined as recourse financing liabilities as a ratio of stockholders' equity plus long-term debt, was 7.4x at December 31, 2006. During the fourth quarter, Luminent improved its capital efficiency by launching a single-seller commercial paper program, Luminent Star Funding I. Luminent intends to issue CDOs in 2007 which will further improve its capital efficiency.

Luminent's funding strategy exhibits diversification, low borrowing costs, and extensive reliance on non-recourse, matched-funded financing. Repurchase agreement financing declined to just 33% of total liabilities at December 31, 2006, down from 87% at December 31, 2005.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          13

During the fourth quarter, Luminent executed its eighth loan securitization, LUM 2006-7, consisting of $800 million prime quality mortgages. The average FICO score of mortgage borrowers in this transaction was 719. The average loan-to-value ratio of the loans was 64.8%, net of mortgage insurance. All loans with 75% or greater loan-to-value ratio carried private mortgage insurance. Capital market reception was excellent, with average funding costs of LIBOR plus 19 basis points on the AAA-rated tranches of the securitization. The debt created in the securitization is non-recourse, match-funded and not marked-to-market.

At year-end, Luminent had $773 million of unsecuritized loans on its balance sheet. In January 2007, Luminent executed its ninth loan securitization, LUM 2007-1, consisting of $707 million prime quality mortgages. The average FICO score of mortgage borrowers in this transaction was 719. The average loan-to-value ratio of the loans was 72.1%, net of mortgage insurance. All loans with 75% or greater loan-to-value ratios carried private mortgage insurance. Average funding costs were LIBOR plus 16.5 basis points on the AAA-rated tranches of the deal, Luminent's best pricing to date.

Luminent issued 6.9 million shares of its common stock during the quarter ended December 31, 2006, and raised gross proceeds of $70.7 million.

Luminent paid a special dividend during the quarter ended December 31, 2006 of $0.075 cents per share and declared a fourth quarter of 2006 dividend of $0.30 per actual share. Luminent estimates that its undistributed REIT taxable net income balance as of December 31, 2006 was approximately $4.4 million, or $0.09 per actual share outstanding.

34.    On March 16, 2007, Luminent filed its Annual Report with the SEC on Form 10-K, which included results for the fourth quarter 2006, and included the same financial results previously reported. With respect to internal controls, the Company stated that its management, with the participation of its CEO and CFO, had evaluated the effectiveness of the Company's disclosure controls and procedures, and concluded that they were effective as of December 31, 2006. Additionally, the Company's 10-K contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶31.

35.    On May 10, 2007, the Company issued a press release entitled "Luminent Mortgage Capital Announces Strong First Quarter Earnings - Strong credit profile and performance - 93% of securitized assets rated A or higher - Zero subprime mortgage loans - Delinquencies well below industry average - Virtually zero credit losses - First quarter REIT taxable net income of $0.30 per share, up 43% year-over-year and 15% quarter-over-quarter - First quarter dividend $0.30 per share - Dividend yield of 13.6% based on May 9, 2007 closing stock price of $8.85." The press release, in relevant part, stated:

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                14

Luminent Mortgage Capital, Inc. (NYSE: LUM) today reported net income for the quarter ended March 31, 2007 of $14.4 million, or $0.30 per share. Estimated REIT taxable net income for the quarter ended March 31, 2007 was $14.3 million, or $0.30 per share.

"Our solid first quarter results reflect Luminent's asset management skill and effective risk management," said Gail P. Seneca, Chairman of the Board. "In a turbulent quarter, Luminent maintained its dividend and grew its book value. With an estimated 14 cents of undistributed REIT taxable net income and increasingly attractive opportunities to deploy our capital, we believe our dividend will remain strong."

"Luminent is performing well in this challenging mortgage market. As the market struggles, our investment opportunities increase," stated Trez Moore, Chief Executive Officer. "We slowed our acquisition activity in the first quarter, in anticipation of better opportunities with the passage of time. These opportunities have now materialized, in the form of higher product quality, wider credit spreads and lower loan prices. As we invest on more favorable terms, Luminent shareholders should benefit."

"Luminent's profile is ideal for the current environment," Mr. Moore continued. "We are an asset manager, not a loan originator. As such, we lack the loan repurchase risk, high cost infrastructure and earnings volatility of an originator. We own no subprime loans. Our credit profile is strong. We assume no interest rate risk. We have safeguarded our liquidity, and are now able to invest on very attractive terms."

* * *

Luminent's credit quality is strong. 93% of Luminent's securitized assets are rated A or higher. 62%, or $5.6 billion, of Luminent's total assets are first lien, prime quality mortgages, with an overall average FICO score of 714 and an average loan-to-value ratio, net of mortgage insurance, of 72.8%. 25%, or $2.3 billion, of Luminent's total assets consist of AAA-rated or agency-backed mortgage-backed securities. 11%, or $965 million, of Luminent's total assets consist of other mortgage-backed securities with an average credit rating of A-. Only 3% of Luminent's total assets are non-investment grade and just 0.6% are exposed to first loss. Luminent has no subprime loan exposure.

Luminent's credit performance is solid. Serious delinquencies (90+ days) stand at 87 basis points, significantly less than the Mortgage Bankers Association average for prime loans. Credit losses were virtually zero in the quarter. Luminent's reserve for loan losses now stands at $8.3 million, which is based on an appropriately conservative loan loss policy that considers portfolio characteristics, seasoning and expected loss severities.

Book value at March 31, 2007 grew from the fourth quarter to $9.87 per share, net of the $0.30 first quarter dividend. The improvement in book value during a volatile quarter demonstrates the high credit quality of the portfolio and the effectiveness of sophisticated hedging techniques, including those used to hedge credit exposure.

* * *

Luminent maintains a strong capital position and modest leverage. Cash and unencumbered assets were in excess of $200 million at March 31, 2007. Luminent's recourse leverage ratio, defined as recourse financing liabilities as a ratio of stockholders' equity plus long-term debt, was 7.1x at March 31, 2007. Luminent's

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    15

funding strategy exhibits diversification, low borrowing costs and extensive reliance on non-recourse, matched-funded financing. Repurchase agreement financing constituted just 34% of total liabilities at March 31, 2007, down from 87% at December 31, 2005. Luminent has ample liquidity to finance its investments, and successfully executed two major financing transactions during the first quarter despite market dislocations. Luminent expects to complete additional financing facilities in the second quarter, as major lenders refocus their businesses on sound counterparties such as Luminent.

Luminent continues to enjoy excellent access to the capital markets, due to its high quality profile. In January 2007, Luminent executed its ninth loan securitization, LUM 2007-1, consisting of $707 million of prime quality mortgages. The average FICO score of mortgage borrowers in this transaction was 719. The average loan-to-value ratio of the loans was 72.1%, net of mortgage insurance. All loans with 75% or greater loan-to-value ratios carried private mortgage insurance. Average funding costs were LIBOR plus 16.5 basis points on the AAA-rated tranches of the securitization, an excellent level, reflecting healthy demand for the Luminent name. The debt created in the securitization is non-recourse, match-funded and not marked-to-market.

In March 2007, Luminent further improved its capital efficiency by issuing its first collateralized debt obligation (CDO) in the amount of $400 million. "We were extremely pleased to be able to issue a CDO in the first quarter's difficult market environment," said Mr. Moore. "Our ability to complete a CDO during a time when most issuers could not is a testament to the respect we have earned with investors."

* * *

Luminent declared a first quarter 2007 dividend of $0.30 per actual share on March 30, 2007 and this dividend was paid on May 9, 2007 to stockholders of record as of April 11, 2007. Luminent estimates that its undistributed REIT taxable net income balance as of March 31, 2007 was approximately $6.7 million, or $0.14 per actual share outstanding.

36.    On May 10, 2007, the Company also filed its Quarterly Report with the SEC on Form 10-Q, which included the same financial results previously reported. Additionally, the Company's 10-Q contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶31.

37.    On June 5, 2007, the Company issued a press release entitled "Luminent Mortgage Capital Announces Completion of $90 Million of Convertible Senior Notes Offering and Repurchase of $18 Million of Shares of Common Stock." The press release, in relevant part, stated:

Luminent Mortgage Capital, Inc. (NYSE: LUM) announced today that it has completed its previously announced offering of its 8.125% convertible senior notes due 2027 to the initial purchaser of the notes. Luminent issued $90 million aggregate principal amount of the notes in this offering.

The net proceeds from the offering of the notes, after deducting the initial purchaser's discount and the estimated offering expenses, are estimated to be approximately $87 million. Luminent used a portion of the net proceeds from the offering to repurchase

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                     16

its common shares at a price of $9.13 per share (the closing price on May 30, 2007) for an aggregate purchase price of $18 million. Luminent will apply the balance of the net proceeds, approximately $69 million, for general corporate purposes, principally investment in its targeted asset classes.

Prior to June 1, 2026, upon the occurrence of specified events, the notes will be convertible at the option of the holder at an initial conversion rate of 89.4114 shares per $1,000 principal amount of notes. The initial conversion price of approximately $11.18 represents a 22.5% premium to the closing price of $9.13 per share of Luminent common stock on May 30, 2007. On or after June 1, 2026, the notes will be convertible at any time prior to the second business day prior to maturity at the option of the holder. Upon conversion of notes by a holder, the holder will receive cash up to the principal amount of such notes and, with respect to the remainder, if any, of the conversion value in excess of such principal amount, at the option of Luminent in cash or in shares of Luminent's common stock. The initial conversion rate is subject to adjustment in certain circumstances.

Prior to June 5, 2012, the notes will not be redeemable at Luminent's option, except to preserve Luminent's status as a REIT. On or after June 5, 2012, Luminent may redeem all or a portion of the notes at a redemption price equal to the principal amount plus accrued and unpaid interest (including additional interest), if any.

Note holders may require Luminent to repurchase all or a portion of the notes at a purchase price equal to the principal amount plus accrued and unpaid interest (including additional interest), if any, on the notes on June 1, 2012, June 1, 2017, and June 1, 2022, or upon the occurrence of certain change in control transactions prior to June 5, 2012.

38.   On June 27, 2007, the Company issued a press release entitled "Luminent Mortgage Capital Announces a Dividend Increase to $0.32 Per Share for the Second Quarter of 2007." The press release, in relevant part, stated:

The Board of Directors of Luminent Mortgage Capital, Inc. (NYSE: LUM) today declared a cash dividend for the second quarter of 2007 of $0.32 per share, payable on August 8, 2007 to stockholders of record on July 11, 2007. The second quarter 2007 dividend of $0.32 per share represents a 7% increase quarter-over-quarter and a 60% increase year-over-year. Luminent's annualized dividend yield, based on its second quarter 2007 cash dividend and the June 27, 2007 closing stock price of $9.90, is 12.9%.

"Our disciplined high quality investment strategy has allowed us to increase our dividend to our shareholders by nearly 7% during a period of unprecedented turmoil in the mortgage industry," said S. Trezevant Moore Jr., Luminent's Chief Executive Officer. "The rise in intermediate and longer-term rates has not affected us as our investments are based on short-term interest rates. Our recently completed convertible bond offering has provided us with more than ample liquidity to invest in today's market conditions. We are optimistic that further profitable investments may be available to us in the near term as capital markets continue to rebalance. In fact, we expect that our new, higher, dividend will be easily sustainable in the near future."

39.   On July 30, 2007, the Company issued a press release entitled "Luminent Mortgage Capital, Inc. Confirms Second Quarter Dividend Payment of $0.32 per Share Secure, Full

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    17

1    Compliance With All Financial Covenants, and Ample Liquidity." The press release, in relevant

2    part, stated:

3        Luminent Mortgage Capital, Inc. (NYSE: LUM) announced today that its second
         quarter dividend payment of $0.32 per share, payable to stockholders on August 8,
4        2007, is secure and will not be canceled.

5        In addition, Luminent confirmed that as of July 30, 2007 it is in full compliance with
         all its financial covenants. Furthermore, Luminent confirmed that as of July 30, 2007
6        it had ample liquidity to manage its business.

7        Luminent reiterated that it is an investor in, and not an originator of, mortgage loans.
         As such, Luminent is not subject to the loan repurchase risk that is currently
8        impacting certain loan originators. Instead, Luminent purchases high quality
         mortgage loans from originators, and only after Luminent conducts exhaustive due
9        diligence on each and every loan. As of June 30, 2007, Luminent's 15,327 of whole
         loans had a weighted-average FICO score of 715, a weighted-average loan-to-value
10       ratio net of mortgage insurance of 71%, and 86.4% of these loans were on owner-
         occupied properties.
11
         In addition, Luminent reiterated that it employs a disciplined and sophisticated
12       hedging program for the interest rate and credit risks in its portfolio using Eurodollar
         futures, interest rate swaps, swaptions, interest rate caps, and by shorting various
13       portions of the ABX indices as well as employing single-name credit default swaps.
         During the quarter ended June 30, 2007, the strong performance of Luminent's credit
14       hedges more than offset the income statement and balance sheet impact of mark-to-
         market pricing and certain impairment charges related to its credit sensitive assets.
15       This strong performance of Luminent's disciplined hedging program was one of the
         contributors to the increase in Luminent's book value per share to $10.05 as of June
16       30, 2007.

17       40.    The above statements by defendants, alleged herein in ¶¶27-39 were materially false

18    and misleading because they failed to disclose or indicate that:

19            (a)    the Company's investments were not "high quality" as previously

20    represented;

21            (b)    the Company had failed to employ a disciplined and sophisticated hedging

22    program for the interest rate and credit risks in its portfolio;

23            (c)    the Company would be unable to maintain its regular dividend payment to

24    shareholders going forward;

25            (d)    the Company lacked adequate internal and financial controls; and

26            (e)    as a result of the above, the Company's statements about its financial well-

27    being and future business prospects were lacking in a reasonable basis when made.

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                               18

**THE TRUTH BEGINS TO EMERGE**

41.    On August 6, 2007, the Company issued a press release entitled "Luminent Mortgage Capital, Inc. Announcements." The press release, in relevant part, stated:

> Luminent Mortgage Capital, Inc. (NYSE: LUM) announced today that, since August 3, 2007, the mortgage industry, and the financing methods that the mortgage industry relies upon, have deteriorated significantly and in an unprecedented fashion. Effectively, the secondary market for mortgage loans and mortgage-backed securities has seized-up. As a result, Luminent is simultaneously experiencing a significant increase in margin calls on its highest quality assets and a decrease on the financing advance rates provided by its lenders.
>
> In a Board of Directors meeting today, Luminent's Board unanimously voted to take the following actions:
>
> •    The Board of Directors suspended payment of Luminent's second quarter cash dividend of 32 cents per share on Luminent's common stock.
>
> •    The Board of Directors extended the maturity of the outstanding commercial paper issued by Luminent Star Funding Trust I, a special purpose subsidiary of Luminent, by 110 days.
>
> •    The Board of Directors cancelled Luminent's second quarter 2007 earnings release conference call, scheduled for Thursday, August 9, 2007, at 10:00 a.m. PDT, to discuss its second quarter of 2007 results of operations.
>
> •    The Board of Directors delayed the filing of Luminent's quarterly report on form 10-Q for the second quarter of 2007. Luminent's second quarter of 2007 unaudited condensed financial information is attached to this press release. Luminent's independent registered public accounting firm has not completed a review of the financial information for the three and six months ended June 30, 2007.
>
> •    The Board of Directors authorized Luminent's senior management to inform the New York Stock Exchange of these unfolding events and, as a result, trading was halted in Luminent's common stock.
>
> The Board of Directors currently is considering the full range of strategic alternatives to enhance Luminent's liquidity and preserve shareholder value during this period of market volatility.

42.    In reaction to this shocking announcement, Luminent's shares fell $3.30 to a close on August 7, 2007 of $1.08 per share, a one-day decline of 75% on unusually heavy trading volume.

43.    Analysts reacted swiftly to the Company's announcement.  On August 7, 2007 Deutsche Bank issued a report entitled "Luminent Mortgage - How quickly things change; Downgrading to Sell." The report, in relevant part, stated:

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    19

## Margin calls and decreased advance rates impact Luminent

Just seven days after confirming its 2Q dividend and "ample" liquidity, Luminent suspended the payment of its 2Q dividend as it faces margin calls and decreased advance rates. The significant and sudden market deterioration will likely force Luminent to sell assets to meet margin calls. As a result of the market deterioration, our belief the difficulties will continue, and the uncertainty of future dividends, we are cutting our rating to a Sell from Buy. We are decreasing our target to $3 per share from $12 per share.

## How quickly things change

On July 30, Luminent stated its 2Q dividend was secure and would not be canceled and stated the company had ample liquidity to operate. On August 6, just seven days later, the company was forced to suspend the payment of its 2Q dividend as it faced a significant increase in margin calls against the highest-quality assets and decreased advance rates. As a result of the significant and rapid market deterioration, we expect Luminent to liquidate assets to meet margin calls.

## Reducing price target to $3 per share from $12 per share

We are sharply reducing our book value multiple and decreasing our book value estimate. Our new target is based on a 60% discount (down from a 20% premium) to our new YE book value estimate of $7.50 per share. We believe the significant discount is appropriate given the liquidity concerns, dividend uncertainty, and market conditions.

* * *

## Reducing estimates

While we expect Luminent to release additional information in the coming days about its liquidity position and balance sheet, we are adjusting our estimates to reflect the likely sale of some assets to meet margin calls.

We are reducing our 2007 taxable earnings estimate to $0.05 per share from $1.30 per share, primarily due to a 3Q losses related to the sale of MBS. We also do not assume any dividends are paid for the remainder of 2007.

For 2008, we are reducing our taxable earnings estimate to $0.80 per share from $1.57 per share due to a decrease in earnings assets and lower leverage assumptions. We have reduced our 2008 dividend estimate to $0.70 per share from $1.50 per share.

44.    On August 7, 2007 the Company issued a press release entitled "Luminent Moving Forward with Efforts to Enhance Its Liquidity." The press release, in relevant part, stated:

Luminent Mortgage Capital, Inc. (NYSE: LUM) today reported it is moving forward with its efforts to enhance its liquidity and preserve the value of its portfolio of assets which is comprised substantially of high quality mortgage loans. Luminent emphasized that, unlike other companies that are being affected by the sudden and extraordinary disruptions in the secondary and national real estate markets, it is an investor in, and not an originator of, mortgage loans. Luminent purchases its mortgage loans only after extensive due diligence.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    20

* * *

Luminent recently reported that, because the financing methods the mortgage industry normally relies upon have deteriorated in an unprecedented fashion, it has experienced a significant increase in margin calls on its highest quality assets, especially since August 3, and a decrease on the financing advance rates provided by its lenders.

Trez Moore, Chief Executive Officer of Luminent, stated, "Luminent is committed to undertaking all appropriate initiatives with respect to its business. With the expertise of our strong management team, which has consistently proven its ability to successfully execute on our business model, we are moving forward with our efforts to address the company's liquidity needs caused by the current mortgage market dislocations."

45.    On news of this, Luminent shares fell again to close at $0.95 per share on unusually heavy trading volume.

## ADDITIONAL SCIENTER ALLEGATIONS

46.    As alleged herein, defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein, defendants, by virtue of their receipt of information reflecting the true facts regarding Luminent, their control over, and/or receipt and/or modification of, Luminent's materially misleading misstatements and omissions and/or their associations with the Company which made them privy to confidential proprietary information concerning Luminent, participated in the fraudulent scheme alleged herein.

47.    Additionally, during the Class Period, and with Luminent's stock trading at artificially inflated prices, the Company used the price of its artificially inflated stock to complete financing activities. For example, on October 13, 2006, the Company offered 6.9 million shares of its stock to the public at a price of $10.25 per share, for gross proceeds of over $70.7 million. In addition, on June 5, 2007, the Company completed an offering of $90 million of 8.125% convertible senior notes at an initial conversion price of $11.18 per share.

48.    The facts alleged herein compel a strong inference, that is cogent and at least as compelling as any opposing inference of nonfraudulent intent, that defendants made materially false

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                21

1 | and misleading statements to the investing public with scienter.

2 | **NO SAFE HARBOR**

3 |     49.    The statutory safe harbor provided for forward-looking statements under certain
4 | circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.
5 | Many of the specific statements pleaded herein were not identified as "forward-looking statements"
6 | when made. To the extent there were any forward-looking statements, there were no meaningful
7 | cautionary statements identifying important factors that could cause actual results to differ
8 | materially from those in the purportedly forward-looking statements. Alternatively, to the extent
9 | that the statutory safe harbor does apply to any forward-looking statements pleaded herein,
10 | defendants are liable for those false forward-looking statements because at the time each of those
11 | forward-looking statements was made, the particular speaker knew that the particular forward-
12 | looking statement was false, and/or the forward-looking statement was authorized and/or approved
13 | by an executive officer of Luminent who knew that those statements were false when made.

14 | **LOSS CAUSATION**

15 |     50.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused
16 | the economic loss suffered by plaintiff and the Class.

17 |     51.    During the Class Period, plaintiff and the Class purchased Luminent securities at
18 | artificially inflated prices and were damaged thereby. The price of Luminent's securities
19 | significantly declined when the misrepresentations made to the market, and/or the information
20 | alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,
21 | causing investors' losses.

22 | **RELIANCE ALLEGATIONS**

23 | **FRAUD-ON-THE-MARKET DOCTRINE**

24 |     52.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-
25 | on-the-market doctrine in that, among other things:

26 |     (a)    Luminent common stock met the requirements for listing, and was listed, on
27 | the New York Stock Exchange, a highly efficient market;

28 |     (b)    as a regulated issuer, the Company filed periodic public reports with the

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        22

1    SEC;

2          (c)    the trading volume of the Company's stock was substantial, reflecting

3    numerous trades each day;

4          (d)    Luminent was followed by securities analysts employed by several major

5    brokerage firms, which wrote reports which were distributed to the sales force and certain

6    customers of such firms, and which were available to various automated data retrieval services;

7          (e)    the misrepresentations and omissions alleged herein were material and would

8    tend to induce a reasonable investor to misjudge the value of Luminent common stock; and

9          (f)    plaintiff and the other members of the Class purchased their common stock

10   during the Class Period without knowledge of the omitted or misrepresented facts.

11         53.    Based upon the foregoing, plaintiff and the other members of the Class are entitled

12   to a presumption of reliance upon the integrity of the market for the purpose of class certification,

13   as well as for ultimate proof of their claims on the merits. Plaintiff will also rely, in part, upon the

14   presumption of reliance established by material omissions.

15                                COUNT I
                    (VIOLATION OF §10(B) OF THE 1934 ACT AND RULE 10B-5
16            PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS)

17         54.    Plaintiff repeats and realleges each and every allegation contained in ¶¶1-53.

18         55.    During the Class Period, defendants carried out a plan, scheme and course of

19   conduct which was intended to, and throughout the Class Period did, deceive the investing public,

20   including plaintiff and other Class members, as alleged in this Complaint and caused plaintiff and

21   other Class members to purchase Luminent stock at artificially inflated prices.  In furtherance of

22   this unlawful scheme and course of conduct, defendants, and each of them, took the actions set

23   forth in this Complaint.

24         56.    Defendants (a) employed devices, schemes and artifices to defraud; (b) made untrue

25   statements of material fact and/or omitted to state material facts necessary to make the statements

26   made not misleading; and (c) engaged in acts, practices and a course of business which operated as

27   a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain

28   artificially high market prices for Luminent stock in violation of §10(b) of the 1934 Act and Rule

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                          23

1  10b-5. All defendants are sued as primary participants in the wrongful and illegal conduct and

2  fraudulent scheme and course of business charged in this Complaint.

3      57.   These defendants employed devices, schemes and artifices to defraud. While in

4  possession of material adverse non-public information, they engaged in acts, practices and a scheme

5  as alleged herein in an effort to assure investors of Luminent's business and financial success and

6  prospects for continued success. This included the making of, or the participation in the making of,

7  untrue statements of material fact and concealing facts necessary in order to make the statements

8  made, in the light of the circumstances under which they were made, not misleading. This conduct

9  artificially inflated the price of Luminent stock and operated as a fraud and deceit upon the

10  purchasers of Luminent stock during the Class Period, proximately causing them economic loss and

11  damage.

12      58.   Defendants had actual knowledge of the misrepresentations and omissions of

13  material facts set forth in this Complaint, or acted with reckless disregard of the truth in that they

14  failed to ascertain and to disclose such facts, even though such facts were available to them.

15      59.   As a result of the dissemination of the materially false and misleading information

16  and failure to disclose material facts, as set forth above, the market price of Luminent stock was

17  artificially inflated during the Class Period. Relying directly or indirectly on the false and

18  misleading statements made by defendants or upon the integrity of the market in Luminent stock,

19  plaintiff and the other Class members purchased Luminent stock during the Class Period at

20  artificially high prices and were damaged thereby.

21      60.   At the time of defendants' misrepresentations and omissions, plaintiff and other

22  Class members were ignorant of their falsity. Had plaintiff, other Class members and the market

23  known the truth which was not disclosed by defendants, plaintiff and other Class members would

24  not have purchased their Luminent stock, or, if they had acquired such stock during the Class

25  Period, they would not have done so at the artificially inflated prices which they paid.

26      61.   As a direct and proximate result of defendants' wrongful conduct, plaintiff and the

27  other Class members suffered damages in connection with their respective purchases and sales of

28  the Company's stock during the Class Period.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    24

## COUNT II
### (VIOLATION OF §20(A) OF THE 1934 ACT
### AGAINST ALL DEFENDANTS)

62.   Plaintiff repeats and realleges each and every allegation contained in ¶¶1-61.

63.   During the Class Period, the Individual Defendants acted as controlling persons of Luminent within the meaning of §20(a) of the 1934 Act as alleged in this Complaint. By virtue of their business expertise, high-level positions, ownership and contractual rights, participation in and/or awareness of the Company's operations, accounting policies and methods and/or intimate knowledge of the financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to, and/or shortly after, these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.   In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations and in the accounting policies and practices of the Company and, therefore, each is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged in this Complaint, and exercised the same. The Company controlled the Individual Defendants and all of its employees.

65.   As set forth above, Luminent and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to §20(a) of the 1934 Act. As a direct and proximate result of the Individual Defendants' wrongful conduct, plaintiff and other Class members suffered damages in connection with their purchases of the Company's stock during the Class Period.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRAYER

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure, and certifying his counsel as Class counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other members of the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, including pre-judgment and post-judgment interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: September 11, 2007

BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO

By: _____
              NICOLE LAVALLEE

Julie J. Bai
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

**Local Counsel**

Sherrie R. Savett
Arthur Stock
Jeffrey L. Osterwise
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

**Attorneys for Plaintiff Allen M. Metzger**

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    26

## LUMINENT MORTGAGE CAPITAL, INC.
### CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

*ALLEN M. METZGER*

Alan Metzger ("Plaintiff"), does hereby duly swear and says, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a complaint against Luminent Mortgage Capital, Inc. ("Luminent") and certain of its officers and directors, and Plaintiff approves of its contents, and authorizes his selected counsel, Berger & Montague, P.C. to file a complaint and/or lead plaintiff papers on his behalf.

2.    Plaintiff did not purchase the securities that are the subject of this action at the direction of his counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative plaintiff on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transactions in the securities of Luminent between and including October 10, 2006 and August 6, 2007, inclusive (the "Class Period"), are as follows:

| Securities Purchased (Shares of Common Stock) | Date of Purchase | Price per Security |
|---|---|---|
| 500 | 07/30/2007 | $7.98 |

5.    Plaintiff has not sought to serve as a class representative in any other action filed under the United States federal securities laws in the past three (3) years preceding the date on which this certification is signed.

6.    Plaintiff has not accepted and will not accept any payment for serving as a representative plaintiff on behalf of the class beyond his pro rata share of any recovery, or as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this ___ day of _SEPTEMBER_, 2007.

By: _____

Alan Metzger

*ALLEN M. METZGER*

malta431199-002.wpd