Patrice L. Bishop (182256)
service@ssbla.com
STULL, STULL & BRODY
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA  90024
Tel:    (310) 209-2468
Fax:    (310) 209-2087

Jules Brody
SSBNY@aol.com
Howard T. Longman
tsvi@aol.com
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel:    (212) 687-7230
Fax:    (212) 490-2022

Jeffrey S. Abraham
jabraham@aftlaw.com
Lawrence D. Levit
llevit@aftlaw.com
ABRAHAM, FRUCHTER & TWERSKY, LLP
One Penn Plaza
Suite 2805
New York, NY  10119
Tel:    (212) 279-5050
Fax:    (212) 279-3655

**Proposed Lead Counsel for Plaintiffs**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH LEONE, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>S. TREZEVANT MOORE, JR., CHRISTOPHER J. ZYDA, ELEANOR CORNFELD MELTON, RONALD VIERA, DIMITRIOS PAPATHEOHARIS, LUMINENT MORTGAGE CAPITAL, INC.,<br><br>                    Defendants.<br>_____ | CASE NO. 07-CV-04073 PJH<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION BY WILLIAM F. KORNFELD, JR., AND DENNIS KOCH FOR APPOINTMENT OF LEAD PLAINTIFFS AND LEAD COUNSEL PURSUANT TO SECTION 21D OF THE SECURITIES EXCHANGE ACT OF 1934, AND FOR CONSOLIDATION OF ALL RELATED ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:   November 14, 2007<br>TIME:    9:00 a.m.<br>JUDGE:  Honorable Phyllis J. Hamilton<br>CTRM:   3, 17th Floor |

# TABLE OF CONTENTS

**PAGE NO.**

Table of Authorities ................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 3

    I.    INTRODUCTION ..................................................... 3

FACTUAL AND PROCEDURAL BACKGROUND ................................. 4

ARGUMENT .......................................................................... 8

    I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR THE PURPOSES OF EFFICIENCY AND JUDICIAL ECONOMY ................ 8

    II.    MOVANTS ARE THE MOST ADEQUATE PLAINTIFFS UNDER THE PSLRA AND SHOULD BE APPOINTED LEAD PLAINTIFFS .......... 9

        A.    Movants Made Their Motion Within 60 Days of Publication of Notice ... 10
        B.    Movants Have the Largest Financial Interest in the Relief Sought ....... 10
        C.    The Proposed Lead Plaintiffs Are Qualified under Rule 23 ............ 11

    III.    THIS COURT SHOULD APPROVE THE PROPOSED LEAD PLAINTIFFS' CHOICE OF LEAD COUNSEL ....................................... 13

    IV.    CONCLUSION ..................................................... 14

i

NOTICE, MOTION & MEMO OF P's & A's BY WILLIAM F. KORNFELD, JR. AND DENNIS KOCH FOR APPT OF LEAD PLTF, LEAD COUNSEL AND FOR CONSOLIDATION OF ALL RELATED ACTIONS
**CASE NO. 07-CV-04073 PJH**
W:\STULL\LUMINENT\PLD\LP Motion.wpd

# TABLE OF AUTHORITIES

**PAGE NO.**

**FEDERAL CASES**

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .................................................. 12

*Casden v. HPL Technologies, Inc.*,
2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003) ................................. 8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .................................................. 10

*Freedman v. Louisiana-Pacific Corp.*,
922 F. Supp. 377 (D. Or. 1996) ................................................ 12

*Guenther v. Pacific Telecom, Inc.*,
123 F.R.D. 333 (D. Or. 1988) .................................................. 12

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .................................................. 11

*In re Equity Funding Corp. of Am. Sec. Litig.*,
416 F. Supp. 161 (C.D. Cal. 1976) .............................................. 9

*In re THQ Inc. Sec. Litig.*,
2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ................................ 13

*Takeda v. Turbodyne Technologies, Inc.*,
67 F. Supp. 2d 1129 (C.D. Cal. 1999) ............................................ 8

*Weinberger v. Jackson*,
102 F.R.D. 839 (N.D. Cal. 1984) ............................................... 12

**FEDERAL STATUTES**

15 U.S.C. §78u-4 ................................................................ 3

15 U.S.C. §78u-4(a) ............................................................. 1

15 U.S.C. §78u-4(a)(3)(B) ....................................................... 3

15 U.S.C. §78u-4(a)(3)(A)(i)(II) ................................................. 9

15 U.S.C. §78u-4(a)(3)(B)(ii) ................................................... 9

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ............................................... 9

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ............................................... 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .......................................... 10

# TABLE OF AUTHORITIES

**PAGE NO.**

### FEDERAL STATUTES

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

15 U.S.C. §78u-4(a)(3)(B)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

15 U.S.C. §78u-4(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 14, 2007, at 9:00 a.m., before the Honorable Phyllis J. Hamilton in Courtroom 3, 17th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102-3483, William F. Kornfeld, Jr. and the Reverend Dennis Koch (hereinafter "Movants") will, and hereby do, move this Court for an order granting their Motion for Appointment of Lead Plaintiffs and Lead Counsel Pursuant to Section 21D of the Securities Exchange Act of 1934 and for Consolidation of All Related Actions (the "Motion").

This Motion is brought pursuant to Section 21D of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a), on the grounds that Movants have timely filed their Motion and are the "most adequate plaintiff[s]." Moreover, Movants meet the requirements of Rule 23 of the Federal Rules of Civil Procedure for the purposes of this Motion in that their claims are typical of the other class members' claims and Movants will fairly and adequately represent the class. Movants also seek the Court's approval of their selection of counsel, Stull, Stull & Brody and Abraham and Fruchter & Twersky, LLP, law firms with substantial experience in prosecuting securities fraud class actions, as Lead Counsel pursuant to §21D(a)(3)(B)(v), 15 U.S.C. §78u-4(a)(3)(B)(v). Finally, Movants seek to consolidate all related actions, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Patrice L. Bishop filed herewith, the pleadings and other files herein, and on such other written or oral argument as may be permitted by the Court.

Dated: October 9, 2007            Patrice L. Bishop
                                  STULL, STULL & BRODY


                        By:        /s/
                                  Patrice L. Bishop
                                  10940 Wilshire Boulevard
                                  Suite 2300
                                  Los Angeles, CA  90024
                                  Tel:   (310) 209-2468
                                  Fax:   (310) 209-2087

//

1
NOTICE, MOTION & MEMO OF P's & A's BY WILLIAM F. KORNFELD, JR. AND DENNIS KOCH FOR APPT OF LEAD PLTF, LEAD COUNSEL AND FOR CONSOLIDATION OF ALL RELATED ACTIONS
**CASE NO. 07-CV-04073 PJH**
W:\STULL\LUMINENT\PLD\LP Motion.wpd

| | |
|---|---|
| 1 | Jules Brody |
| 2 | Howard T. Longman<br>STULL, STULL & BRODY |
| 3 | 6 East 45th Street<br>New York, NY 10017 |
| 4 | Tel:    (212) 687-7230<br>Fax:    (212) 490-2022 |
| 5 | Jeffrey S. Abraham |
| 6 | Lawrence D. Levit<br>ABRAHAM, FRUCHTER & TWERSKY, LLP |
| 7 | One Penn Plaza<br>Suite 2805 |
| 8 | New York, NY 10119<br>Tel:    (212) 279-5050<br>Fax:    (212) 279-3655 |
| 9 | |
| 10 | Proposed Lead Counsel for Plaintiffs |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Presently pending in this District are six related securities fraud class actions against Luminent Mortgage Capital, Inc. ("Luminent" or the "Company") and certain of its officers and directors. All of the actions allege the same common scheme and course of conduct by defendants to defraud investors in violation of §10(b) and Rule 10b-5 promulgated thereunder, and §20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") (codified at 15 U.S.C. §78u-4), Movants respectfully submit their memorandum in support of their Motion for appointment as Lead Plaintiffs and approval of their choice of Stull, Stull & Brody and Abraham, Fruchter & Twersky, LLP as Lead Counsel and, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, consolidation of all related actions.

Movants acquired Luminent securities, and seek to represent all persons who acquired such securities from March 16, 2007 to August 6, 2007, inclusive (the "Class Period")[1] and suffered damages as a result of defendants' violations of the federal securities laws.[2] As is more fully alleged throughout the complaints, these actions arise from damages incurred by all persons who purchased securities of Luminent during the Class Period and were damaged thereby, excluding defendants, the officers and directors of the Company, at all relevant times, members of their immediate

---

[1] This is the Class Period alleged in the Amended Complaint that was electronically filed on October 8, 2007 in *Kaplowitz IRA v. Luminent Mortgage Capital, Inc.*, Case No. 07-CV-04140 PJH. Other complaints in the related cases allege different class periods. Movants believe that once consolidation occurs, lead plaintiffs should have the opportunity to file a consolidated amended complaint with the operative class period.

[2] The PSLRA specifically authorizes class members, regardless of whether they have filed a complaint, to move for appointment of Lead Plaintiff. *See* 15 U.S.C. §78u-4 (a)(3)(B). Movants have completed sworn certifications listing their purchases of Luminent stock and requesting that they be appointed Lead Plaintiffs. *See* Exhibit 2 to the Declaration of Patrice L. Bishop in Support of William F. Kornfeld, Jr. and Dennis Koch's Motion for Appointment of Lead Plaintiffs and Lead Counsel Pursuant to Section 21D of the Securities Exchange Act of 1934 and for Consolidation of All Related Actions (hereinafter "Bishop Decl. Ex.___"). Movants' counsel represents additional members of the Class who are also willing to be lead plaintiff, but have less in total damages than Movants.

families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest (the "Class") as a result of a scheme and common course of conduct by defendants which operated as a fraud and deceit on the Class during the Class Period. Defendants' scheme included making statements and omitting other information that claimed the Company was on firm financial footing when the opposite was true. Rather than being able to avoid the downturn in the residential mortgage market, as defendants had claimed, it was revealed at the end of the Class Period that Luminent had significant exposure to the downturn. On the disclosure of that news, the Company's stock price dropped dramatically.

In class actions filed under the federal securities laws, the PSLRA requires that courts appoint as lead plaintiffs those members of the Class that have satisfied certain procedural prerequisites and also constitute the "most adequate" representative of the purported Class. Movants amply satisfy the criteria for selection as lead plaintiffs for the investors they seek to represent. Therefore, they should be appointed as lead plaintiffs and their choice of counsel should be approved by the Court in accordance with the PSLRA.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Luminent is a real estate investment trust (REIT), which purportedly invests mainly in mortgage loans and mortgage-backed securities purchased from selected high-quality providers within certain criteria. In addition to Luminent, defendants are certain officers and/or directors of Luminent.

It is alleged that the Class Period begins on March 16, 2007, when Luminent filed its annual report on Form 10-K (the Form 10-K") with the Securities and Exchange Commission (the "SEC") for the fiscal year ended December 31, 2006. Item 7 of the Form 10-K contained management's discussion and analysis of financial condition and results of operations and, within that section, in a portion titled "Executive Summary" sought to reassure shareholders and potential investors in Luminent securities as to the soundness of the Company's operating strategies both with respect to credit risk and interest rate risk.

For example, in the Form 10-K, it was stated:

> ***Investors should distinguish our business model from that of a subprime originator***. We do not acquire subprime mortgage loans. We are not a direct originator of mortgage loans and therefore we are not subject to "early payment default" claims. We acquire mortgage loans exclusively from well-capitalized originators, who meet our standards for financial and operational quality. ***We maintain ample liquidity to manage our business and have largely match-funded our balance sheet***. During the last year, we have substantially reduced our reliance on short term repurchase agreement funding. ***As such, we experienced no liquidity strains during the recent market turmoil***.
>
> * * *
>
> ***Our credit performance bears no resemblance to subprime performance***, for which the Mortgage Banker's Association reports a serious delinquency rate of 772 basis points (7.72%) as of September 30, 2006. ***We evaluate our mortgage loan portfolio for impairment on a quarterly basis, and increase or decrease our allowance for loan losses based on that analysis***. Our allowance for loan losses was $5.0 million at December 31, 2006. ***When foreclosures occur, we believe we will realize modest severities, due to the low weighted-average loan-to-value ratios in our portfolio, and to current indications from our ongoing surveillance of property valuations on delinquent loans***.
>
> * * *
>
> ***We manage liquidity to ensure that we have the continuing ability to maintain cash flows that are adequate to fund operations and meet commitments on a timely and cost-effective basis***.

Emphasis added.

Similarly, the Form 10-K in Item 1, made the following statement intended to distinguish Luminent's operations from those companies active in the sub-prime market:

> Recently, the subprime mortgage banking environment has been experiencing considerable strain from rising delinquencies and liquidity pressures and several subprime mortgage lenders have failed. The increased scrutiny of the subprime lending market is one of the factors that have impacted general market conditions as well as perceptions of our business.
>
> Investors should distinguish our business model from that of a subprime originator. We do not acquire subprime mortgage loans. We are not a direct originator of mortgage loans and therefore we are not subject to "early payment default" claims. We acquire mortgage loans exclusively from well-capitalized originators, who meet our standards for financial and operational quality. We maintain ample liquidity to manage our business and have largely match-funded our balance sheet. During the last year, we have substantially reduced our reliance on short term repurchase agreement funding. As such, we experienced no liquidity strains during the recent market turmoil.

These statements were allegedly materially false or misleading because the purported actions taken to insulate the Company from credit risk and interest risk were inadequate to insulate the

5

Company from the risks inherent in investing in mortgage-backed securities on a leveraged basis, which was the Company's business strategy. In fact, the greatest risk to the Company was a repricing of such securities which, in turn, would set in motion potential defaults on credit agreements and thereby threaten the very solvency of Luminent. Thus, notwithstanding Defendants' reassurances to the contrary, Luminent was subject to the very same risk of collapse that sub-prime lenders experienced notwithstanding the higher credit quality of the mortgage-backed securities owned by Luminent and the purported hedging of interest rate risks.

On March 30, 2007, Luminent issued a press release announcing that the Company had declared a $0.30 per share dividend representing a large increase over the dividend paid in the first quarter of 2006. The press release quoted the Company's Chairman of the Board, Gail P. Seneca as stating that: "We are very pleased that Luminent's high quality and recurring cash flows continue to support a robust dividend."

This statement was allegedly materially false or misleading because the sustainability of Luminent's dividend and, indeed, the very solvency of Luminent, was more dependent on the market prices of mortgage-backed securities owned by Luminenet. The incremental value of additional cash flow achieved through the securitization of mortgages paled in comparison with those risks.

On May 10, 2007, Luminent issued a press release announcing its financial results for the first quarter of quarter of 2007, the period ending March 31, 2007. The Company reported net income of $0.30 per share. The press release touted the Company's solid credit footing, its excellent access to credit markets, and the like. In that release the Company sought to distance itself from the widely publicized downturn in the subprime mortgage industry. On May 29, 2007, Luminent issued another press release further touting its financial strength and also claiming that the Company had a low level of delinquent creditors as compared to its peers.

On May 31, 2007 the Company announced the pricing of its offering of $90 million of 8.125% convertible, 20 year notes. Luminent stated its expectation that it would "use up to $18 million of the net proceeds from the offering to concurrently repurchase shares of its common stock

6

NOTICE, MOTION & MEMO OF P's & A's BY WILLIAM F. KORNFELD, JR. AND DENNIS KOCH FOR APPT OF LEAD PLTF, LEAD COUNSEL AND FOR CONSOLIDATION OF ALL RELATED ACTIONS
**CASE NO. 07-CV-04073 PJH**
W:\STULL\LUMINENT\PLD\LP Motion.wpd

at a price of $9.13 per share . . . and to apply the balance for general corporate purposes, principally investment in its target asset classes."

With the release of the Company's newsletter to shareholders on July 23, 2007, Defendant S. Trezevant Moore, Jr., Luminent's Chief Executive Officer, signed off on the following statement:

> Careful attention to detail isn't particularly glamourous but it has real value. Our loans are safer, not only according to our own metrics, but validated by third parties such as Moody's. Our delinquencies are approximately 50 basis points less than the Alt-A market as a whole. We believe that we will have materially lower loss severities than the market as we have solid appraisal results on all our loans.
>
> *   *   *
>
> In our view, the mortgage market is perhaps a little more dependent on analysis of loan characteristics without actually ever reviewing the loan. Investors often cannot or are unable to examine the accuracy of the data used to make investment decisions. We make a concerted effort to do our homework using both traditional due diligence methods and state of the art software to cull out, for example, possible fraud. We believe that our underwriting discipline will hold our stakeholders in good stead and applaud the many other organizations that are being similarly careful.

However, on August 6, 2007, the truth began to emerge. That morning J.P Morgan downgraded the Company's stock due to their exposure to the residential mortgage market. The shares opened significantly lower and trading was halted midday due to pending news. The press release issued later that day announced that its cash dividend would be "suspended", that the Company was experiencing an increase in margin calls, and that the Company would delay filing of its quarterly report with the SEC. The press release stated in relevant part:

> Luminent Mortgage Capital, Inc., announced today that, since August 3, 2007, the mortgage industry, and financial methods that the mortgage industry relies upon, have deteriorated significantly and in an unprecedented fashion. Effectively, the secondary market for mortgage loans and mortgage backed securities has seized up. As a result, Luminent is simultaneously experiencing a significant increase in margin calls on its highest quality assets and a decrease on the financing advance rates provided by its lenders.

On August 7, 2007, the Company's shares closed at $1.08 down 75% from the previous day.

The first class action complaint *Leone v. Moore*, No. C-07-4073 (PJH), was filed in this District on or about August 8, 2007. Notice of the pending action was announced *via* news wire on that day, indicating, *inter alia*, that motions for lead plaintiff had to be filed no later then October 8,

7
NOTICE, MOTION & MEMO OF P's & A's BY WILLIAM F. KORNFELD, JR. AND DENNIS KOCH FOR APPT OF LEAD PLTF, LEAD COUNSEL AND FOR CONSOLIDATION OF ALL RELATED ACTIONS
**CASE NO. 07-CV-04073 PJH**
W:\STULL\LUMINENT\PLD\LP Motion.wpd

2007.³  *See* Bishop' Decl. Ex. 1.  Other actions were thereafter filed, which related to the *Leone* action, and other notices were disseminated.

## ARGUMENT

**I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR THE PURPOSES OF EFFICIENCY AND JUDICIAL ECONOMY**

Rule 42(a) of the Federal Rules of Civil Procedure provides that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Currently pending in this District are six related class action lawsuits which have been filed against essentially the same defendants.⁴  Movants believe consolidation of the six actions is appropriate because all actions involve common questions of law and fact and allege the same or similar claims under the federal securities laws on behalf of the same or similar plaintiff class.  In addition, all six actions will involve similar issues regarding class certification, and will undoubtedly involve identical discovery.  There is also no reason to believe that defendants would not support consolidation of these actions, as well as any subsequently filed related actions.

Courts routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.  *See, e.g.*, *Casden v. HPL Technologies, Inc.*, 2003 U.S. Dist. LEXIS 19606 at *5 (N.D. Cal. Sept. 29, 2003) (Walker, J.) (interests of judicial economy are particularly strong in securities class actions).  Any minor differences in asserted claims will not prevent consolidation.  *See Takeda v. Turbodyne Technologies, Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999).  Accordingly, these actions should

---

³ Additional notices were also published by counsel in subsequently filed actions.

⁴ The actions are: *Leone v. Moore, et al.*, Case No. 07-CV-04073 PJH (August 8, 2007); *Rosenbaum Capital, etc. v. Luminent Mortgage Capital, Inc., et al.*, Case No. 07-CV-4096 PJH (August 9, 2007); *Kaplowitz IRA, etc. v. Luminent Mortgage Capital, Inc., et al.*, Case No. 07-CV-04140 PJH (August 10, 2007); *Greenberg, etc. v. Luminent Mortgage Capital, Inc., et al.*, Case No. 07-CV-04141 PJH (August 13, 2007); *PEM Resources LP v. Luminent Mortgage Capital, Inc., et al.*, Case No. 07-CV-04184 PJH (August 15, 2007); *Metzger, etc. v. Luminent Mortgage Capital, Inc., et al.*, Case No. 07-CV-04686 PJH (August 11, 2007).

be consolidated in the interests of judicial economy and overall efficiency. Therefore, Movants respectfully request these six related cases be consolidated for all purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. *See also In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976) (noting that class action suits are ideally suited to consolidation since their unification expedites pretrial proceedings, reduces case duplication, avoids the contacting of parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned).[5]

## II. MOVANTS ARE THE MOST ADEQUATE PLAINTIFFS UNDER THE PSLRA AND SHOULD BE APPOINTED LEAD PLAINTIFFS

The PSLRA provides that within 60 days after the publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Section 21D(a)(3)(B) of the Exchange Act directs the Court to consider any motions by plaintiffs or purported class members to serve as Lead Plaintiffs in response to any such notice by not later than 90 days after the date of publication pursuant to §21D, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. Under this section of the Exchange Act, the court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person, or group of persons, which:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§21D(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

---

[5] Section 21D(a)(3)(B)(ii) of the Exchange Act also mandates consolidation in similar instances. "If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of appointment of lead plaintiff under §21D(a)(3)(B)(i)] until after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii).

Here, Mr. Kornfeld and Rev. Koch each satisfy all the prerequisites for appointment as lead plaintiff with respect to the Class they seek to represent and there is no infirmity in either of their abilities to fulfill their obligations properly.

### A.    Movants Made Their Motion Within 60 Days of Publication of Notice

The first requirement to being appointed a lead plaintiff is to have "either filed a complaint or made a motion in response to a notice . . . . " 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Here, a notice was issued on August 8, 2007, announcing that a class action had been commenced against Luminent and that any potential class member may be entitled to appointment as lead plaintiff in the action by filing a motion with the Court no later than October 8, 2007.[6]  *See* Bishop Decl., Ex. 1. By filing this motion, Mr. Kornfeld and Rev. Koch satisfy this requirement.

### B.    Movants Have the Largest Financial Interest in the Relief Sought

The second prerequisite to being appointed a lead plaintiff is that "in the determination of the court, [the plaintiff] has the largest financial interest in the relief sought by the class" of those persons moving to be appointed lead plaintiffs. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  The presumptive lead plaintiff has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002), *citing* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  To make this comparison, the district court must calculate each potential lead plaintiff's financial interest in the litigation. *Id* at 730, n.4.  In other words, the district court must compare the financial stakes of the various plaintiffs and determine which plaintiff has the most to gain from the lawsuit. *Id*. at 729-30.

During the Class Period, Movants purchased their Luminent stock at prices artificially inflated by defendants' false and misleading statements and have each suffered substantial losses. during the Class Period.[7]  *See* Bishop Decl. Ex. 3.  Indeed, as the result of their purchases during the

---

[6] Because October 8, 2007 was a federal holiday, lead plaintiff motions needed to be filed on or before October 9, 2007.

[7] Pursuant to Section 21D(e)(1) of the 1934 Act, the calculated damages for plaintiffs holding their shares through the end of the class period is "the difference between the purchase or

1  Class Period, Mr. Kornfeld incurred at least $427,119 in damages and Rev. Koch incurred $82,270
2  in damages. *Id.* To the best of their knowledge, Movants have the largest financial interest in the
3  relief sought by the Class. Movants are, therefore, presumptively the most adequate Lead Plaintiffs
4  pursuant to the PSLRA. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

### C. The Proposed Lead Plaintiffs Are Qualified under Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA provides that the Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of the class representative, Rule 23(a) requires that the claims be typical of the claims of the Class and that the representative will fairly and adequately protect the interests of the Class.

Here, Movants satisfy the typicality and adequacy requirements of Rule 23(a) because, as shown below, their claims are typical of the claims of the Class, they will fairly and adequately represent the interests of the Class because their interests are clearly aligned with the members of the Class and they have retained experienced class counsel to represent the Class.

#### 1. The Claims Of The Proposed Lead Plaintiff Are Typical Of The Claims Of The Class

The typicality requirement of Rule 23(a)(3) is satisfied when a named plaintiff has: (a) suffered the same or similar injuries as the absent class members; (b) as a result of the same course of conduct by defendants; and (c) the claims are based on the same legal issues. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)(citation omitted). "Typicality refers to the nature of the claim ... and not to specific facts.... Accordingly, differences in the amount of damage, the size or manner of [stock] purchase, [and] the nature of the

---

sale price paid or received . . . and the mean trading price of that security during the 90 day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. §78u-4(e)(1). Here, 90 days have not yet passed from the time information correcting the misstatements or omissions were disseminated to the market, so calculations were made as of the close of trading on October 8, 2007, the day prior to the submission of this motion.

11
NOTICE, MOTION & MEMO OF P's & A's BY WILLIAM F. KORNFELD, JR. AND DENNIS KOCH FOR APPT OF LEAD PLTF, LEAD COUNSEL AND FOR CONSOLIDATION OF ALL RELATED ACTIONS
**CASE NO. 07-CV-04073 PJH**
W:\STULL\LUMINENT\PLD\LP Motion.wpd

purchaser ... will not render a claim atypical in most securities cases." *Weinberger v. Jackson*, 102 F.R.D. 839, 844 (N.D. Cal. 1984) (citation omitted).

Here, the questions of law and fact common to the Class members which predominate over questions that may affect individual claims include:

    (a)    whether the federal securities laws were violated by defendants' acts;

    (b)    whether defendants' statements during the Class Period omitted and/or misrepresented material facts;

    (c)    whether defendants pursued the fraudulent scheme and course of conduct complained of;

    (d)    whether the defendants acted intentionally or recklessly;

    (e)    whether the market price of Luminent's stock was artificially inflated due to the activities complained of; and

    (f)    the extent of damages Class members sustained and the appropriate measure of those damages.

Movants' claims are typical of the claims of the members of the proposed Class. Movants, as do all members of the proposed Class, allege that Luminent and certain of its directors and high ranking officers, violated the Exchange Act by publicly disseminating false and misleading statements, and by failing to disclose material adverse facts about Luminent during the Class Period. Further, Movants, as did all of the members of the proposed Class, acquired Luminent securities at prices inflated by defendants' misrepresentations and omissions and were damaged thereby. The typicality requirement is satisfied here because the claims asserted by Movants are based on the same legal theory and arise from the "same event or course of conduct" giving rise to the claims of other class members. *See Guenther v. Pacific Telecom, Inc.*, 123 F.R.D. 333, 336 (D. Or. 1988). *Accord, Blackie v. Barrack,* 524 F.2d 891, 902-03 & n.19 (9th Cir. 1975), *cert. denied,* 429 U.S. 816 (1976); *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 399 (D. Or. 1996).

### 2. The Proposed Lead Plaintiffs Will Fairly And Adequately Represent The Interests Of The Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Adequacy depends on two questions: "(1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." *In re THQ Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753 at *20 (C.D. Cal. Mar. 22, 2002)(citation omitted).

Movants' interests are clearly aligned with the members of the proposed Class. There is no evidence of any antagonism between the interests of these individuals and the proposed Class members. As detailed above, Movants share substantially similar questions of law and fact with the members of the proposed Class, their claims are typical of the members of the Class, and they have taken significant steps to advance this litigation. They are the victims of the same conduct as the other members of the Class and their claims raise similar questions of law and fact as those other members. To further their own interests, they will necessarily have to advance the interests of all such Class members. Neither Mr. Kornfeld nor Rev. Koch have any conflict with the interests of the other members of the Class. They want to obtain the maximum recovery for the Class so as to maximize the recovery for themselves and all similarly situated members. In addition, Movants have amply demonstrated their adequacy to serve as class representatives by signing certifications affirming their willingness to serve as, and assume the responsibilities of, class representatives. Finally, Movants have selected and retained counsel highly experienced in prosecuting securities class actions such as this action to represent them. For these reasons, Movants should be appointed Lead Plaintiffs in the consolidated action.

### III. THIS COURT SHOULD APPROVE THE PROPOSED LEAD PLAINTIFFS' CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to court approval. *See* §21D(a)(3)(B)(v). Movants have selected the law firms of Stull, Stull & Brody and Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel for the Class. These firms possess extensive experience in the area of securities litigation and have successfully prosecuted

numerous securities fraud class actions on behalf of injured investors. *See* Bishop Decl. Exs. 4 and 5.

## IV. CONCLUSION

For all the foregoing reasons, Movants respectfully request that this Court consolidate all related securities class actions with the above captioned case pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, appoint Movants as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the 1934 Act, and approve their choice of Stull, Stull & Brody and Abraham, Fruchter & Twersky, LLP as Lead Counsel for the Class pursuant to Section 21D(a)(3)(B)(v) of the 1934 Act.

Dated: October 9, 2007

Patrice L. Bishop
STULL, STULL & BRODY

By: /s/
Patrice L. Bishop
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA 90024
Tel: (310) 209-2468
Fax: (310) 209-2087

Jules Brody
Howard T. Longman
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230
Fax: (212) 490-2022

Jeffrey S. Abraham
Lawrence D. Levit
ABRAHAM, FRUCHTER & TWERSKY, LLP
One Penn Plaza
Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655

Proposed Lead Counsel for Plaintiffs