1  Joseph J. Tabacco, Jr. (SBN 75484)
   E-mail: jtabacco@bermanesq.com
2  Nicole Lavallee (SBN 165755)
   E-mail: nlavallee@bermanesq.com
3  BERMAN DeVALERIO PEASE TABACCO BURT & PUCILLO
   425 California Street, Suite 2100
4  San Francisco, California 94104
   Telephone:    415-433-3200
5  Facsimile:    415-433-6382

6  *Local Counsel*

7  Richard Bemporad (admitted *pro hac vice*)
   E-mail: rbemporad@lowey.com
8  David C. Harrison (admitted *pro hac vice*)
   E-mail: dharrison@lowey.com
9  Jeanne D'Esposito (admitted *pro hac vice*)
   E-mail: jdesposito@lowey.com
10 LOWEY DANNENBERG BEMPORAD SELINGER & COHEN, P.C.
   One North Broadway
11 White Plains, New York 10601-2310
   Telephone:    914-997-0500
12 Facsimile:    914-997-0035

13 *Attorneys for Movant Southern*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LUMINENT MORTGAGE CAPITAL, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | C-07-04073 PJH<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY SOUTHERN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**<br><br>Date:  November 21, 2007<br>Time:  9:00 a.m.<br>Place: Courtroom 3, 17th Floor |

[C-07-04073 PJH] NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

NOTICE OF MOTION ..................................................................... 1

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF FACTS

    A.    The Claims ...................................................................... 2

    B.    The Pending Class Actions ...................................................... 3

ARGUMENT

    A.    Southern Should Be Appointed Lead Plaintiff

        1.    The Procedure Required Under the PSLRA
             for Appointment of Lead Plaintiff ............................................. 5

        2.    Southern Has Timely Moved
             for Appointment as Lead Plaintiff ............................................. 7

        3.    Southern Has the Largest Financial
             Interest in the Relief Sought by the Class ................................... 7

        4.    Southern Otherwise Satisfies
             the Requirements of Rule 23 ................................................ 8

    B.    Southern's Selection of LDBSC As
        Lead Counsel Should Be Approved ............................................. 11

CONCLUSION .......................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) .................................................. 2, 8

*Garber v. Juniper Networks, Inc.*,
   No. 06-04327, 2006 WL 3365547 (N.D. Cal. Nov. 20, 2006) ..................... 11

*Gerin, et al. v. Aegon USA, Inc.*,
   No. 06-5407, 2007 WL 108451 (N.D. Cal. Jan. 10, 2007) ..................... 8, 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................. 9

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .............................................................. 10

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ......................................... 2, 5, 6, 8, 9, 11

*In re Cendant Corp. Sec. Litig.*,
   264 F.3d 206 (3d Cir. 2001) ............................................................. 6, 7

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................................. 8

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002) ......................................................... 10

*In re Impac Mortgage Holdings, Inc. Sec. Litig.*,
   No. 8:06-00031, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 2, 2006) ..... 8, 10

*In re Oracle Securities Litigation*,
   852 F. Supp. 1437 (N.D. Cal. 1994) .................................................... 11

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
   Case No. 01-1950, 2007 WL 2683729 (N.D. Ga. Sept. 7, 2007) ............. 5, 10

*In re Surebeam Corp. Sec. Litig.*,
   No. 03-01721, 2003 WL 5159061 (S.D. Cal. Jan. 5, 2004) ....................... 8

*In re Waste Management, Inc. Securities Litigation*,
   128 F. Supp. 2d 401 (S.D. Tex. 2000) ................................................... 2

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   No. 07-482, 2007 WL 2300861 (S.D. Cal. Aug. 8, 2007) ....................... 8, 9

*Siegall v. TIBCO Software, Inc.*,
   2006 WL 1050173 (N.D. Cal. Feb. 24, 2006) ......................................... 8

[C-07-04073 PJH] NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

iii

*Takeda v. Turbodyne Technologies*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) .................................................. 9

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group. Inc.*,
    No. 06-2674, 2007 WL 2692217 (D. Ariz. Sept. 11, 2007) ........................ 9

## STATUTES

Fed. R. Civ. P. 23(a)(4) .................................................................. 10

Securities Exchange Act of 1934 (as amended by the
    Private Securities Litigation Reform Act of 1995),
    15 U.S.C. § 78u-4(a)(3) *et seq.* ................................................ *passim*

Securities Exchange Act of 1934,
    Section 10(b), 15 U.S.C. § 78j(b) ................................................... 4

Securities Exchange Act of 1934,
    Section 20(a), 15 U.S.C. § 78t(a) ................................................... 4

# NOTICE OF MOTION

TO:   ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 21, 2007, at 9:00 a.m. or as soon thereafter as the matter may be heard, The Southern Improvement Company, Allen Dayton, and VSA, Inc. (collectively "Southern" or "Movant") will move before the Honorable Phyllis J. Hamilton, United States District Judge for the Northern District of California, United States Courthouse, Courtroom 3, 450 Golden Gate Avenue, San Francisco, California 94102, pursuant to § 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and Local Rule 23-1(b), for an order (1) appointing Southern as Lead Plaintiff of the consolidated class actions; and (2) approving Southern's selection of Lowey Dannenberg Bemporad Selinger & Cohen, P.C. ("LDBSC") as Lead Counsel for the Class.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Southern respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3), as amended by the PSLRA, and Local Rule 23-1(b), for an order (1) appointing Southern as Lead Plaintiff of the consolidated class action involving Luminent Capital Mortgage, Inc. ("Luminent" or the "Company"); and (2) approving Southern's selection of LDBSC as Lead Counsel for the Class.[1]

Southern Improvement and VSA are private companies owned and controlled by Dayton. During the proposed class period of October 10, 2006 through August 6, 2007 (the "Class Period"), Dayton directed the securities investments by those business entities, as well as the investments in his own account, in Luminent common stock and options. Dayton thus exercises

---

[1] On October 10, 2007, the Hon. Phyllis J. Hamilton consolidated for all purposes the six pending class actions under the caption *In re Luminent Mortgage Capital, Inc. Securities Litigation*, Case No. C-07-04073-PJH, and directed that the motions for appointment of lead plaintiff initially filed on October 9 be withdrawn and refiled in the consolidated class action no later than October 17, 2007.

[C-07-04073 PJH] NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

complete authority over, and is the sole decision maker with respect to, investments of Southern.[2] *See* Declaration of Allen Dayton ("Dayton Decl."), ¶¶ 1-4.

Southern purchased 160,778 shares of Luminent common stock during the proposed Class Period, at prices ranging from about $8 to $10 per share, and suffered losses on those shares of $1,271,011. Movant also sustained net losses of $199,555 from the sale of put option contracts, for a total loss of $1,470,566. *See* Southern's Certifications and Loss Analyses, annexed as Exhibit 1 to the Declaration of David C. Harrison ("Harrison Decl."); Dayton Decl., ¶¶ 6-7.

Eight applications for Lead Plaintiff were initially filed on October 9, 2007. Based on these submissions, it is indisputable that Southern has the largest financial interest at stake in these actions, and it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Local Rules. Southern, therefore, is presumptively entitled to serve as the Lead Plaintiff that will prosecute the litigation on behalf of investors in Luminent stock and options. *See In re Cavanaugh*, 306 F.3d 726, 730-32 (9th Cir. 2002). As demonstrated herein, Southern is eminently qualified for that role. Accordingly, Southern should be appointed Lead Plaintiff under the PSLRA.

## STATEMENT OF FACTS

### A. The Claims

Luminent is a real estate investment trust incorporated in Maryland and headquartered in San Francisco, California. As an asset management company, Luminent purportedly invests in prime whole loans, U.S. agency and other highly-rated, single-family, adjustable-rate, hybrid adjustable-rate and fixed-rate mortgage-backed securities, which it acquires in the secondary

---

[2] Although comprised of separate entities, Southern is considered as one person for purposes of the PSLRA Lead Plaintiff provisions because they are operated under the common control and direction of Dayton with respect to security investments. *See, e.g., Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1157 n.11 (N.D. Cal. 1999); *In re Waste Management, Inc. Securities Litigation*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000).

market. The Company profits primarily from the spread between funds borrowed and the yield on purchased securities. Throughout the proposed Class Period, Luminent made numerous statements claiming that the high quality of its mortgages, the thoroughness of its due diligence practices and the sophistication of its hedging program had sheltered the Company from the difficulties being experienced by other companies in the mortgage lending industry.

However, after the close of the market on August 6, 2007, and just one week after confirming the payment of a second quarter dividend, Luminent issued a press release announcing that it was suspending the dividend because the Company was experiencing increased margin calls on its highest quality assets and a decrease in financing by its lenders. Luminent subsequently announced that it had received default notices from two credit lenders.

Following these adverse disclosures, the market price of Luminent stock, which traded at the $8-to-$10-per-share level during most of the proposed Class Period, sharply declined by more than 75%, from a close of $4.38 per share on August 6, 2007 to $1.08 per share on August 7, 2007. Luminent's share price continued to decline the next day, closing at $0.95 per share on August 8, 2007.

On September 26, 2007, in its SEC Form 10-Q for the quarter ending June 30, 2007, the Company provided further details regarding its liquidity crisis, explaining that (1) it was unable to roll over approximately $168.0 million of commercial paper financing; (2) it had received default notices for eight different credit lines totaling $1.6 billion; and (3) an event of default had occurred on Luminent's convertible senior notes of $90 million and the Company's commercial paper of $580 million. The Company also acknowledged, *inter alia*, "significant losses from the sale of assets at distressed prices to meet margin calls [and] seizure of certain assets by creditors," that had resulted in "significant doubt about the Company's ability to continue as a going concern for a reasonable period of time."

### B. The Pending Class Actions

Beginning on August 8, 2007, six securities class action lawsuits were filed in this

District.[3] The initial class notice was also published on August 8, 2007. *See* Exhibit 2 to Harrison Decl. By Order dated September 17, 2007, the Hon. Phyllis J. Hamilton found that the six filed cases were related and should be assigned to her. As noted above, on October 9, 2007, eight applications for Lead Plaintiff were filed in this Court, and on October 10, 2007, the Court consolidated the cases and directed that the motions for Lead Plaintiff be refiled on October 17 under the consolidated case.

The complaints charge Luminent and certain senior officers with, *inter alia*, making false and misleading statements regarding (1) the quality of the Company's investments, (2) the ability of the Company's hedging program to manage interest rate and credit risks in its portfolio, (3) the ability of the Company to maintain its regular dividend payment to shareholders going forward, and (4) the adequacy of the Company's internal and financial controls. In addition, the complaints allege that the Company's statements touting its strong financial position and future business prospects were materially misleading and lacked a reasonable basis.

The complaints name as defendants the Company and certain Luminent senior officers, including Gail P. Seneca (CEO), Sewell Trezevant Moore, Jr. (COO), Christopher J. Zyda (CFO), Eleanor Cornfeld Melton (Chief Credit Officer), Ronald Viera (Chief Risk Officer), and Dimitrios Papatheoharis (Chief Investment Officer). The complaints assert violations of Sections 10(b) (the antifraud provision) and 20(a) (the controlling person provision) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission.

The putative class is comprised of purchasers of Luminent securities from October 10, 2006, the date Luminent announced a public offering of five million shares of common stock,

---

[3] The pending cases are: (1) *Leone v. Moore, et al.*, Case No. 07-04073; (2) *Rosenbaum Capital LLC v. Luminent Mortgage Capital, Inc. et al.*, Case No. 07-04096; (3) *Howard J. Kaplowitz IRA v. Luminent Mortgage Capital, Inc. et al.*, Case No. 07-04140; (4) *Elliot Greenberg v. Luminent Mortgage Capital, Inc. et al.*, Case No. 07-04141; (5) *PEM Resources LLP v. Luminent Mortgage Capital, Inc. et al.*, Case No. 07-04184; and (6) *Metzger v. Luminent Mortgage Capital, Inc. et al.*, Case No. 07-04686.

through and including August 6, 2007, the date the Company announced it was suspending the payment of its second quarter dividend.[4] To date, Southern has adopted this Class Period with respect to a class comprised of Luminent securities purchasers and sellers of put option contracts.[5] *See, e.g.*, Certification of Southern Improvement, ¶ 3; Ex. 1 to the Harrison Decl.

As shown in the Certifications, during the Class Period, Southern purchased more than 160,000 shares of Luminent common stock on the open market and sold put option contracts. Total losses sustained by Southern are approximately $1.47 million calculated on both the LIFO and FIFO basis. Southern's losses are substantially greater than the losses claimed by any of the competing movants in their initial applications.

For all the reasons set forth below, Southern has satisfied the PSLRA's requirements, and should be appointed to serve as Lead Plaintiff and its selected counsel approved as Lead Counsel.

## ARGUMENT

### A. Southern Should Be Appointed Lead Plaintiff

#### 1. The Procedure Required Under the PSLRA for Appointment of Lead Plaintiff

The PSLRA applies to this case. The Ninth Circuit in *Cavanaugh* has interpreted the provisions of the PSLRA as setting forth a three-step process by which the District Court is to select a lead plaintiff. First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion

---

[4] While two of the complaints allege shorter class periods, four of the six complaints use the longer proposed class period starting on October 10, 2006.

[5] A put option is a financial contract in which the buyer pays the seller an agreed-to sum (the premium) in exchange for the right to sell a specified quantity of stock for a certain price (the strike price) to the option seller during the life of the option. If the buyer exercises the option, the seller is under a contractual obligation to purchase the underlying stock at the strike price. "Thus, a put option seller generally predicts that the value of the underlying stock will remain above the strike price (or increase) during the life of the option. If correct, the seller profits the full premium because the buyer never exercises the option." *In re Scientific-Atlanta, Inc. Sec. Litig.*, Case No. 01–1950, 2007 WL 2683729, at *8 (N.D. Ga. Sept. 7, 2007).

for appointment as lead plaintiff within 60 days of publication of the notice. 306 F.3d at 729 (citing 15 U.S.C. § 78u-4(a)(3)(A)). Here, the initial notice was published on August 8, 2007. *See* Ex.2 to the Harrison Decl. Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, regardless of whether they have previously filed a complaint in the action. The application of Southern has been timely filed within this 60-day period.

Second, the district court must consider the losses allegedly suffered by the various movants and select as the presumptive Lead Plaintiff the one "who has the largest financial interest . . . [and] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Cavanaugh*, 306 F.3d at 730 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(i)).[6]

The *Cavanaugh* court cautioned that a "straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." 306 F.3d at 732. In making this inquiry, the Court should rely on the movant's complaint, certification and other submissions. *Id.* at 730 (citing *In re Cendant Corp. Sec. Litig.*, 264 F.3d 206, 264 (3d Cir. 2001)).

Third, "[o]nce that comparison is made and the court identifies the plaintiff with the

---

[6] The PSLRA sets forth the following standard:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . [within 60 days of publication of the notice];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements," in particular, typicality and adequacy under Rule 23. *Id.* at 732. As shown below, under these standards, Southern should be appointed as Lead Plaintiff.

### 2. Southern Has Timely Moved for Appointment as Lead Plaintiff

The 60-day period under the PSLRA in which motions for the appointment of Lead Plaintiff must be filed expired on October 9, 2007. Southern timely moved within the statutory 60-day period, and has timely refiled its motion pursuant to the Court's October 10 order. As required by the PSLRA and Local Rules, Southern has also provided certifications setting forth its transactions in Luminent securities (*i.e.*, common stock and options) during the Class Period. *See* Certifications, Ex. 1 to the Harrison Decl. The certifications indicate that Southern has reviewed a complaint filed in the actions (*i.e.*, the *Metzger* complaint), understands the responsibilities of serving as Lead Plaintiff, and is willing to serve in the best interests of the class. *Id.* In addition, Southern has retained competent and experienced counsel. *See* LDBSC Firm Resume, Harrison Decl., Ex. 3; Dayton Decl. ¶ 9. Movant's choice of counsel, LDBSC, has a history, as amply demonstrated in its Firm Resume, of achieving superior results for class members in similar securities fraud class actions.

### 3. Southern Has the Largest Financial Interest in the Relief Sought by the Class

Southern is presumptively the most adequate plaintiff for the reasons set forth below and because, based upon a comparison of the losses of the movants who filed applications for Lead Plaintiff on October 9, 2007, it has the largest financial interest in the relief sought by the Class of any class member that has moved to be designated Lead Plaintiff. While the Ninth Circuit has not established a mandatory formula to use in determining which plaintiff has the "largest financial interest," many district courts have adopted the approach articulated by the Third Circuit in *Cendant*, which set forth three factors bearing on that determination: (1) the number of

[C-07-04073 PJH] NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
7

shares purchased, (2) the total net funds expended by the plaintiffs during the class period, and (3) the approximate losses suffered by the plaintiffs. *See In re Impac Mortgage Holdings, Inc. Sec. Litig.*, No. 8:06-00031, 2006 U.S. Dist. LEXIS 40607, at *10 (C.D. Cal. May 2, 2006) (citing *Cendant*, 264 F.3d at 262); *In re Surebeam Corp. Sec. Litig.*, No. 03-01721, 2003 WL 5159061 (S.D. Cal. Jan. 5, 2004); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) ("largest financial interest" equates with amount of potential recovery, number of shares purchased, and estimated losses); *Siegall v. TIBCO Software, Inc.*, No. C 05-2146, 2006 WL 1050173 (N.D. Cal. Feb. 24, 2006) (same).

As reflected in its Certifications and Loss Analyses, Southern purchased 160,778 shares of Luminent common stock and expended $1,412,711 in net funds during the proposed Class Period.[7] Moreover, Southern sustained total losses of approximately $1.47 million on both a FIFO and LIFO basis relating to its stock and options transactions. Southern thus has a significant financial interest in the outcome of this litigation.

Based upon a review of the other applications filed on October 9, 2007, Southern's losses, and therefore its financial interests, are substantially larger than those of any competing lead plaintiff movant. Accordingly, Southern should be designated the presumptive Lead Plaintiff. *See Cavanaugh*, 306 F.3d at 729-30; *In re Wireless Facilities, Inc. Sec. Litig. II*, No. 07-482, 2007 WL 2300861 (S.D. Cal. Aug. 8, 2007); *Gerin, et al. v. Aegon USA, Inc.*, No. 06-5407, 2007 WL 108451, at *2 (N.D. Cal. Jan. 10, 2007); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d at 1152.

Therefore, Southern is presumptively the movant entitled to appointment as Lead Plaintiff pursuant to PSLRA § 21D(a)(3)(B)(iii).

### 4. Southern Otherwise Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the

---

[7] Southern also received $33,185.40 in premiums in connection with the sale of 340 put options and 326 call options on Luminent shares.

lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." § 78u-4(a)(3)(B)(iii). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Of these prerequisites to class certification, only typicality and adequacy are relevant in appointing the Lead Plaintiff. *Cavanaugh*, 306 F.3d at 729-30; *In re Wireless Facilities*, 2007 WL 2300861, at *1; see also *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group. Inc.*, No. 06-2674, 2007 WL 2692217, at *4 (D. Ariz. Sept. 11, 2007) ("The court will limit its analysis under Rule 23 because '[a] wide ranging analysis is not appropriate to determine whether [the proposed lead plaintiff] has made a prima facie showing that [it] satisfies the requirements of Rule 23'") (quoting *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005)). Consequently, courts deciding a lead plaintiff motion limit their inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *Cavanaugh*, 306 F.3d at 732; *Takeda v. Turbodyne Technologies*, 67 F. Supp. 2d 1129, 1136 (C.D. Cal. 1999). That determination is based upon the presumptive lead plaintiff's sworn certification, declaration, and other submissions. *Cavanaugh*, 306 F.3d at 730.

Under Rule 23 (a)(3), the claims of the representative parties must be typical of the class. Typicality exists where, as here, the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of the other class members. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. Typicality does not require that there be no factual differences between

[C-07-04073 PJH] NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

the class representatives and the class members, because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.

Southern satisfies the typicality requirements of Rule 23 because, like all other class members, it: (1) purchased Luminent stock and sold put option contracts at prices artificially inflated by the false and misleading statements issued by defendants[8]; (2) has claims that arise out of the same course of events; and (3) suffered damages when Luminent's true condition became known to the marketplace, causing the prices of Luminent stock and put options to decline. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Impac Mortgage Holdings, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 40607, at *17. Thus Southern meets the typicality requirement, as questions of liability are common to all proposed class members.

Under Rule 23, the representative party must also "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The PSLRA directs the court to limit its inquiry of the movant's adequacy to represent the class to the following: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representative's choice of counsel who is qualified, experienced, and able to vigorously conduct the proposed litigation. *See, e.g., In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002); *Gerin v. Aegon USA, Inc.*, 2007 WL 108451, at *4.

Southern is an adequate class representative because its interest in aggressively and vigorously pursuing the claims against defendants is aligned with the interests of the members of the class, who similarly suffered losses because of defendants' misrepresentations. Further, there

---

[8] As with the purchase of common stock, the sale of a put option is an investment seeking to capitalize upon an increase in the price of the Company's common stock. *See In re Scientific-Atlanta*, 2007 WL 2683729, at *8 ("<u>A put options seller, like the purchaser of stock, generally profits only when a stock maintains or increases its value</u>. That is so because the option buyer has no reason to exercise the option unless the stock price declines. If the stock price maintains or increases, and the option expires without the buyer electing to exercise, then the seller profits the premium paid for the option. [. . .] <u>The put option seller also suffers a harm similar to that suffered by a stock investor when the revelation of the truth concerning the prior fraudulent conduct causes an artificially inflated stock price to fall</u>. In such a case, the put option seller is forced to bear the brunt of the injury cause by the fraud"). (Emphasis added.)

[C-07-04073 PJH] NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

is no antagonism between Southern's interests and those of the other members of the class. Indeed, Southern's interests are precisely aligned with members of the class because they both purchased Luminent stock and/or sold put options contracts and were damaged by the defendants' conduct. Southern has also demonstrated its intention to take an active role in the litigation by working closely with its counsel to achieve the best possible result for the class. *See* Dayton Decl. ¶¶ 9-11.

Finally, as shown below, Southern's proposed lead counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Southern is the most adequate lead plaintiff in this case.

### B. Southern's Selection of LDBSC As Lead Counsel Should Be Approved

The PSLRA grants the Lead Plaintiff the right to choose and retain counsel, subject to Court approval. § 21D(a)(3)(B)(v). *See Cavanaugh*, 306 F.2d at 734 ("the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff"). Here, Southern has selected LDBSC to act as Lead Counsel for the Class, based on LDBSC's experience and excellent track record in representing VSA as a class member in another class action. *See* Dayton Decl. ¶ 9.[9] LDBSC is among the preeminent plaintiffs' class action law firms, having taken leading roles in numerous important actions on behalf of defrauded investors. *See* Firm Resume, Ex. 3 to Harrison Decl. LDBSC has been recognized recently as appropriate lead counsel in cases brought since the passage of the PSLRA, including its recent appointment as Lead Counsel in another securities class action lawsuit pending in this District, *Garber v. Juniper Networks, Inc.*, 2006 WL 3365547 (N.D. Cal. Nov. 20, 2006). Harrison Decl. ¶ 4. LDBSC has also previously served as lead counsel in other such cases in this Court. *E.g.*, *In re Oracle Securities Litigation*, 852 F. Supp. 1437, 1454 (N.D. Cal. 1994).

---

[9] LDBSC's retainer letter is available for *in camera* inspection upon request by the Court.

## CONCLUSION

For all the reasons stated above, Southern respectfully requests an order (1) appointing it as Lead Plaintiff for the Class, and (2) appointing its choice of counsel, Lowey Dannenberg Bemporad Selinger & Cohen, P.C., as Lead Counsel for the Class.

Date:   October 17, 2007

BERMAN DeVALERIO PEASE
TABACCO BURT & PUCILLO

By: _____
NICOLE LAVALLEE S.B.N. 165755
425 California Street, Suite 2100
San Francisco, California  94104
Telephone:   415-433-3200

*Local Counsel*

RICHARD BEMPORAD
DAVID C. HARRISON
JEANNE D'ESPOSITO
LOWEY DANNENBERG BEMPORAD
   SELINGER & COHEN, P.C.
One North Broadway
White Plains, New York  10601-1714
Telephone:   914-997-0500

*Attorneys for Movant Southern*

[C-07-04073 PJH] NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
12