MARK LABATON #159555
KREINDLER & KREINDLER LLP
707 Wilshire Boulevard, Suite 4100
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019
Email: mlabaton@kreindler.com

*Local Counsel*

LABATON SUCHAROW LLP
CHRISTOPHER J. KELLER
ANDREI V. RADO
ALAN I. ELLMAN
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: info@labaton.com

*Proposed Lead Counsel and Counsel for Plaintiff State-Boston Retirement System and Norfolk County Retirement System*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: LUMINENT MORTGAGE CAPITAL, INC., SECURITIES LITIGATION | Civil Action No.: 3:07-CV-04073-PJH <br><br> <u>CLASS ACTION</u> <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF STATE-BOSTON RETIREMENT SYSTEM AND NORFOLK COUNTY RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL** <br><br> <u>Hearing</u> <br><br> Date: Nov. 21, 2007 <br> Time: 9:00 a.m. <br> Courtroom: 3 <br> Judge: Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

# TABLE OF CONTENTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

TABLE OF AUTHORITIES, (CONTINUED).......................................................................iii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

A.   THE ABOVE-CAPTIONED ACTIONS SHOULD BE CONSOLIDATED ............ 4

B.   BOSTON AND NORFOLK SHOULD BE APPOINTED AS LEAD PLAINTIFF FOR THE CLASS IN THE CONSOLIDATED ACTION ....... 5

   1.   The Procedure Mandated by the PSLRA for Appointment of Lead Plaintiff.................................................................................................. 5

   2.   Boston and Norfolk Satisfy The Lead Plaintiff Requirements Of The PSLRA ................................................................................................. 6

      (a)   Boston and Norfolk Have Complied With the Procedural Requirements of the PSLRA ........................................................... 6

      (b)   Boston and Norfolk Have The Largest Financial Interest In The Relief Sought By the Class ................................................. 6

      (c)   Boston and Norfolk Otherwise Satisfy the Requirements of Rule 23 ...................................................................................... 7

         a.   Boston and Norfolk Fulfill The Typicality Requirement 8

         b.   Boston and Norfolk Fulfill the Adequacy Requirement .. 8

C.   THE COURT SHOULD APPROVE BOSTON AND NORFOLK'S CHOICE OF COUNSEL ......................................................................................... 9

CONCLUSION........................................................................................................................ 9

3:07-CV-4073-PJH
MEMO OF POINTS AND AUTHORITIES OF BOSTON AND NORFOLK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL

i

# TABLE OF AUTHORITIES

## CASES

*In re Advanced Tissue Scis. Sec. Litig.*,
   184 F.R.D. 346 (S.D. Cal. 1998) .................................................................................................. 8

*Armour v. Network Assocs., Inc.*,
   171 F. Supp. 2d 1044 (N.D. Cal. 2001) ...................................................................................... 7

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp.2d 1146 (N.D. Cal. 1999) ................................................................................. 2, 5, 6

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ....................................................................................................... 6

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ........................................................................................................ 8

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 1102, 1108 (N.D. Cal. 2001) ................................................................................. 2

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) .................................................................................................. 4, 5

*Lax v. First Merch. Acceptance Corp.*,
   No. 97 Civ. 2715, 1997 WL 461036 ............................................................................................ 2

*In re Party City Sec. Litig.*,
   189 F. R. D. 91 (D.N.J. 1999) ..................................................................................................... 3

*Montoya v. Mamma.com Inc.*,
   No. 05 Civ. 2313 (HB), 2005 WL 1278097 (S.D.N.Y. May 31, 2005) .................................. 2, 6

*Osher v. Guess, Inc.*,
   No. 01 Civ. 00871 (LGB) (RNBx), 2001 WL 861604 (C.D. Cal. Apr. 26, 2001) ................. 4, 5

*Richardson v. TVIA, Inc.*,
   No. 06 C 6304 (RMW), 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ..................................... 8

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ................................................................................................. 8

*In re Star Gas Sec. Litig.*,
   No. 04 Civ. 1766 (JBA), 2005 WL 818617 (D. Conn. Apr. 8, 2005) ........................................ 3

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................................................... 8

*In re Surebeam Corp. Sec. Litig.*,
   No. 03 Civ. 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Jan. 5, 2004) ............. 8

*Takeda v. Turbodyne Techs.*,
   67 F. Supp. 2d 1129 (N.D. Cal. 1999) .................................................................................... 4, 7

1

**TABLE OF AUTHORITIES, (CONTINUED)**

**CASES**

*In re Waste Mgmt., Inc. Sec. Litig.*,
   128 F. Supp. 2d 401 (S.D. Tex. 2000) ..................................................................................9

*Weisz v. Calpine Corp.*,
   No. 02 CV 1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ..........................................2

**DOCKETED CASES**

*In re Silicon Storage Tech., Inc. Sec. Litig.*,
   No. 05-cv-295 PJH (N.D. Cal. May 3, 2005) ....................................................................2,6

**RULES & STATUES**

15 U.S.C. §§ 78j(a) ...............................................................................................................5

15 U.S.C. §§ 78j(b) ...............................................................................................................5

15 U.S.C § 78u-4(a)(3) ..........................................................................................................6

15 U.S.C § 78u-4(a)(3)(A)(i) .................................................................................................6

15 U.S.C § 78u-4(a)(3)(B) .....................................................................................................8

15 U.S.C § 78u-4(a)(3)(B)(i) ..............................................................................................2, 6

15 U.S.C § 78u-4(a)(3)(B)(iii)(I) ........................................................................................2, 7

15 U.S.C § 78u-4(a)(3)(B)(v) ..............................................................................................11

17 C.F.R. § 241.10b-5............................................................................................................5

Fed. R. Civ. P. 23(a) ..............................................................................................................9

P.S.L.R.A. H.R. Rep. No. 104369, 104th Cong. 1st Sess. (1995) .........................................3

The Securities and Exchange Act of 1934, §§ 10(b) .............................................................5

The State-Boston Retirement System an Norfolk County Retirement System (collectively "Boston and Norfolk") respectfully submit this Memorandum of Points and Authorities in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for an order: (i) consolidating the related actions; (ii) appointing Boston and Norfolk as lead plaintiff of a class of purchasers of the securities of Luminent Mortgage Capital, Inc. ("Luminent" or the "Company"); and (iii) approving Boston and Norfolk's selection of Labaton Sucharow LLP ("Labaton Sucharow") as lead counsel for the Class.

**PRELIMINARY STATEMENT**

This case involves allegations against Luminent, a real estate investment trust ("REIT"), and certain of its officers and directors (collectively, "Defendants") for violations of the federal securities laws stemming from Luminent's materially false and misleading statements regarding the Company's internal controls and the quality of its mortgage loans. Defendants' misstatements, which appeared in, among other places, the Company's SEC filings and press releases during the Class Period, artificially inflated the price of Luminent securities and caused substantial damages to the Class upon disclosure of the truth.

On August 8, 2007, a complaint was filed in this Action in the U.S. District Court for the Northern District of California asserting claims under the Exchange Act.

Pursuant to the PSLRA, this Court should appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the action. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court should determine, among other things, which movant has the "largest financial interest" in the relief sought by the Class in this litigation and has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Although the PSLRA does not define the term "largest financial interest", a broad body of case law established four key factors guiding the Court's analysis: (1) the number of shares of the subject securities purchased; (2) the number of net shares purchased; (3) the total net funds

expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *See, e.g., Aronson v. McKesson HBOC, Inc.,* 79 F. Supp. 2d 1146, 1157-58 (N.D. Cal. 1999); *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313(HB), 2005 WL 1278097, at *1 (S.D.N.Y. May 31, 2005); *Lax v. First Merch. Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036, at *6 (N.D. Ill. Aug. 11, 1997).[1]  While some courts look to all of these *Lax* factors, others in the Ninth Circuit consider "net shares purchased" as most relevant coupled with the approximate losses suffered by selling shares during the class period. *In re Silicon Storage Tech., Inc., Sec. Litig.*, 3:05-cv-295-PJH, at *10-11 (N.D. Cal. May 3, 2005) (Hamilton, J.); *Weisz v. Calpine Corp.*, 2002 WL 32818827 (N.D. Cal. 2002); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 1102, 1108 (N.D. Cal. 2001).

As demonstrated below, Boston and Norfolk are the "most adequate plaintiff" in this case. The State-Boston Retirement System is an institutional investor that provides retirement benefits for the employees of the City of Boston, Massachusetts.[2]  It has more than 34,000 active and retired members, representing 106 mandatory retirement systems, and more than $3.1 billion in assets.  The Norfolk County Retirement System, organized under the laws of Massachusetts in 1937, has over 9,500 active and retired members from forty governmental units throughout Norfolk County, with more than $480 million in assets under management.

During the proposed Class Period, Boston and Norfolk purchased 75,000 total shares of Luminent common stock, with net purchases of the same number of shares.  Boston and Norfolk made net expenditures of $619,577 to acquire those securities, and suffered losses of $547,377 under both a first-in, first-out ("FIFO") and a last-in, last-out ("LIFO") analysis.  Under each of these *Lax* factors, Boston and Norfolk have a very large financial interest in the relief sought by

---

[1] *Lax v. First Merch. Acceptance Corp.* originally articulated these four factors, which are commonly referred to as "*Lax* factors".

[2] The PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H. R. Rep. No. 104 369, 104th Cong. 1st Sess. at 34 (1995).

this litigation – one greater than that of any other known movant. *See* Certification and Loss Analysis, annexed to the Declaration of Alan I. Ellman ("Ellman Decl.") as Exhibits A and B.

## STATEMENT OF FACTS

This is a federal class action brought on behalf of a class consisting of all persons or entities who purchased the securities of Luminent between October 10, 2006 and August 6, 2007, inclusive (the "Class Period"),[3] pursuing remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Luminent, which trades on the New York Stock Exchange under the ticker symbol "LUM", is a REIT that invests primarily in the United States agency and other single-family, adjustable-rate, and fixed rate mortgage-backed securities. The Company also invests in residential mortgage loans.

The above-captioned actions allege that the Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Specifically, the complaint alleges that Defendants knowingly, or with deliberate recklessness, issued a series of statements during the Class Period that were false and misleading regarding the Company's business and financial results. As the real estate market and the mortgage industry began imploding, Defendants continued to claim that Luminent's business was solid and its investments were high quality. On August 6, 2007, after the market closed, the Company issued a press release stating, in part, that its Board of Directors (a) suspended payment of Luminent's second quarter cash dividend of 32 cents per share; (b) extended the maturity of the outstanding commercial paper issued by a special purpose subsidiary of Luminent by 110 days; (c) cancelled Luminent's second quarter earnings release conference call; and (d) delayed the filing of Luminent's 2007 second quarter report on Form 10-Q.

On August 7, 2007, Luminent's stock dropped by $3.30 per share to close at $1.08 per share, a one-day decline of 75% on volume of 32.2 million shares, 25 times the average three-

---

[3] In the six complaints filed against Luminent, there are differing time periods used for the class period. The longest, most broad period is used for the purpose of this lead plaintiff motion. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The *Catanzarite* Action is relied upon for purposes of this motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants."); *see also In re Star Gas Sec. Litig.*, No. 04-CV-1766 (JBA), 2005 WL 818617 (D. Conn. Apr. 8, 2005) (finding that the longest class period alleged is to be utilized in determining the largest financial interest.).

month volume.  The true facts, which were known by the Defendants but concealed from the investing public during the Class Period, were as follows: (a) the Company lacked requisite internal controls; (b) the Company's investments in mortgage loans were not all "high quality" as claimed by Defendants, nor was its hedging disciplined and sophisticated as to credit risk; and (c) the Company was not on track to report the earnings forecast or to pay the dividends promised.  After the above revelations seeped into the market, the Company's shares fell more than 89% from their Class Period high.

## ARGUMENT

### A.   THE ABOVE-CAPTIONED ACTIONS SHOULD BE CONSOLIDATED

The Actions are each brought pursuant to §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, and allege substantially similar facts.  Boston and Norfolk seek to consolidate the Actions pursuant to Rule 42 of the Federal Rules of Civil Procedure.  Rule 42 of the Federal Rules of Civil Procedure provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a)  "[C]ourts have taken the view that considerations of judicial economy favor consolidation," *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990), *cert. denied,* 498 U.S. 920 (1990), and in deciding whether to consolidate actions, "a court must balance the savings of time and effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result."  *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (N.D. Cal. 1999).

Here, the Actions involve common questions of law and fact, namely claims predicated on false and misleading statements by Defendants concerning Luminent's internal controls and the quality of its mortgage loans.  The plaintiffs' allegations present similar claims for relief against essentially the same defendants, based upon a single course of conduct.  *See Osher v.*

*Guess, Inc.*, No. CV 01-00871 LGB (RNBx), 2001 WL 861604, at *2 (C.D. Cal. Apr. 26, 2001) (consolidating securities class actions); *Aronson*, 79 F. Supp. 2d at 1150 (same). Once the Court has identified common questions of law and fact, its discretion to order consolidation is very broad. *See Johnson*, 899 F.2d at 1284-85. The Actions should therefore be consolidated.

**B.  BOSTON AND NORFOLK SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS IN THE CONSOLIDATED ACTION**

    **1.  The Procedure Mandated by the PSLRA for Appointment of Lead Plaintiff**

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the first action shall publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice in the above-titled actions was published on August 8, 2007. *See* Ellman Decl. Ex. C.

Second, within ninety days after the publication of the notice of pendency, or as soon as practicable after the consolidation of multiple related cases if consolidation occurs after the expiration of the 90-day period, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides the following standard for determining who is the "most adequate plaintiff":

> [T]he court shall adopt a … presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
> (aa)   has either filed the complaint or made a motion in response to a notice [within 60 days of publication of the notice];
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002); *In re Silicon Storage Tech., Inc., Sec. Litig.*, 3:05-cv-295-PJH, at *2.  As set forth below, Boston and Norfolk are the "most adequate plaintiff" here.

### 2. Boston and Norfolk Satisfy The Lead Plaintiff Requirements Of The PSLRA

#### (a) Boston and Norfolk Have Complied With the Procedural Requirements of the PSLRA

The 60-day period under the PSLRA in which motions for appointment as lead plaintiff must be filed expires on October 9, 2007.  Boston and Norfolk have timely filed their motion.

This motion includes the required certifications from Boston and Norfolk setting forth, among other things, transactions in Luminent securities during the Class Period, and indicating that they have reviewed a complaint filed in the case and are willing to serve as representative parties on behalf of the class.  *See* Certifications, Ellman Decl. Ex. A.  In addition, Boston and Norfolk have retained competent and experienced counsel, as set forth in counsel's firm resume.  *See* Firm Resume, Ellman Decl. Ex. D.  As amply demonstrated, Labaton Sucharow is a highly reputable law firm with a long history of success on behalf of investor classes.

#### (b) Boston and Norfolk Have The Largest Financial Interest In The Relief Sought By the Class

As noted above, the analysis central to appointing Lead Plaintiff focuses on a four-part test: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.  *See Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *1.  "These factors are useful, because they look to relatively objective indicators, such as number of shares purchased or sold, rather than to the ultimate question of damages."  *Aronson v. McKesson HBOC*, *Inc.*, 79 F. Supp. 2d at 1158.

Based upon these factors, Boston and Norfolk believe that they have the largest financial interest in this litigation.

**Net Shares Purchased**:  Net shares purchased equals the number of shares purchased less the number of shares sold during the class period.  Boston and Norfolk are net purchasers of

3:07-CV-4073-PJH
MEMO OF POINTS AND AUTHORITIES OF THE BOSTON AND NORFOLK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL

6

1  Luminent stock because they collectively bought 75,000 shares during the Class Period and did
2  not sell any shares.  *See* Certification and Loss Analysis, Ellman Decl., Ex. A and B.
3      **Net Funds Expended:**  The net funds expended on the subject securities during the class
4  period equals the difference between the total funds spent to purchase those securities and the
5  funds received from sales of those securities.  Boston and Norfolk expended $619,577 to
6  purchase Luminent stock during the Class Period.  *See* Certification and Loss Analysis, Ellman
7  Decl., Ex. A and B.
8      **Approximate Losses:**  Boston and Norfolk suffered total losses of $547,377 when
9  calculated using either the FIFO or LIFO methods.  *See* Certification and Loss Analysis, Ellman
10 Decl. Ex. A and B.
11     In sum, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), Boston and Norfolk are believed to have
12 the largest financial interest and should be appointed Lead Plaintiff in this Action.

### (c) Boston and Norfolk Otherwise Satisfy the Requirements of Rule 23

15 According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial
16 interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the
17 requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a
18 party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

23 Fed. R. Civ. P. 23(a).
24     Of the four prerequisites to class certification, only two – typicality and adequacy –
25 directly address the personal characteristics of the class representative.  Consequently, in
26 deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and
27 adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the
28 lead plaintiff moves for class certification.  *See Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d

1044, 1051-52 (N.D. Cal. 2001); *Takeda v. Turbodyne Technologies, Inc.*, 67 F. Supp. 2d 1129, 1131-35 (C.D. Cal. 1999). As detailed below, Boston and Norfolk satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### a. Boston and Norfolk Fulfill The Typicality Requirement

The typicality requirement of Rule 23(a)(3) is satisfied when representative plaintiffs' claims arise out of the same event or course of conduct as do the other class members' claims, and are based on the same legal theories. *In re Advanced Tissue Scis. Sec. Litig.*, 184 F.R.D. 346 (S.D. Cal. 1998). The threshold typicality and commonality requirements are not high; Rule 23(a) requires only that resolution of the common questions affect all, or a substantial number of, class members. *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 657 (C.D. Cal. 2000). Here, Boston and Norfolk purchased Luminent shares during the Class Period (a) at prices alleged to have been artificially inflated by the false and misleading statements issued by Defendants, and (b) were damaged by defendants' alleged violations of the federal securities laws. Because Boston and Norfolk's claims are premised on the same legal and remedial theories and are based on the same types of alleged misrepresentations and omissions as the Class's claims, typicality is satisfied. *See In re Surebeam Corp. Sec. Litig.*, No. 03-CV-1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *17-20 (S.D. Cal. Jan. 5, 2004).

### b. Boston and Norfolk Fulfill the Adequacy Requirement

Boston and Norfolk are also adequate representatives of the Class. The adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. *Richardson v. TVIA, Inc.,* No. C 06-6304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (citing Fed. R. Civ. P. 23(a)(4) and *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003)). Boston and Norfolk have indicated that they will protect the interests of the Class, as reflected in their Certifications affirming their interest in participating as Lead Plaintiff in this action. *See* Ellman Decl. Ex. A. Boston and Norfolk have also retained counsel with considerable experience in the prosecution of class actions and federal securities law claims. *See* Ellman Decl. Ex. D. Indeed, Boston and Norfolk are sophisticated institutional investors with

vast resources to adequately litigate this action and supervise class counsel. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent behind enacting the PSLRA was to encourage large institutional investors to serve as lead plaintiff).

### C. THE COURT SHOULD APPROVE BOSTON AND NORFOLK'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. Labaton Sucharow LLP has had a leading role in numerous important actions on behalf of defrauded investors. Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million in cash, one of the largest common-fund securities class action settlements ever achieved at that time. *See* Labaton Sucharow Firm Resume, Ellman Decl., Ex. D; *see also In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"). Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against American International Group Inc., HealthSouth Corp., St. Paul Travelers Corp., and others. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

### CONCLUSION

For the foregoing reasons, Boston and Norfolk respectfully request that this Court: (i) consolidate the related actions; (ii) appoint Boston and Norfolk as Lead Plaintiff in the action; and (iii) approve Boston and Norfolk's selection of Labaton Sucharow as Lead Counsel for the Class.

Dated: October 17, 2007                    Respectfully submitted,

By: */s/ Mark Labaton*
   Mark Labaton (#159555)
**KREINDLER & KREINDLER LLP**
707 Wilshire Boulevard
Los Angeles, California  90017
Telephone:  (213) 622-6469
Facsimile:  (213) 622-6019

**3:07-CV-4073-PJH**
**MEMO OF POINTS AND AUTHORITIES OF THE BOSTON AND NORFOLK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

9

1
2  LABATON SUCHAROW LLP
3  Christopher J. Keller
   Andrei V. Rado
4  Alan I. Ellman
   140 Broadway
5  New York, New York  10005
   Telephone:  (212) 907-0700
6  Facsimile:  (212) 818-0477

7  *Attorneys for State-Boston Retirement System and Norfolk County Retirement System and Proposed Lead Counsel for the Class*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

683145 v1
[10/9/2007 20:02]

3:07-CV-4073-PJH
MEMO OF POINTS AND AUTHORITIES OF THE BOSTON AND NORFOLK FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL

10