1  Joseph J. Tabacco, Jr. (SBN 75484)
   E-mail: jtabacco@bermanesq.com
2  Nicole Lavallee (SBN 165755)
   E-mail: nlavallee@bermanesq.com
3  BERMAN DeVALERIO PEASE TABACCO BURT & PUCILLO
   425 California Street, Suite 2100
4  San Francisco, California  94104
   Telephone:    415-433-3200
5  Facsimile:    415-433-6382

6  *Local Counsel*

7  Richard W. Cohen
   E-mail: rcohen@lowey.com
8  David C. Harrison (admitted *pro hac vice*)
   E-mail: dharrison@lowey.com
9  Jeanne D'Esposito (admitted *pro hac vice*)
   E-mail: jdesposito@lowey.com
10 LOWEY DANNENBERG BEMPORAD SELINGER & COHEN, P.C.
   One North Broadway
11 White Plains, New York  10601-2310
   Telephone:    914-997-0500
12 Facsimile:    914-997-0035

13 *Attorneys for Movant Southern*

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| IN RE LUMINENT MORTGAGE CAPITAL, INC. SECURITIES LITIGATION | C 07-04073 PJH |
| | **CLASS ACTION** |
| This Document Relates To: | **SOUTHERN'S OPPOSITION TO CERTAIN PLAINTIFFS' MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL** |
| ALL ACTIONS | |
| | Date:   November 21, 2007 |
| | Time:  9:00 a.m. |
| | Place:  Courtroom 3, 17th Floor |

28 [C 07-04073-PJH] SOUTHERN'S OPPOSITION TO MOTIONS BY CERTAIN PLAINTIFFS FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL
2031 / BRF / 00084639.WPD v4

1

**TABLE OF CONTENTS**

2    Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5    I.    SOUTHERN IS PRESUMPTIVELY THE
          MOST ADEQUATE LEAD PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7          A.  Southern Has the Largest Financial Interest and
              Is, Therefore, Presumptively the Most Adequate Lead Plaintiff . . . . . . . . . . . . . . . 3

8          B.  Southern Is Fully Qualified to Serve as Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . 5

9    II.   THE COMPETING MOTIONS FOR
          LEAD PLAINTIFF SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11         A.  The Motion of District No. 9 Should Be Denied . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           B.  The Motion of Boston and Norfolk Should Be Denied . . . . . . . . . . . . . . . . . . . . . 8

13         C.  The Motion of the Sharenow Group Should Be Denied . . . . . . . . . . . . . . . . . . . . . 9

           D.  The Motions of Kornfeld and Larson Should Also Be Denied . . . . . . . . . . . . . . . 10

15   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

## CASES

*Armour v. Network Assocs., Inc.*,
    171 F. Supp.2d 1044 (N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 5, 7

*In re Doral Financial Corp. Sec. Litig.*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Milestone Scientific Sec. Litig.*,
    183 F.R.D. 404 (D.N.J. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
    No. 01-1950, 2007 WL 2683729 (N.D. Ga. Sept. 7, 2007) . . . . . . . . . . . . . . . . . . . . 5

*In re Smith Barney Transfer Agent Litig.*,
    No. 05-7583, 2006 WL 991003 (S.D.N.Y. Apr. 17, 2006) . . . . . . . . . . . . . . . . . . . . 5

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Waste Management, Inc. Sec. Litig.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Kapur v. Usana Health Sciences, Inc.*,
    No. 2:07-177 DAK, 2007 WL 3046664 (D. Utah Oct. 17, 2007) . . . . . . . . . . . . . . . 7

*Schonfeld v. Dendreon Corp.*,
    No. C07-800MJP, 2007 WL 2916533 (W.D. Wash. Oct. 4, 2007) . . . . . . . . . . . . . . 8

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zucker v. Zoran Corp.*,
    No. C06-04843WHL, 2006 WL 3591156 (N.D. Cal. Dec. 11, 2006); . . . . . . . . . . . . . 7

## STATUTES & RULES

15 U.S.C. § 78u-4(a)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATUTES & RULES (CONT.)

Northern District of California
    Civil Local Rule 23-1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

## MISCELLANEOUS

Conference Report on Securities Litigation Reform,
    H.R. Rep. No. 369, 104th Congress, 1st Sess. 31,
    *reprinted in* 1999 U.S.C.C.A.N. 679 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1

**PRELIMINARY STATEMENT**

2        Allen Dayton is a private investor who owns and controls The Southern Improvement

3  Company ("Southern Improvement") and VSA, Inc. ("VSA") (collectively, with Dayton,

4  "Southern"). Southern suffered losses in excess of $1.47 million from its purchases and sales of

5  Luminent Mortgage Capital, Inc. ("Luminent" or the "Company") stock and options during the

6  class period, due to alleged fraud on the part of defendants.

7        Southern satisfies all of the standards, and has complied with all the procedures,

8  established by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for

9  appointment as lead plaintiff. On October 9, 2007, Southern timely moved for consolidation and

10  appointment as lead plaintiff within the 60-day period established by the PSLRA, 15 U.S.C.

11  § 78u-4(a)(3)(A).[1] In compliance with this Court's Order dated October 10, 2007, which, *inter*

12  *alia*, consolidated the six related cases under the above caption, Southern re-filed its motion for

13  appointment as lead plaintiff and for approval of its selection of lead counsel on October 17,

14  2007.[2]

15        Southern respectfully submits this memorandum of law in opposition to five competing

16  lead plaintiff/lead counsel motions filed by District No. 9, International Association of

17  Machinists & Aerospace Workers Pension Trust ("District No. 9"); the State-Boston Retirement

18  System and Norfolk County Retirement System ("Boston and Norfolk"); Joel Sharenow, Bradley

19

---

20       [1]      Under the PSLRA and Local Rule 23-1(b), lead plaintiff motions must be filed
and served no later than 60 days from publication of the notice advising investors of the
21  pendency of the class action and their right to seek appointment as the lead plaintiff. *See In re
Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (citing 15 U.S.C. § 78u-4(a)(3)(A)). The statutory
22  deadline for filing lead plaintiff motions was October 9, 2007, which was 60 days after
publication of the class notice on August 8, 2007. *See* Exhibit 2 to Declaration of David C.
23  Harrison, dated October 17, 2007 ("Harrison Decl.") (Dkt. No. 59).

24       [2]      Eight lead plaintiff motions were initially filed by the October 9, 2007 deadline.
In response to the Court's October 10, 2007 Order, counsel for Southern contacted counsel for
25  the other applicants and requested that they withdraw their motions in light of Southern's
showing that it had the largest financial interest. In response, two of the seven competing
26  applicants have withdrawn their motions. *See* Notices of Withdrawal of Charles Bregenzer and
Harry Pogach, dated October 17, 2007 (Dkt. Nos. 62 and 80).

27

28  [C 07-04073-PJH] SOUTHERN'S OPPOSITION TO MOTIONS BY CERTAIN PLAINTIFFS FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL
2031 / BRF / 00084639.WPD v4

Burns and Rajiv Kumar Prasad (the "Sharenow Group"); William F. Kornfeld ("Kornfeld"); and

Ronald Larson ("Larson") (collectively "Competing Movants").

As summarized in the table below, Southern's losses exceed the claimed losses of the

next largest applicant by more than 60% calculated under the FIFO method, and by more than

160% under the LIFO method.[3]  Similarly, Southern's financial stake based upon the net shares

purchased during the class period – 155,778 – is more than double the net shares purchased by

the next largest movant.[4]  As the movant with the largest financial interest in the outcome of this

litigation, Southern is the presumptive lead plaintiff under the PSLRA. *Cavanaugh*, 306 F.3d at

730.

| Movant | Losses | | Net Shares Purchased |
|---|---|---|---|
| | **LIFO** | **FIFO** | |
| Southern | $ 1,470,566 | $ 1,470,566 | 155,778 |
| District No. 9 | $    559,868 | $    909,163 | 65,300 |
| State-Boston Retirement System<br>Norfolk Cty. Retirement System | $    388,621<br>$    155,788 | $    388,621<br>$    155,788 | 55,500<br>19,500 |
| Boston and Norfolk Total: | $    544,409 | $    544,409 | 75,000 |
| William F. Kornfeld, Jr. | $    429,968 | $    429,968 | 59,100 |

---

[3]      Under the "LIFO" or "last-in, first-out" methodology, the most recent sales are matched against the most recent purchases during the class period.  In contrast, "FIFO," or the "first-in-first-out" methodology, matches the first shares purchased against the first shares sold.  Therefore, where the investor purchased shares before the start of the class period, those pre-class-period purchases are matched with the investor's first sales during the class period, so that the resulting gain or loss is excluded from the loss calculation.  Then, remaining class period sales are matched against class period purchases.  Lastly, for any shares retained at the end of the class period, they are assigned a value equal to the average stock price of the company during the 90 days following the end of the class period, which value is subtracted from the price paid for those shares.  Since Southern's losses under both methods are the largest of any applicant, this Court does not need to decide whether to use LIFO or FIFO in computing damages.

[4]      All of the movants calculate losses based upon a class period from October 6, 2006 through August 6, 2007, except for Kornfeld, who uses March 16, 2007 through August 6, 2007.  *See, e.g.*, Certifications annexed as Ex. 1 to Harrison Decl.  Southern's losses are identical using either class period because its purchases occurred after March 16, 2007.

| Movant | Losses | | Net Shares Purchased |
| | LIFO | FIFO | |
|---|---|---|---|
| Joel Sharenow<br>Bradley Burns<br>Rajiv Kumar Prasad | $ 115,199<br>$ 126,745<br>$ 106,588 | $ 115,199<br>$ 126,745<br>$ 106,588 | 15,000<br>15,285<br>16,000 |
| Sharenow Group Total | $ 348,452 | $ 348,452 | 46,285 |
| Ronald Larsen | $ 184,800 | $ 184,800 | 25,000 |

Southern is fully qualified to serve as lead plaintiff. Southern satisfies the adequacy and typicality requirements of Fed. R. Civ. P. 23.[5] The applications of the Competing Movants should be denied, Southern should be appointed lead plaintiff and its selection of Lowey Dannenberg Bemporad Selinger & Cohen, P.C. as lead counsel should be approved.

## ARGUMENT

I.    **SOUTHERN IS PRESUMPTIVELY THE MOST ADEQUATE LEAD PLAINTIFF**

A.    **Southern Has the Largest Financial Interest and Is, Therefore, Presumptively the Most Adequate Lead Plaintiff**

The PSLRA requires the court to "adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that . . . has the largest financial interest in the relief sought by the Class," and that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." § 21D(a)(3)(B)(iii)(i). *See Cavanaugh*, 306 F.3d at 730. The *Cavanaugh* court cautioned that a "straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." Id. at 732. In making this inquiry, the Court should rely on the movant's complaint, certification and other submissions. *Id.* at 730 (citing *In re Cendant Corp. Sec. Litig.*, 264 F.3d 206, 264 (3d Cir. 2001)).

---

[5]    Southern is the only movant which has standing to assert securities law violations on behalf of sellers of put options in this litigation.

1    In accordance with the PSLRA, Southern Improvement, VSA and Dayton filed the

2 required certifications, which included the details of all of their transactions in Luminent stock

3 and options during the class period, and provided detailed calculations demonstrating Southern's

4 total losses of $1.47 million using both the LIFO and FIFO methodologies.[6]  *See* Ex. 1 to

5 Harrison Decl.  Dayton also submitted a declaration (Docket. No. 58) detailing his authority and

6 oversight over all of Southern's investments, and his efforts to select experienced class counsel.

7 Specifically, Dayton exercises complete authority over, and is the sole decision maker with

8 respect to, the securities investments of Southern, including the purchase and sale of Luminent

9 stock and options.  *See* Declaration of Allen Dayton ("Dayton Decl."), ¶¶ 1-3, 6-7.  As such,

10 Southern is considered a single person for purposes of a PSLRA lead plaintiff application.  *See,*

11 *e.g., Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1157 n.11 (N.D. Cal. 1999) (funds

12 operating under common investment manager considered single person); *In re Waste*

13 *Management, Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000); *In re Milestone*

14 *Scientific Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998) (approving appointment of group as lead

15 plaintiff where, as here, one individual "owns, controls and/or has final decision-making

16 authority" over the entities in the group).[7]

17    As detailed in its moving papers, Southern purchased 160,778 shares of Luminent

18 common stock during June and July 2007 at prices ranging from $7.87 to $10.22 per share, and

19

20

21

22    [6]    Southern's trades were presented in chronological order.  For some entries, the
date used for the transaction is the "trade date," which is the date the purchase or sale order is
23 executed, whereas the date used for other entries is the "settlement date," the date that the trade
"settles," *e.g.*, for stock, three business days after the order is entered – and payment is made or
24 received.  In every instance, both the trade date and settlement date occurred within the class
period adopted by every movant for lead plaintiff.

25    [7]    Even if the transactions of Southern Improvement, Dayton and VSA were
disaggregated, Southern Improvement's losses of $1,393,870 would still give it the largest
26 financial stake, by a wide margin, relative to the competing lead plaintiff applicants.  *See* Table
of Losses and Loss Calculations, Ex. 1 to Harrison Decl.

27

1  suffered net losses on those shares of $1,271,001. Southern also sustained net losses of $199,555

2  from the sale of put options contracts, for a total loss of $1,470,566.[8]

3       With a loss in excess of $1.47 million, Southern has sustained significantly larger losses

4  than the Competing Movants and thus has the greatest financial stake in the outcome of this

5  litigation. *Cavanaugh* instructs that after "it determines which plaintiff has the biggest stake, the

6  court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or

7  adequacy requirements." 306 F.3d at 732. Accordingly, Southern is presumptively the most

8  adequate lead plaintiff under the PSLRA.

9       **B.    Southern Is Fully Qualified to Serve As Lead Plaintiff**

10      No competing lead plaintiff applicant has pointed, or can point, to any fatal disqualifying

11 factor which would overcome Southern's presumptive status as lead plaintiff. Thus, the inquiry

12 should end, and Southern should be appointed. *See, Cavanaugh*, 306 F.3d at 732. *See also In re*

13 *Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2006 WL 991003, at *5 (S.D.N.Y. Apr.

14 17, 2006) (applicant with largest loss will be appointed "[a]bsent a showing that [plaintiff]

15 cannot vigorously pursue claims on behalf of those shareholders"). Southern's principal, Allen

16 Dayton, is eminently qualified to perform the duties required of the lead plaintiff in this

17 litigation. Dayton has served in key decision-making positions and fiduciary capacities for

18 sophisticated for-profit businesses and non-profit entities. In addition to serving as the Chairman

19 of the Board of VSA and Southern Improvement, Dayton previously served as Chairman of the

20 _____

21      [8]    As with the purchase of common stock, the sale of a put option is an investment
       seeking to capitalize upon an increase in the price of the company's common stock. A put option
22 is a financial contract in which the buyer pays the seller a premium in exchange for the right to
       sell a specified quantity of stock for a certain price (the exercise price) to the option seller during
23 the life of the option. If the buyer exercises the option, the seller is obligated to purchase the
       underlying stock at the exercise price. "Thus, a put option seller generally predicts that the value
24 of the underlying stock will remain above the [exercise] price (or increase) during the life of the
       option. If correct, the seller profits the full premium because the buyer never exercises the
25 option." *In re Scientific-Atlanta, Inc. Sec. Litig.*, Case No. 01–1950, 2007 WL 2683729, at *8
       (N.D. Ga. Sept. 7, 2007).
26      In this case, Southern sustained $212,602 in losses on put option sales, offset by $13,047
       in premiums received from the sale of call options, which yields a net loss of $199,555.

27

28

1  Kellogg Savings Bank, a federally insured savings bank headquartered in Kellogg, Iowa, from

2  1974 to 1978.  Since 2003, Dayton has served as a member of the board of directors, and

3  currently is a member of the Investment Committee and Chairman of the Nominating

4  Committee, of Supertel Hospitality, Inc., a publicly traded real estate investment trust located in

5  Norfolk, Nebraska, that owns approximately 130 hotels throughout the United States.  He also

6  serves on the boards of the Entrepreneurship Institute at the University of Nebraska College of

7  Business Administration and the University of Portland Center for Entrepreneurship.  Dayton is a

8  Trustee of the University of Nebraska Foundation, a nonprofit corporation that obtains financing

9  for the university's four campuses.  The Foundation's endowment fund is currently ranked

10  among the largest of all U.S. public higher education institutions.  *See* Supplemental Declaration

11  of Allen Dayton dated October 31, 2007, submitted herewith.  Dayton is amply qualified to

12  oversee counsel's prosecution of this litigation and achieve the best possible recovery for all

13  members of the proposed Class.

14  **II.      THE COMPETING MOTIONS FOR LEAD PLAINTIFF SHOULD BE DENIED**

15           **A.      The Motion of District No. 9 Should Be Denied**

16           District No. 9 claims FIFO losses of $909,163, which is $561,403 less than the losses

17  suffered by Southern.  Moreover, District No. 9's losses under LIFO are just $559,868,[9] only

18  38%  of Southern's losses (*see* Dkt. No. 83-2, Ex. B).  Similarly, District No. 9's financial stake

19  based upon 65,300 net shares purchased is only 42% of the 155,778 net shares purchased by

20  Southern.  *See* Chart, *supra,* at 2.

21           District No. 9 devotes a substantial portion of its memorandum of law to the argument

22  that, despite not having the largest financial interest in this litigation, it is presumptive lead

23  plaintiff solely by virtue of the fact that it is an "institutional" investor.  *See* Dkt. No 82-3 at 6-9.

24  The Ninth Circuit and other courts have expressly rejected this argument.  *See, e.g., Cavanaugh,*

25

26           [9]      As explained in note 3, *supra,* under LIFO all amounts received from District 9's
         class period sales ($395,524.70) will be matched against class period purchases ($955,392.50),
27  which yields a net loss of $559,868.  *See* Dkt. No. 83-2, Exhibit B.

28

1  306 F.3d at 732 ("[T]he Reform Act provides in categorical terms that the *only* basis on which a

2  court may compare plaintiffs competing to serve as lead is the size of their financial stake in the

3  controversy.") (emphasis in original); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670-71 (C.D.

4  Cal. 2005) (individual with largest stake appointed lead plaintiff over pension fund); *Kapur v.*

5  *Usana Health Sciences, Inc.*, No. 2:07 cv 177 DAK, 2007 WL 3046664, at *2-3 (D. Utah Oct.

6  17, 2007) (individual with larger losses than institutional movant appointed; "[w]hile the

7  legislative history reflects that Congress intended the lead plaintiff provisions to increase the

8  likelihood that institutional investors would participate in litigation as a result of the size of the

9  holdings held by such institutions, it did not choose to make any special preference for

10 institutional investors in the plain language of the PSLRA"); *In re Telxon Corp. Sec. Litig.*, 67

11 F. Supp. 2d 803, 821-22 (N.D. Ohio 1999) (two related individuals appointed over pension fund;

12 "[t]he institutional investor is not presumptively the most adequate plaintiff solely by virtue of its

13 status as an institutional investor . . . . If that were the case, Congress would have simply

14 provided that institutional investors are presumptively the most adequate plaintiffs, regardless of

15 the size of financial loss").

16       District No. 9's claim of "institutional" status is irrelevant.  Any Congressional concern

17 with whether institutions or individuals would become lead plaintiffs in securities litigation was

18 focused solely on promoting a procedure whereby lead plaintiffs would be motivated – by

19 presumptively larger economic self-interests – to actively oversee class cases, as opposed to past

20 practices which involved lawyer-driven litigation without meaningful client oversight.  *See*

21 Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st

22 Sess. 31, *reprinted in* 1999 U.S.C.C.A.N. 679, 683, 685 (PSLRA "empower[s] investors so that

23 they, not their lawyers, control private securities litigation [by transferring] primary control of

24 private securities litigation from lawyers to investors").  *See also Zucker v. Zoran Corp.*, No.

25 C06-04843WHL, 2006 WL 3591156 (N.D. Cal. Dec. 11, 2006); *Armour v. Network Assocs.,*

26 *Inc.*, 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001).  Southern has far more "skin in the game" –

27 its own skin – and therefore the greatest incentive to control the litigation and prosecute it

28

1   vigorously, than the anonymous administrator(s) at District No. 9, for whom Luminent may be

2   merely a blip in its portfolio.[10]  Because District No. 9's financial stake in this litigation is far less

3   than that of Southern, its motion for appointment as lead plaintiff should be denied.

4       **B.     The Motion of Boston and Norfolk Should Be Denied**

5       In its motion papers, Boston and Norfolk claim collective losses of $544,409 (*see* Dkt.

6   Nos. 88 and 89).[11]  Once again, this amount falls far short of the more than $1.47 million in

7   losses incurred by Southern and precludes Boston and Norfolk's appointment as lead plaintiff.

8   Similarly, Southern purchased 155,778 net shares of Luminent stock during the proposed Class,

9   whereas Boston and Norfolk's collective net purchases are less than half that amount – only

10  75,000 shares.

11      Moreover, unlike Southern, Boston and Norfolk cannot claim to be related entities that

12  operate under common management and investment direction.  These movants offer no

13  justification for their request to have their combined losses considered in support of their motion

14  to be appointed as a group lead plaintiff.  The mere fact that Boston and Norfolk are both

15  municipal pension plans in Massachusetts does not negate the fact that they are distinct and

16  unrelated entities which have been joined together as a "group" for the purpose of pooling their

17  losses in the hopes of being appointed lead plaintiff in this litigation.  "In this arena of litigation,

18  courts have long been wary of artificially-constructed 'plaintiff groups' which assemble for no

19  purpose other than qualifying as lead plaintiff."  *Schonfeld v. Dendreon Corp.*, No. C07-800MJP,

20  2007 WL 2916533, at *2 (W.D. Wash. Oct. 4, 2007) (rejecting several groups with no pre-

21  existing relationships).  *See, e.g., Waste Management*, 128 F. Supp. 2d at 432 (denying

22  application of group of distinct pension funds); *In re Doral Financial Corp. Sec. Litig.*, 414 F.

23

24
        [10]     District No. 9's submissions do not provide any information regarding the size or
25  management of its investment portfolio.

26          [11]     Movants' loss calculations show Boston's losses at $388,621 and Norfolk's losses
    at $155,778, for a combined loss of $544,409. Dkt. No. 89 at 11.  However, in their
27  memorandum of law, Boston and Norfolk use the higher figure of $547,377. Dkt. No. 88 at 10.

28  [C 07-04073-PJH] SOUTHERN'S OPPOSITION TO MOTIONS BY CERTAIN PLAINTIFFS FOR APPOINTMENT AS
    LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL
    2031 / BRF / 00084639.WPD v4                    8

1   Supp. 2d 398 (S.D.N.Y. 2006) (denying lead plaintiff motions of two groups of unrelated pension

2   plans).

3          Accordingly, Boston and Norfolk do not qualify, either individually or collectively, as the

4   movant with the largest financial interest.

5          **C.    The Motion of the Sharenow Group Should Be Denied**

6          The Sharenow Group is composed of three unrelated individual investors who claim

7   combined losses of $410,000.[12] *See* Dkt. Nos. 67 and 70. That calculation, however, is

8   inaccurate, because it includes losses from stock purchases prior to the beginning of the class

9   period. Excluding pre-class period trades from the calculations reduces the Sharenow Group's

10  combined losses to $348,452.[13]

11         Like Boston and Norfolk, the unrelated members of the Sharenow Group appear to be a

12  group with no pre-existing relationship to the litigation. As such, their losses cannot be

13  aggregated. In all events, the Sharenow Group's losses fall far short of the amount necessary to

14  supplant Southern as the presumptive lead plaintiff – a fact implicitly acknowledged in the

15  Sharenow Group's motion papers where they do not claim to have the largest financial interest in

16

17         [12]    The Sharenow Group offers no information to suggest that its three members have
a pre-existing relationship and it is obvious that the group was formed solely to consolidate
18  losses in the hope of reaching a high enough number to qualify as lead plaintiff. As noted above,
such groups are inappropriate and are ineligible for appointment as lead plaintiff under the
19  PSLRA. Moreover, even if considered individually, the members of the Sharenow Group do not
qualify to be lead plaintiff here. Indeed, the individual with the largest loss is Bradley Burns,
20  with $126,745 – still less than 10% of the losses incurred by Southern.

21         [13]    The certifications of the Sharenow Group include several purchases of Luminent
stock that did not occur during the proposed October 6, 2006 through August 6, 2007 class
22  period. For example, Joel Sharenow's certification includes a confirmation for 5,000 shares
purchased on June 11, 2006 (*see* Dkt. No. 70 at 5) and Bradley Burns' certification includes
23  purchases of 1,200 and 1,500 shares purchased on March 16, 2005 and June 23, 2006,
respectively (*see* Dkt. No. 70 at 11). In their Memorandum of Law, the Sharenow Group
24  erroneously claims that these pre-class period purchases of Luminent stock were not included in
its loss calculation (*see* Dkt. No. 67, n.2). However, the $410,000 loss figure appears to include
25  those pre-class purchases. Without those purchases, Southern calculates that the Sharenow
Group's losses are just $348,452; with individual losses of $126,745 for Bradley Burns,
26  $115,199 for Joel Sharenow and $106,588 for Rajiv Kumar Prasad. *See* chart illustrating the
Sharenow Group's loss calculations annexed as Ex. 1 to the Supplemental Declaration of David
27  C. Harrison dated October 31, 2007, submitted herewith ("Harrison Supp. Dec.").

this litigation and state only that their losses are "significant." Dkt. No. 67 at 7-8. This telling

omission violates Local Rule 23-1(b), which requires a movant to affirmatively state whether it is

entitled to be the presumptive lead plaintiff under the PSLRA. Therefore, the motion of the

Sharenow Group for appointment as lead plaintiff should be denied.

### D.    The Motions of Kornfeld and Larson Should Also Be Denied

Because their losses are also significantly less than those of Southern, the motions of

Kornfeld and Larson must also be denied. According to his submissions, Kornfeld's trades in

Luminent securities resulted in losses of $429,968 during the October 6, 2006 through August 6,

2007 class period (*see* Dkt. Nos 65 and 66).[14] Larson's losses are estimated to be just $184,800

(*see* Dkt. Nos. 86-2 and 86-3). Therefore, the losses of both Kornfeld and Larson are only a

fraction of Southern's losses, and they are not entitled to be appointed as lead plaintiff.

Although counsel for Kornfeld claims that it "has no firm evidence which refutes his

claim as the movant with the largest financial interest in the relief sought by the class" (Dkt No.

65, n.3), Southern's certifications and Dayton's Declaration, both made under penalty of perjury,

demonstrate that Southern's losses of more than $1.47 million far exceed those of Kornfeld. No

other information is required, and Kornfeld provides no legal authority to the contrary.[15]

### CONCLUSION

For all of the above reasons, Southern respectfully requests that the Court deny the

Competing Movants' motions for appointment as lead plaintiff and selection of lead counsel,

---

[14]    As described in note 4, *supra*, Kornfeld claims losses for a shorter class period of $423,523. His losses increase to $429,968 for the longer class period used by the other lead plaintiff applications.

[15]    On October 16, 2007, the day before the deadline for filing lead plaintiff applications, counsel for Kornfeld sent a letter to Southern's counsel requesting additional information. (*See* Howard Longman letter dated October 16, 2007, annexed as Ex. 2 to the Harrison Supp. Decl.) However, Mr. Longman provided no substantiation for his request seeking additional information from Southern, but only made the vague assertion that there are instances where certifications filed by other parties in unrelated litigation have proven to be inaccurate. Therefore, counsel for Southern declined Mr. Longman's request. (*See* David Harrison letter dated October 17, 2007, annexed as Ex. 3 to the Harrison Supp. Decl.).

[C 07-04073-PJH] SOUTHERN'S OPPOSITION TO MOTIONS BY CERTAIN PLAINTIFFS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL
2031 / BRF / 00084639.WPD v4                    10

1  appoint Southern as lead plaintiff, and approve Southern's selection of Lowey Dannenberg

2  Bemporad Selinger & Cohen, P.C. as lead counsel.

3  Date:    October 31, 2007                    BERMAN DeVALERIO PEASE
                                                TABACCO BURT & PUCILLO
4

5
                                    By:   _____
6                                                    NICOLE LAVALLEE

7                                          Joseph J. Tabacco, Jr.
                                           425 California Street, Suite 2100
8                                          San Francisco, California  94104
                                           Telephone:     415-433-3200
9                                          Facsimile:     415-433-6382

10                                         *Local Counsel*

11

12                                         RICHARD W. COHEN
                                           DAVID C. HARRISON
                                           JEANNE D'ESPOSITO
13                                         LOWEY DANNENBERG BEMPORAD
                                              SELINGER & COHEN, P.C.
14                                         One North Broadway
                                           White Plains, New York  10601-1714
15                                         Telephone:     914-997-0500

16                                         *Attorneys for Movant Southern Improvement
                                              Company, Allen Dayton, and VSA, Inc.*
17

18

19

20

21

22

23

24

25

26

27

28  [C 07-04073-PJH] SOUTHERN'S OPPOSITION TO MOTIONS BY CERTAIN PLAINTIFFS FOR APPOINTMENT AS
    LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL
    2031 / BRF / 00084639.WPD v4                         11