Joseph J. Tabacco, Jr. (SBN 75484)
E-mail: jtabacco@bermanesq.com
Nicole Lavallee (SBN 165755)
E-mail: nlavallee@bermanesq.com
BERMAN DeVALERIO PEASE TABACCO BURT & PUCILLO
425 California Street, Suite 2100
San Francisco, California 94104
Telephone:    415-433-3200
Facsimile:    415-433-6382

*Local Counsel*

Richard W. Cohen (admitted *pro hac vice*)
E-mail: rcohen@lowey.com
Richard Bemporad (admitted *pro hac vice*)
E-mail: rbemporad@lowey.com
David C. Harrison (admitted *pro hac vice*)
E-mail: dharrison@lowey.com
Jeanne D'Esposito (admitted *pro hac vice*)
E-mail: jdesposito@lowey.com
LOWEY DANNENBERG BEMPORAD SELINGER & COHEN, P.C.
One North Broadway
White Plains, New York 10601-2310
Telephone:    914-997-0500
Facsimile:    914-997-0035

*Attorneys for Movant Southern*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LUMINENT MORTGAGE CAPITAL, INC. SECURITIES LITIGATION | C 07-04073 PJH<br><br>**CLASS ACTION** |
| This Document Relates To:<br><br>ALL ACTIONS | **SOUTHERN'S REPLY IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**<br><br>Date:   November 21, 2007<br>Time:   9:00 a.m.<br>Place:  Courtroom 3, 17th Floor |

[C 07-04073-PJH] SOUTHERN'S REPLY IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

## PRELIMINARY STATEMENT

The Southern Improvement Company ("Southern Improvement"), VSA, Inc. ("VSA"), and Allen Dayton (collectively, "Southern" or "Movant") respectfully submit this reply in support of its motion for appointment as lead plaintiff and for approval of its selection of lead counsel, and in response to the opposition brief of the one remaining competing applicant.

In accordance with this Court's Order dated October 10, 2007, Southern and five other applicants timely refiled motions for appointment as lead plaintiff on October 17, 2007. Southern filed the certifications required under the Private Securities Law Reform Act of 1995 ("PSLRA"), which included the details of all transactions in Luminent stock and options during the class period, and calculated Southern's total losses at more than $1.47 million. *See* Exhibit 1 to Declaration of David C. Harrison in Support of Motion by Southern for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel ("Harrison Decl.") (Dkt. No. 59).

Southern has by far the largest financial stake in this litigation, which makes it the presumptive lead plaintiff under the PSLRA. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(i)). Recognizing the futility of challenging Southern's application, four of the five competing applicants either expressly support or do not oppose Southern's refiled motion.[1] These movants have implicitly conceded that Southern satisfies the requirements of Fed. R. Civ. P. 23, including the elements of typicality and adequacy.

---

[1] The four movants who either support or do not oppose Southern's application, and their claimed losses, are: (1) District No. 9, International Association of Machinists & Aerospace Workers' Pension Trust ("District No. 9") (losses of $909,163); (2) the State-Boston Retirement System and Norfolk County Retirement System (losses of $544,409); (3) the Sharenow Group (losses of $348,452); and (4) Ronald Larsen (losses of $184,000). *See* Dkt. No. 100, Notice of withdrawal of District No. 9's motion and support of Southern's application for lead plaintiff. Two other applicants who initially filed by the statutory deadline of October 9, 2007 withdrew their motions rather than refile on October 17. (Dkt. Nos. 62 and 82.) In total, six of seven competing movants have effectively abandoned their applications to be appointed lead plaintiff.

[C 07-04073-PJH] SOUTHERN'S REPLY IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

1

## ARGUMENT

### Kornfeld Has Offered No Proof to Rebut the Lead Plaintiff's Presumption

The one remaining competing applicant is William F. Kornfeld, whose losses are dwarfed by those of Southern. Mr. Kornfeld acknowledges that Southern's losses in Luminent's common stock alone are nearly triple Mr. Kornfeld's losses of $423,523. William F. Kornfeld, Jr.'s Opposition to Competing Motions for Appointment of Lead Plaintiff and Lead Counsel ("Kornfeld Opp.") at 3. Mr. Kornfeld implicitly concedes that Southern is the presumptive lead plaintiff, and has offered no proof to rebut that presumption by demonstrating that Movant is subject to a unique defense. Accordingly, the Court must appoint Southern as the lead plaintiff.

Mr. Kornfeld's sole argument against Southern's appointment as lead plaintiff is to point to Southern's sale of a modest amount of covered call options as a small hedge against its enormous loss from the purchases of Luminent common stock,[2] and speculate, without any basis, "whether Southern Improvement has engaged in *other* hedging activities which *could* result in its potential disqualification as a class representative." Kornfeld Opp. at 4 (emphasis added). Mr. Kornfeld's counsel further speculates, again without basis, that there are "perhaps more complex hedging activities" which *might* include "buying or selling various market indices" or "selling short other securities deemed to have a value related to that of [Luminent stock]." *Id.* at 3. Mr. Kornfeld does not identify any such indices or other securities, nor explain how such activities would impair Southern's ability to represent the class.

The PSLRA requires "proof" that the presumptively most adequate plaintiff will not adequately protect the class or is subject to a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Facts, not baseless conjectures, are necessary to rebut the lead plaintiff presumption. *See, e.g.,*

---

[2] A call option is a contract that gives the buyer of the option, in exchange for a premium, the right to purchase the underlying stock at a specific price (the "exercise price") within a specified period. A covered call is a strategy in which an investor sells a call option contract while at the same time owning the underlying stock. "The purpose of engaging in covered call writing is to earn the income from the selling of the call and to provide a hedge against the possible decline of the underlying security." *Grove v. Shearson Loeb Rhoades, Inc.*, No. 80-627-CIV-JE, 1983 WL 1321, at *1 (S.D. Fla. May 31, 1983).

[C 07-04073-PJH] SOUTHERN'S REPLY IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

2

1 | *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) (Jenkins, J.)

2 | (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 547-48 (N.D. Tex. 1977)); *accord Montoya v.*

3 | *Herley Indus., Inc.*, No. 06-2596, 2006 WL 3337485, at *2 (E.D. Pa. Nov. 14, 2006) (speculation

4 | will not rebut presumption); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C.

5 | 2005) (opponent's argument "is too speculative and hypothetical to rebut the presumption").

6 |   Moreover, Mr. Kornfeld's speculation is just wrong. Southern did <u>not</u> engage in <u>any</u>

7 | investment activities – hedging or otherwise – aside from those disclosed in Southern's

8 | certifications. *See* Reply Declaration of Allen Dayton in Support of Motion by Southern for

9 | Appointment as Lead Plaintiff and Approval of Lead Counsel dated November 7, 2007 ("Dayton

10 | Reply Decl."), ¶ 3. There is no basis for Mr. Kornfeld's counsel's request to conduct a discovery

11 | fishing expedition into Southern's trading activity.

12 | **Southern's Sale of Covered Call Options Does Not Impact Its Typicality**

13 |   Mr. Kornfeld acknowledges (Kornfeld Opp. at 4) that another judge of this court, the

14 | Honorable Susan Illston, rejected the same argument made here by Mr. Kornfeld, *i.e.*, that a

15 | plaintiff hedging a portion of its common-stock position through the sale of call options is

16 | subject to unique defenses. *See Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL

17 | 1910928 (N.D. Cal. Aug. 10, 2005). The *Crossen* court explained that the fact that plaintiff

18 | hedged his investment will not defeat the presumption of reliance, as long as he made ordinary

19 | purchases of common stock and sustained losses on those holdings.[3]

20 |   Numerous other courts have likewise held that the use of hedging and other investment

21 | strategies does not render a class plaintiff atypical or subject to a unique defense. *See, e.g.,*

22 | *Montoya*, 2006 WL 3337485, at *1 (presumptive lead plaintiff appointed – "an investor who

---

[3] This Court recently confirmed that the typicality requirement of Rule 23 does not require that the circumstances regarding the representative party's purchases be identical to those of the other class members. Rather, the typicality requirement of Rule 23 is satisfied where, as here, the claims arise from the same course of conduct (*e.g.*, the purchase of stock at inflated prices) and are based upon the same legal theory (*e.g.*, violations of federal securities law). *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M 02-1486 PJH, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (Hamilton, J.).

---

28 | [C 07-04073-PJH] SOUTHERN'S REPLY IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

engaged in short sales to hedge against a decline in its investment may benefit from the fraud on the market presumption [and is] not vulnerable to a unique defense"); *Levie v. Sears Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007) (class certification granted: "The fact that Monsky may have devised a different investment strategy as a consequence of his reliance on the market is irrelevant. If he relied on the price of Sears stock to reflect accurately information disseminated in the market, he was injured if defendants made fraudulent misrepresentations and omissions of material fact.") (citation omitted); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 412 (D. Minn. 1998) (presumptive lead plaintiff appointed – "one who buys Green Tree stock, even as a hedge against other investments, still presumably relies on the integrity of the market in selecting that hedge" absent evidence to the contrary); *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 397 (N.D. Ill. 1999) (class certification granted – "The fact that Kerr may have used somewhat distinctive buying strategies does not render him atypical with respect to this claim of overarching fraud.") (citation omitted).[4]

The reasoning of *Crossen* and these other authorities is fully applicable here. Southern stood to gain financially from its purchase of 160,000 shares of Luminent stock. Its sale of call options – which still left 80 percent of Southern's position unhedged – modestly reduced the loss it suffered following Luminent's announcement on August 6, 2007 that its liquidity, which management had touted one week earlier as "ample" when confirming the safety of the dividend, had disappeared virtually overnight. Southern lost more than $1.2 million on its Luminent common stock and another $213,000 from the sale of put options. The gain from call options sales was $13,047. *See* Loss Calculations, Exhibit 1 to Harrison Decl. As in *Crossen*,

---

[4] Mr. Kornfeld's authorities are inapposite. In *Hamilton Ptnrs. Ltd. v. Sunbeam Corp.*, No. 99-cv-8275, 2001 WL 34556527, at **10-11 (S.D. Fla. July 3, 2001), plaintiff failed to establish an efficient market in connection with the private placement of convertible debentures, precluding utilization of the fraud-on-the-market presumption of reliance. *Sherin v. Gould*, 115 F.R.D. 171 (E.D. Pa. 1987), involved a *stipulated* class which excluded stock purchasers involved in program trading activity involving stock market index futures. Here, Southern engaged in no such activity with respect to Luminent securities. *See* Dayton Reply Decl., ¶ 3.

Southern's "investment strategy does not make [it] an atypical plaintiff." *Crossen*, 2005 WL 1910928, at *5.

### Kornfeld's Request For Additional Discovery Is Without Merit

Seizing upon Judge Illston's comment in *Crossen* that a call option hedge "on its own" is insufficient to defeat typicality, 2005 WL 1910928, at *4, Mr. Kornfeld asks for discovery in a desperate effort to find something more. However, under the PSLRA, the movant requesting discovery must first "demonstrate[ ] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." *Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(3)(B)(iv)). Mr. Kornfeld's unfounded innuendos are wholly insufficient to merit discovery. *See, e.g., Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) (denying request for discovery in connection with appointment of lead plaintiff) (Breyer, J.); *Knisley v. Network Assocs., Inc.*, 77 F. Supp. 2d 1111, 1115 (N.D. Cal. 1999) (Armstrong, J.) (same).[5] Mr. Kornfeld's request for discovery should be denied.[6]

### CONCLUSION

For the foregoing reasons, Southern's application for lead plaintiff should be granted, and its selection of Lowey Dannenberg Bemporad Selinger & Cohen, P.C. as lead counsel should be

---

[5] Mr. Dayton's declaration disposes of Mr. Kornfeld's speculation (Kornfeld Opp. at 4 n.4) that Mr. Dayton's deposition transcript, taken in an unrelated commercial lawsuit VSA filed against its supplier, might shed light on Mr. Dayton's hedging transactions relating to Luminent.

[6] The single case cited by Mr. Kornfeld in support of his discovery request, *Brown v. Biogen IDEC, Inc.*, No. 05-10400-RCL, 2005 U.S. Dist. LEXIS 19350, at *3 (D. Mass Jul. 26, 2005), is inapposite. In *Biogen*, limited discovery was ordered from a proposed lead plaintiff who had failed to provide any information regarding its transactions or the computation of its claimed losses. *Id.* There was also a question regarding whether the proposed lead plaintiff was an improper group of unrelated individuals. *Id.* Therefore, discovery was necessary to identify the presumptive lead plaintiff with the largest loss – not just to evaluate whether that plaintiff satisfied the requirements of Rule 23. *Id.* Here, Southern's submissions detail its transactions, losses, and satisfaction of the requirements of Fed. R. Civ. P. 23.

---

[C 07-04073-PJH] SOUTHERN'S REPLY IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

approved. Mr. Kornfeld's motion for lead plaintiff and his request for discovery should be denied.

Date:   November 7, 2007

                                      BERMAN DeVALERIO PEASE TABACCO
                                      BURT & PUCILLO

By: _____
                       Nicole Lavallee

JOSEPH J. TABACCO, JR.
425 California Street, Suite 2100
San Francisco, California  94104
Telephone:   415-433-3200

*Local Counsel*

RICHARD W. COHEN
RICHARD BEMPORAD
DAVID C. HARRISON
JEANNE D'ESPOSITO
LOWEY DANNENBERG BEMPORAD
   SELINGER & COHEN, P.C.
One North Broadway
White Plains, New York  10601-1714
Telephone:   914-997-0500

*Attorneys for Movant Southern Improvement
Company, Allen Dayton, and VSA, Inc.*

---

[C 07-04073-PJH] SOUTHERN'S REPLY IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

6